IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICHARD LASK                         :        Case No.

    Plaintiff,                       :        1 24 cv 455

                                     :        JUDGE:  JUDGE HOPKINS

                                     :        MAGISTRATE JUDGE DEAVERS
                                              MADISTRATE

    vs.                              :

RANDY WALTERS - Adams County Deputy      :
Sheriff under color of state law in
his individual and officia capacity;     :        VERIFIED COMPLAINT WITH JURY
SAMUEL (SAM) D. PURDIN - Detective        :        DEMAND.
of Adams County Sheriff's Office
under color of state law in his in-      :        42 U.S.C. § 1983 Conspiracy;
dividual and official capacity;
CHANDLER RULE - Kansas Highway Patrol    :        Violations of the Fourth, Fifth,
Trooper under color of state law in
his individual and official capacity;    :        Sixth, and Fourteenth Amendments
DAVID KELLEY - Adams County Prosecu-
ting Attorney under color of state law   :        False Arrest/False Imprisonment
in his individual and official capac-
ity;                                     :        Franks Violation And Malicious
BRETT M. SPENCER - Judge of Adams
County Common Pleas Court under color    :        Prosecution; Fraud Upon the Court
of state law in his individual and
official capacity;  and,                 :        And Knowingly Using "Sham" Legal
ADAMS COUNTY MUNICIPALITY under color
of state in its individual and  off-     :        Process Inferring Invalid Charge
icial capacity,
                                         :        For OVI As An Legal Seizure/Arrest.
    Defendants.
                                         :        28 U.S.C.§ 1331, 1332, and 1367.

1.    PARTIES TO THE ACTION:

    PLAINTIFF: <u>Richard Lask</u>, #A748-772, pro se, North Central Correctional

Institution, P.O. Box 1812 Marion, OH. 43302-1812, an Ohio inmate who is pro-

ceeding without the assistance of retained counsel, has enlisted another Ohio

inmate Mr. Terrance J. Davis, #A728-302, a native of Toledo, OH., here with

me at North Central Correctional Institution who subsequently researched, Fram-

ed arguable claims, and drafted the same in Plaintiff's previous and presented

State writ of habeas corpus before the Supreme Court of Ohio, Case No. GEN- 20-

- 23-0536; and Federal writ of habeas corpus, Case No. 1:23-cv-00525-MRB-CHG-

Doc#: 1 through 16, Filed June 15, 2023. See Page 1 of 20 PageID#: 823. The Plaintiff asserts, being lefted with no reasonable alternative, Mr. Terrance J. Davis, #A728-302, is also assisting this Plaintiff in the Filing of this Cause of Action pursuant to 42 U.S.C.S.§ 1983 among other cases of actions in redress herein.

DEFENDANTS: Randy Walters - Adams County Deputy Sheriff, Courthouse , 110 W. Main St., West Union, OH. 45693 PH:(937)544-2314/FX:(937)544-6201; Samuel (Sam) D. Purdin - Detective of the Adams County Sheriff's Office, Courthouse, 110 W. Main St., West Union, OH. 45693 PH:(937)544-2314/FX:(937) 544-6201; Chandler Rule - Kansas Highway Patrol Trooper, KNASAS HP Troop B., 3501 N.W. Highway 24, Topeka , KS 66618 PH: 785-296-6800, See Exhibit - A - Printout from Erik Smith, Colonel Superintendent; David Kelley - Adams County Prosecuting Attorney, 112 Courthouse, 110 W. Main St., West, Union, OH. 45693- 1347 PH:(937)544-3600/FX:(937)544-8296; Brett M. Spencer - Judge, Common Pleas Court, Courthouse, 110 W. Main St., West Union, OH. 45693-1347 PH:(937)544-2921 /FX:(937)544-8911; and, Adams County Municipality, 215 N Cross Street Ste. 102 West Union , Ohio 45693 PH:(937)544-3286; Atten: County Commissioners.

2.    Previous Lawsuits:

    A.    Yes.

    B.    I, Richard Lask, Plaintiff herein, filed or caused to be filed a Civil Action in "Bankruptcy" filed on April 26, 2019, assigned Case No. 19-bk- 11528 and discharged August 27, 2019. This bankruptcy was filed in the Southern District of Ohio. The mailing address is the United States Bankruptcy Court - 221 E. Fourth St., Atrium Two, Ste. 800, Cincinnati , OH. 45202. My retained counsel was the Law Office of Barbara A. Moore, LLC, Attorney at law, 106 S. Cross Street, West Union, OH. 45693 PH:(937)544-2500/FX:(937)544-2504. See Ex- hibit - B - Letter of Barbara A. Moore, Attorney at Law, Re: Civil Case Infor- mation.

C.    Additional Related Criminal and Civil Actions

Court(s) Entered Judgement in the Following Case(s): Court of Common Pleas, Adams County, Ohio, Courthouse, 110 West Main St., West Union, OH. 45693, Criminal Docket and Case No. CRi 20170139, Judge Spencer, Date of Conviction: August 14, 2019, Date of Sentencing: September 6, 2019, Length of Sentence: Five (5) year prison term, mandatory, Single (offense) Count Indictment: Possession of Marijuana, F2, Plea of No Contest. Plaintiff did not testify at trial. Plaintiff did appeal Suppression Hearing. Name of Court: Court of Appeals, Fourth Appellate District, Ohio, Docket or Case Nos.: 18CA1081, 19CA1101, and 20CA1117. Results: Judgement Reversed and Cause Remanded; Affirmed in Part, Reversed in Part and Cause Remanded; and Judgement Affirmed. Date of Results: June 28, 2019; March 6, 2020; and May 26, 2021. Citation to the Case(s): State v. Lask, 2019-Ohio-2753; State v. Lask, 2020-Ohio-1037, and State v. Lask, 2021-Ohio-1888. See Ex.- C - Criminal Docket Entry Listing, Pages 1 through 18; Ex.- D - Judgement Entry on (Plaintiff's) Defendant's Motion to Suppress with Findings of Facts and Conclusions of Law, Pages 1 through 13; Ex.- E - Decision and Judgment Entry, Fourth Appellate District, Case No. 19CA1101, Pages 1 through 15;Ex.-F- Transcript of Hearing on Remand from Fourth Appellate District Court, held on 6/10/2020 Pages 1 through 106;  Ex.- G - Judgement Entry of Hearing on Remand from Fourth Appellate District Court, June 15, 2020, Pages 1 through 6; Ex.- H - E-Mail from Chandler Rule [KHP], Monday, October 09, 2017 9:08 PM, Subject: Drug Trafficking, Page 1 of 1; Ex.- I - Incident Police Report's of both Deputy Randy Walters and Detective Samuel (Sam) D. Purdin 10/17/2017;  Ex.- J - Adams County Sheriff's Office Law Enforcement Policies and Procedures, Subject: Motor Vehicle Stops/Searches, Policy Number: 4.06, Pages 1 through 5;  Ex.- K - Affidavit For Search Warrant, Authored By Detective Samuel (Sam) D. Purdin on 10/16/2017, Pages 1 of 2; Ex.- L - Search Warrant for Richard Lask's residence, Page 1 of 1; Ex.- M - Bill Of Particulars Filed by David Kelley, Prosecuting Attorney 12/28/2017, Pages 1 of 2;Ex.- M-1 - Transcript of Suppression Hearing Held March 7, 2018, pages 1 - 230;

Ex.- N - Discovery Attachments of State's Witness List, Case No. CRi 2017-0139, Page 1 of 1; Ex.- O - Kansas Highway Patrol [KHP] Vehicle Detention Report [HP-141], Policy Number FOR-44 / Effective Date 03/23/23, Rescinds FOR-44 Date 12/20/22, Pages 1 through 7; Did you seek further relief by a higher state/federal court ? Yes. Supreme Court of Ohio, Case No. GEN-2023-0536, Date filed: April 24, 2023, Writ of Habeas Corpus, Results: Decision Without Published Opinion, In Habeas Corpus, Sua sponte, cause dismissed, June 6, 2023; Petition pursuant to 28 U.S.C.§ 2254 for Writ of Habeas Corpus, Richard Lask v. Warden, North Central Correctional Institutoin, Case No. 1:23-cv-00525-MRB-CHG- Doc#: 1 through 16 Filed June 15, 2023, Doc#: 16, Page 1 through 20, PageID#: 823. Cause of Action: False arrest, unreasonable search and seizure, and Franks violations on the Affidavit For Search Warrant and Indictment. Results: Still pending before Honorable Justices: Judge Barrett and Magistrate Judge Gentry, in the United States District Court, For The Southern District of Ohio, Werstern Division.

3.    Body of the Complaint:

a.    Jurisdiction: Federal courts may only hear cases or controversies over which they have subject matter jurisdiction. "The basic statutory grants of federal court subject matter jurisdiction are contained in 28 U.S.C.S.§§ 42 U.S.C.§ 1983, 1331, and 1332. This Court possesses subject matter jurisdiction over this Cause of Action. 28 U.S.C.§ 1331, which provides for '[f]ederal - question' jurisdiction, and, §1332, which provides for '[d]iversity' jurisdiction." Arbaugh v. Y & H Corp., 546 U.S. 500, 501, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006). Federal question jurisdiction exists when a plaintiff pleads a claim arising under the laws or constitution of the United States. Id. Diversity of citizenship jurisdiction exists when a plaintiff pleads a claim involving parties of diverse citizenship and meeting the required jurisdictional amount in controversy. Id. Plaintiff also asserts 'Supplemental' jurisdiction over Plaintiff's state claims. 28 U.S.C.§1367.

b.    Statement of the Case

On October 9, 2017 the Plaintiff was investigated for "following too closely" in Kansas, by Kansas Highway Patrol Trooper Chandler Rule. The trooper issued no citations but drafted an email to be forwarded to Ohio Law Enforcement. Detective Sam Purdin of the Adams County Sheriff's Office acted upon the email to investigate and initiated a traffic stop on the Plaintiff. The Plaintiff was arrested for OVI, but not asked to perform a chemical test. Detective Purdin obtained a search warrant based on the 'email' from Kansas and Marijuana recovered from a search of the Plaintiff's vehicle during an Ohio OVI arrest. The Plaintiff was subsequently not charged or issued a warrant for the OVI arrest in Ohio, though it was the underlying offense for the traffic-stop and a alleged "probable cause" for the "search and seizure" of Plaintiff's vehicle that uncovered the two pounds of marijuana that lead to the search warrant as well as email from Kansas. The Plaintiff was later charged and a warrant issued on October 27, 2017, for Posession of Marijuana discovered in Plaintiff's truck and residence pursuant to the warrant.

A Motion to Suppress hearing was held on March 7, 2018. The trial court issued a lengthly (13 page) decision with Findings of Fact and Conclusions of Law, on the motion to supress, in which it suppressed the Standardized Field Sobriety Tests as unjustified, illegal and constitutionally prohibited from inception, and, therefore must be suppressed as fruits of the poisonous tree. The trial court also suppressed any and all statements made by the Plaintiff after inception of said field sobriety tests as unconstitutional, but suppressed no other evidence.

c.    Description of Transcripts

For purposes of this Complaint, the transcript from the Motion to Suppress Evidence hearing, held on March 7, 2018, will be designated Sup.H.Tr./Ex."M1". The transcript from the Supplemental Motion to Suppress on Grounds of Unlawfully Obtained Search Warrant, held on 06/10/2020 will be designated T.p./Ex."F". All other Exhibits (hereinafter identified as Ex.) identified in Previous Lawsuits 2.(C) A thru. O shall remain the same with the exception of Exhibit's 1 and 2 Motions to Suppress Evidence by Defense Counsel Andrew B. Niehaus, #0090890 on behalf of (Defendant) Plaintiff on 01/16/2018. Plaintiff also reserves the right to implement additional numbered Exhibits as he frames the issues in this Complaint and Relief requested, as it pertains Compensatory and Punitive damages.

4.    Statement of the Facts

a.    On or about October 9, 2017, the Plaintiff was stopped by Kansas Highway
Patrol Trooper Chandler Rule who had no reasonable suspicion to conduct a traf-
fic stop. See Ex.-E- Decision/Judgment Entry, Court of Appeals, Fourth Appellate
District, Ohio, Case No. 19CA1101, at [¶7]. Trooper Rule requested permission to
search the vehicle, which (Lask) the Plaintiff denied. Id. Trooper Rule told the
men he was going to "temporarily detain" them and call for a K-9 unit to "snif
the car." He made arrangements to meet a K-9 unit at a different location along
the interstate in the direction the men were travelling. Id. But when Trooper
Rule approached the vehicle to advise the men of this plan, he said, I'm smell-
ing a little bit of weed now," and Lask admitted to having "a little bit of mari-
juana inside his pants." Trooper Rule concluded he had probable cause to search
the vehicle and cancelled the K-9 unit. Id. The Trooper had the Plaintiff exit -
the vehicle and placed the personal use marijuana on top of the vehicle, which
was apparently a quantity insignificant enough that the Kansas trooper was com-
fortable disposing of it on the side of the road and issued no citation for poss-
ession. Id. The Court of Appeals of the Fourth Appellate District, Ohio, deter-
mined that because Trooper Rule could not provide any specific and articulable
facts which gave rise to a reasonable suspicion that (Lask) Plaintiff committed
a traffic violation, the Court of Appeals held that the Kansas traffic stop sub-
sequently violated his Fourth Amendment rights. See Ex.-E- Decision/Judgment
Entry, Court of Appeals, Fourth Appellate District, Ohio, Case No. 19CA1101, at
[¶21]. However, the Kansas Trooper did proceed to perform an exhaustive search
of the vehicle and its contents. After an exhaustive encounter and illegal search,
the Kansas Patrol Officer caused an email to be sent to Ohio authorities. The
email read as follows:

b.    "Today on 10/9/17 I stopped a Toyota Avalon (OH HEM 2647) on I-70 west-
      bound. Through the duration of the stop I produced reasonable suspicion
      of drug trafficking (extremely nervous, didn't know where they were go-
      ing or how long they were going to stay, both occupants were unemployed,
      they stated they were friends but had a 20 year age difference and could
      not answer simple questions about each other, strong odor of a masking
      agent, the vehicle was just recently purchased, they stated they had not
      traveled into Kansas for approximately six months but the LPR has them
      crossing 8/8/17, etc.). The driver admitted to having personal use in-
      side the vehicle. The probable cause search produced a small amount of
      marijuana, two empty duffel bags which contained marijuana shake and a
      dryer sheet, and two large coolers which were practically empty. There
      was no currency located inside the vehicle. I have no doubt that they
      are involved in drug trafficking. I have attached the information below.
      Feel free to use the information however you please.

See attached Plaintiff's Ex.-H- Kansas email (emphasis added). See also Ex.-M1-

Sup.H.Tr. (7 - 79). See Kansas trooper Rule's DVD of State's Exhibit "1" of the
Sup.H.Tr. (13, Ln.15)(15, Ln.3 - 23)(16, Ln.8-10)(18, Ln. 4-8). Defendant Kan-
sas Trooper Rule alleged of his own volition decided to bring the DVD of the
Kansas traffic stop of Plaintiff, to support and bolster in a meeting of the
mind an inference conspiratorial in nature to deprive Plaintiff of his Civil
and Constitutional rights in violation of Plaintiff's Fourth Amendment, to help
by participating with the State of Ohio, all of the Defendants named herein, in
the malicious prosecution against the Plaintiff without probable cause knowing-
ly or recklessly in disregard for the truth. Put another way, Defendant Rule,
testified that he neither placed the State of Ohio or Defense Counsel on notice
before trial that he intended to bring/provide this surprised evidence of his,
that consequently turned out to disclose Defendant's Rules' "unconstitutional"
seizure, detention, and false arrest of the Plaintiff, which shows he was a wil-
ling participant assuming arguendo he would claim he was "compelled" by to "ap-
pear by subpoena." He was not commanded to volunteer the material evidence ad-
mitted into evidence for the purpose of the Suppression Hearing, designed to pro-
secute and convict the Plaintiff by all means necessary. Id.

5.    Request For Court to Take Judicial Notice

a.    "It is axiomatic that a trial court may take 'judicial notice' of its
own docket.'" Moreover, this federal Court has jurisdiction to take judicial
notice of State or Federal adjudicative facts; i.e., the facts of the case. A
court (when discretionary) may take judicial notice, whether requested or not.
A court shall (when mandatory) take judicial notice if requested by a party
and supplied with the necessary information. Time for taking notice; Judicial
notice may be taken at any stage of the proceedings. Ohio Evid.R. 201(C),(D) and
(F); Fed. R. Evid. 201.

b.    Plaintiff respectfully requests that this Honorable Court take Judicial
Notice of "Plaintiff's Exhibit-E- Decision / Judgment Entry of Court of Appeals,
Fourth Appellate District, Ohio, Case No. 19CA1101," for the proposition that a
determination has already been determined by a competent court whose accuracy
cannot reasonably be questioned; rendering Defendant Chandler Rule's Kansas Traf-
fic stop of the Plaintiff as "unconstitutional at its inception and the unconst-

itutional information alleged within the "email" sent to Adams County Sheriffs'
Law Enforcement authorities as fruits of the piosonous tree, a violation of the
Plaintiff's Fourth Amendment rights to the United States Constitution. Moreover,
Defendant Rule's initiating to send an unreliable email filled with false infor-
mation was the direct cause of the State of Ohio instituting an investigation,
and continued prosecution for which Defendant Rule willfully and knowingly or
reckless disregard for the truth, did infact continued to conspire and partici-
pate in the mailicious prosecution of the Plaintiff without probable cause and
in violation of his Fourth Amendment right where (1) Defendant Rule sent the
email, (2) Defendant Rule whether by subpoena or otherwise testified against the
Plaintiff during suppression hearing, and (3) Defendant Rule of his own volition
brought evidence DVD of the Kansas traffic stop to help bolster the other named
Defendants herein case against the Plaintiff in a conspiracy of the meeting of
the mind.

6.    Ohio Traffic Stop / False Arrest / Unlawful Search and Seizure

The Adams County Sheriff's Office received an email from Kansas Highway
Patrol Trooper Chandler Rule on October 9, 2017, indicating he had made a traf-
fic stop on a subject known as Richard Lask and Mr. Lask should be a person of
interest with respect to drug trafficking. See Ex.-H- Kansas email (emphasis ad-
ded). As a result, on October 16, 2017, Detective Sam Purdin of the Adams County
Sheriff's Office traveled to the area of the residence of (Mr. Lask) the Plaint-
iff in order to do some preliminary investigation as a direct result of receiv-
ing the Kansas email. See Ex.-K- Affidavit For Search Warrant, at 2).

7.    A pickup truck, later to be determined to be driven by the Plaintiff, was
exiting Lask Lane, and proceeded to turn onto Stanfield Road. Detective Purdin
began to follow said red pickup truck. Detective Purdin alleged on route to State
Route 41, the Plaintiff's vehicle allegedly failed to stop at the stop sign, and
later in due course the Detective allegedly observed the same vehicle failing to

maintain lanes drifting across the double yellow line. Detective Purdin init-
iated a traffic stop and determined the driver to be the Plaintiff Mr. Richard
Lask. During the traffic stop, Detective Purdin alleged that the Plaintiff's
eyes were glassy, the Plaintiff allegedly had a strong odor of marijuana about
his person coming from the vehicle, and the Plaintiff appeared neverous.

8.     Prior to initiating the traffic stop, Detective Purdin called for Deputy
Randy Walters to assist the detective at the traffic stop since Detective didn't
possess a citation traffic booklet. Upon approaching the driver of the truck,
which turn out to be the Plaintiff, Detective Purdin spoke to him and explained
the reason for the stop, and went back and waited on Deputy Walters to arrive.
See Sup.H.Tr. (100, Ln. 4-23) Ex."M1" attached hereto.

9.     Upon Deputy Walters arriving on the scene, Detective Purdin explained to
him what he had observed, alleged stop sign violation, and driving left of the
center yellow line along with the smell of marijuana about Plaintiff's person
as he got upon the driver window. Id. Deputy Randy Walters then pick up on the
traffic stop from Detective Purdin who who stated he never spoke to the Plaint-
iff at the scene from that point on. See Sup.H.Tr. (101, Ln. 1-24)(108, Ln. 1-18),
Ex.-"M1" Moreover, Detective Purdin testified (stated) that other than Plaint-
iff's eyes being glassy and the odor of marijuana as he approach the window of
the truck, Detective Purdin admitted that Mr. Lask never stated to him that he
had previously smoked marijuana (cause he never spoke with Lask anymore at the stop),
that the information in his Affidavit for a Search Warrant where he stated Mr.
Lask admitted to him personally that he previously smoked weed did not actually
come from him. Detective Purdin testified that the information he included in his
Affidavit came from a "conversation he over-heard taking place between Plaintiff
and Deputy Walters, and he was just repeating what he heard. See Sup.H.Tr. (108,
Ln. 1-17), Ex."M1"

10.     Defendant Deputy Randy Walters further testified that he initially got

brought into the case, when Detective Purdin contacted him about a vehicle that he was going to make a traffic stop on, on traffic violations and asked for his assistance. See Sup.H.Tr. (158, Ln. 1-10), Ex."M1". Defendant Walters testified he spoke directly with Detective Purdin via the police radio. See Sup.H.Tr. (159, Ln. 9-23)(160, Ln.1-11), Ex."M1". Defendant Deputy Walters further testified it was relayed to him by Detective Purdin he felt (Mr. Lask) the Plaintiff may be under the influence. Id. Defendant Deputy Walters identified himself to (Mr. Lask) the Plaintiff, and questioned him as to the smell of marijuana coming from the vehicle and asked the Plaintiff if he'd smoked any marijuana. The Plaintiff was forthcoming and admitted he had smoked marijuana six (6) hours earlier that day, and Deputy Walters in the video asked (Mr. Lask) the Plaintiff if he was impaired and the Plaintiff said, no. And Deputy Walters never saw the Plaintiff operating the vehicle. See Sup.H.Tr. (162, Ln. 16-24)(163, Ln. 1-3)(196, Ln. 17-24)(198, Ln. 14-24)(199, Ln. 1-16, 20-24)(200, Ln.1-20)(201, Ln. 1-2), Ex."M1".

11.    Defendant Deputy Walters asked the Plaintiff if he mind stepping out to perform a few Field Sobriety Tests. The Plaintiff readily agreed. See Sup.H.Tr. (168, Ln. 20-24)(169, Ln. 1-23)(170, Ln. 1-23)(171, Ln. 1-24), Ex."M1". Defendant Deputy Walters administered a one leg stand test, a counting test, which is like a diverted attention counting test on one hand, and then he also administered a one leg st- or a walk turn test. Id. at(163, Ln. 20-24).

12.    Subsequently, during the Suppression Hearing, the trial judge Defendant Brett M. Spencer ruled that the field sobriety tests as administered were unjustified, illegal and constitutionally prohibited from inception, therefore must be suppressed as fruits of the poisonous tree. The trial court judge Defendant Spencer went on to conclude that the statements made by the Plaintiff after inception of said field sobriety tests are also suppressed. See Ex."D" Judgement Entry of Trial Court Findings of Facts and Conclusion of Law on Motion to Suppress, by Defendant Brett M. Spencer, page(s) 8-9.

13.   Requests For Court To Take Judicial Notice

a.   Plaintiff respectfully requests that this Honorable Court take Judicial Notice of Plaintiff's Exhibit- "D" Motion to Suppress Judgement Entry of Findings of Facts and Conclusions of Law, at page 8-9, rendering the Field Sobriety Tests and Statements made after inception of field sobriety tests as unjustified, illegal and constitutionally prohibited from inception, as fruits of the poisonous tree; in violation of Plaintiff's Fourth, Sixth, and Fourteenth Amendment rights to the United States Constitution and corresponding sections of the Ohio Constitution, thereby suppressed. Fed R. Evid. 201.

14.   Defendant Deputy Walters went on to perform a pat down for weapons and/or contraband after (Lask) the Plaintiff stepped out to perform field sobriety tests, but, did not ask or insist on "a protective search of the Plaintiff's - truck for weapons or contraband" allegedly suspected by the smell of marijuana, nor requested to do a protective search of any container's within the Plaintiff's vehicle pursuant to the automobile exception. See Sup.H.Tr. (171, Ln. 1-24), Exhibit - "M1".

15.   Defendant Deputy Walters consequently placed the Plaintiff under (physical) custodial arrest for OVI, operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them. R.C.§4511.19(A)(1)(a). See Sup.H.Tr. (184, Ln. 17-23)(185, Ln. 1-23)(186, Ln. 1-24)(187, Ln. 21-24)(188, Ln. 1-24), Ex."M1". Walters stated with threatening accusations that before he has to do an inventory paper having already decided to tow Plaintiff's truck; asked the Plaintiff if he had any "marijuana," or weapons in his vehicle, and Plaintiff relied no, but, he stated yes afterwards realizing these Officers were going to search his vehicle by any means necessary. Id. The Plaintiff at that point stated he had some personal use in his vehicle in a cooler behind the passenger seat. See Sup.H.Tr. (189, Ln. 1-24), Ex."M1". Defendant Deputy Walters told the Plaintiff he's going to roll the window down a little bit in the back of his police cruiser where Plaintiff had

been seated in handcuffs, and to holler out if he needed something. Defendant
Deputy Walters went on to address Detective Sam Purdin by stating "Okay Sam if
you wanna go ahead and we'll start with that, hold on (inaudible) .... Id. But
Detective Sam Purdin had already begun a search and seizure of the Plaintiff's
vehicle, and Dep.Walters stated I guess that's why it smelled like marijuana in
the vehicle.  Detective Sam Purdin: (inaudible). Id at 190, Ln. 1-3), Ex."M1".

16.      Defendant Deputy Walters when asked why the "marijuana was not on the
inventory report" of Plaintiff's personal use marijuana discovered in his truck
that he personally had alleged in his (narrative) police report having performed
the inventory and "He" "During an Inventory of the truck found 'a blue lunch bag'
containing approx. two pounds of Marijuana.'" Deputy Walters testified that he
did not want to steer Defendant Kelley herein (Prosecuting Attorney), wrong, but,
"that the marijuana on the video had already been, was being removed by Detective
Purdin." Then afterwards, Deputy Walters stated he inventoried the Plaintiff's
truck before towing it to Scott and Combs Towing. See Sup.H.Tr. (192, Ln. 8-24)
(193, Ln. 1-24)(194, Ln. 1-14), Ex."M1"; and Ex."I" Incident Police Report's of
both Deputy Randy Walters and Detective Sam Purdin had on 10/16/2017, page 1 of 2.

17.      Defendant Deputy Walters testfied when questioned by Defendant Kelley
(Prosecuting Attorney), whether Deputy Walters eventually charged the Plaintiff
with (OVI) any traffic offenses? Deputy Walters testified that he did not event-
ually charge Mr. Lask with OVI even though he had been the citing arresting off-
icer. Deputy Walters stated that he did not charge Plaintiff with OVI because of
the felony charge of Possession of Marijuana. Defendant Deputy Walters testified
when questioned  if he does or doesn't normally charge the misdemeanor? Deputy
Walters replied Uh, there's been times when "we" have. I, in this circumstance I
don't believe "we" proceeded with the misdemeamnor due to the felony. See Sup.H.
Tr. (195, Ln. 14-23)(196, Ln. 1-10), Ex."M1". Deputy Walters testified that he
believed Detective Purdin (a veteran's police officers information provided to

use that in his investigation) telling him that he believe Mr. Lask was under
the influence, influential on his decisions. Deputy Walters also testified that
he was well aware of the Kansas tip and "email" sent from Kansas Highway Patrol
Trooper Rule. Deputy Walters testified that he found out about it around the ex-
act same time as Detective Sam Purdin. See Sup.H.Tr. (216, Ln. 10-24)(217, Ln.
1-6), Ex."M1".

18.        Defendnat Detective Purdin was questioned by Defendant Kelley (Prosecut-
ing Attorney), as to at some point, did Detective search (Mr. Lask) Plaintiff's
vehicle? Detective Purdin replied, yes he did. Detective Purdin testified that at
the time he started that search, Det. Purdin testified that Deputy Walters had,
placed Mr. Lask the Plaintiff herein under arrest for OVI and had placed him in
the back seat of his cruiser. Detective Purdin testified that the basis for him
searching the Plaintiff's vehicle at that point and time, Mr. Lask had been arr-
ested and um, that along with the odor of the marijuana um, he conducted a search
of the vehicle; and he found in a cooler on the back seat, in it was two large -
bags that contained marijuana. Defendant Detective Purdin personally removed the
marijuana from the Plaintiff's vehicle and photographed it, and transported it to
the Adams County Sheriff's Office. See Sup.H.Tr. (102, Ln. 23-24)(103, Ln. 16-23)
(104, Ln.8-10, 17-24)(105, Ln. 1-4), Ex."M1".

19....    Defendant Detective Purdin identified State's Exhibit "4", as
his Affidavit For A Search Warrant, which was/is two pages. Id. at(105, Ln. 16-24),
Ex."M1".. Defendant Detective Purdin testified that his search of the
Plaintiff's truck took place before the inventory search, at which
time he located a blue cooler that contained two-gallon size bags of marijuana.
But, Detective Purdin stated in his Affidavit and his Police (Narrative) Report
he found the marijuana during the inventory search; and when questioned which one
is true, Detective Purdin stated with arrogance, both. See Sup.H.Tr. (130, Ln. 7-
24)(131, Ln. 1-24)(132, Ln. 1-24)(133, Ln. 1-21)(134, Ln. 20-22)(135, Ln. 1-3),
Ex. "M1". When asked have he been trained on the policy on how to conduct invent-
ory searches, Detective Purdin testified he's lectured a lot from the prosecutor's

office on searches and so forth. And he considers that his training. Id.

20.      Defendant Brett M. Spencer herein (trial court judge), spoke upon the record of the Suppression hearing in the following: COURT: Counselor um, I know one of the arguments is they didn't charge him with DUI. Uh, therefore that was unlawful search. What's the issue that you're wanting to bring up about Metham-phetamine. Was there a charge of Illegal Assembly? ATTORNEY NIEHAUS: Uh, that's what I was getting to I was going ask why there wasn't any (OVI) charges. COURT: Okay. If you'll give me just one second. Mr. Riggs uh, I'll, I'll allow it if you want to ask about uh, uncharged um, Felonies. See Sup.H.Tr. (150, Ln. 1-15), Ex."M1". See also Ex."1" pgs.4; Ex."2" pgs.5, Motion's to Suppress, Filed 01/16/18.

21.      Defendant Detective Sam Purdin testified that he spoke with Defendant Chandler Rule of the Kansas Highway Patrol, on at least two different occasions, regarding the "email" trooper Rule sent alleging Plaintiff was a suspected drug trafficker. Defendant Det. Purdin alleged on both occasions he called Defendant Trooper Rule, they just went over the same inter-action of the first phone call basically trooper Rule told him the same story. Detective Purdin stated in his Affidavit for Warrant, that he observed Plaintiff, Richard Lask, leaving his re-sidence, but, during the suppression hearing he testified that he did not act-ually see the Plaintiff walking out his door. He never saw the Plaintiff other than inside the Plaintiff's vehicle, the red dodge pickup truck turning off of Lask Lane onto Stanfield Road. See Sup.H.Tr. (106, Ln. 10-22)(113, Ln.9-24)(114, Ln. 7-13)(115, Ln. 19-24) and (116, Ln. 1-5), Ex."M1".

          TRANSCRIPT OF HEARING ON REMAND FROM FOURTH DISTRICT HELD 6/10/2020

22.      Plaintiff submits that he was represented by different counsel through-out his Appellate process, Steven R. Adams #00052743, appeared as counsel on the Plaintiff's first appeal as of right and on Remand mentioned herein. The Law Off-ices of Steven R. Adams, LLC, 8 West Ninth St., Cincinnati , OH. 45202 were re-commended by family members, and represented Plaintiff until his economic status prevented the same.

23.     Plaintiff asserts the entire Transcript (T.p.) Of The Hearing On Remand
From The Fourth Appellate District, Ohio, pages 1 through 106 to support Findings
of Fact, Conspiracy, Bias, and Conspiracy To Commit Fraud Upon The Court in the
same individually and collectively based on the same Objective to deny Plaintif-
f's Constitutional rights to the Fourth, Fifth, Sixth, and Fourteenth Amendments
to the United States Constitution, knowingly or with reckless disregard for the-
truth without reasonable suspicion or probable to do so in the "Use of Sham Legal
Process" and lack of Due Process under the Due Process Clause, in the Unlawful
Seizure, Detention, False Arrest and False Imprisonment that resulted in the - -
Malicious Prosecution of the Plaintiff from acts, ommissions, and misconduct had
on 10/16/2017 through 10/27/2017 and continue in the same upon the filing of this
Cause of Action pursuant to 42 U.S.C.S.§ 1983, by all of the Defendant's mentioned
in this Complaint.

24.     Specifically, the case was remanded by the Fourth District on an alleged
very narrow issue. And that issue was as directed on page 13 of (Ex."E") of the
court's ruling that sent the trial court to State v. Clary, 4th Dist. Lawrence No.
96CA7, 1996 WL560522, *2 ("If an affidavit supporting a search warrant contains
illegally obtained information, the inclusion of the illegally obtained informat-
ion does not taint the entire warrant if it is otherwise supported by probable
cause. The affidavit is tested for probable cause without the illegally obtained
information" (Citations omitted.)); instructing the trial court Defendant Brett
M. Spencer, to excise, for lack of a better term, the Kansas information. And then,
see if based on the document, the affidavit then has the requisite probable cause
for a warrant to issue on the Ohio Traffic Stop that resulted in Plaintiff's "un-
lawful seizure, detention, false arrest, and unlawfully detained seizure of Lask's
vehicle that rendered the discovery of two pounds of marijuana fruits of the pois-
onous tree from Lask's right under the Fourth Amendment to be free from "unreason-
able seizures without probable and/or warrant issued lieu of his arrest with for-
mal charges brought against him for his 'physical' arrest for OVI." See T.p.4.Ex."E"
and "F", Lack of "probable cause" in lieu of unlawful seizure 4th Amendment violation.

25.     Additionally, the Court of Appeals noted again on page 13 that they incorrectly presumed that there'd been an order of, of suppression, um, that supported the warrant and not just evidence from the Knsas traffic stop and they did not address the issue. Id. at paragraph [24] up above.

26.     Plaintiff submits that Attorney Adams not only advocated for the Plaintiff herein, but, he as an Officer of the Court, empathized with Defen- ant (Judge) Brett M. Spencer, by trying to advocate for him as well as without breaching his client's (Mr. Lask) best interests as Defense counsel. See T.p. (30, Ln. 13-21) COURT: I didn't have the pleasure of reading your brief to the Fourth Appellate District. It's a , it's kind of one of the oddities of law that, um, when a, when a, uh, a Judge doesn't have any representation at the appellate level, it, we are like lambs to slaughter. We're not to shake or move when they start cutting our throat. We have no one representing us. So, I didn't have the chance to read it. Id. ATTORNEY ADAMS: Well, Judge, I'm, I'm representing you. I'm representing you right here. COURT: But my question is this. Did you argue , uh, the independent source exception in your brief? ATTORNEY ADAMS: No. See T.p. (31, Ln. 1-6), Ex."F".

27.     Plaintiff submits also, consider this fact, this, this is where you can determine Defendant Purdins' credibility. When he says that he swears that he re- ceived an email on October 9th, 2017 in his affidavit. And they ended the motion to suppreess hearing he swears that he received the email on October 16th, 2017, two sworn test two cases of sworn testimony, both of which are utterly false. You can't determine how this guy's telling the truth. T.p. (42, Ln. 2-10), Ex."F".

28.     For the independent source exception to apply the information presented in a warrant affidavit must be wholly unconnected to the illegal seizure and/or search. The decision to seek the warrant must not be prompted by information that is gained during the illegal seizure or search. And also, Plaintiff points out that Purdins decision to or falsify contents of the email to include information that

was misconstrued in a disfavorable light, of Mr. Lask, that he Purdin sought to get a Judge or Magistrate to sign. So, the real issue is, is/was Purdins thinking disconnected from the Kansas email and factually Plaintiff is going to show that it was not. So, lets get to the facts. We know how important words are, you know, how important words are. And for example, some words quoting the court that you know about gravamen, I don't need to go into any detail but I will. T.p. (11, Ln. 12-20), Ex."F". So, the words of the U.S. Constitution are powerful, they're sacred, and they'd been around for over 231 years, barring some amendments and they, those words remain true and constant. We, the people in order to form a more perfect union. Okay. So, you know, witnesses use words when they take a witness stand. And also cops use words when they write a search warrant affidavit, and both the witnesses and the cops Swear to God or affirm to tell the truth, the whole truth, and nothing but the truth. Thankfully, the words of the Constitution provide for a check on that police power and Defendant Brett M. Spencer was part of that check in this process, so, we thought? See T.p. (12, Ln. 1-21)(13, Ln. 1-22), Ex."F".

29.     Mr. Lask had admitted to quote, having a little bit of marijuana inside his pants. He exits the car, cop places of personal use marijuana on top of the vehicle and, you know, from the record it says a quantity insignificant enough that the Trooper disposed of it at the side of the road and no citation was issued. Now, compare those true facts to the email State's Exhibit number "2". You know, Purdin says that the defendant admitted to having personal use inside the vehicle well that that's misleading at best misleading at best. There's a distinction here. And this is where, uh, Purdin, omitted, omitted, true facts and chose instead to mislead the Magistrate on facts that he swore to, which are not true. T.p. (14, Ln 1-21),Ex."F". Because what happened in that, in that affidavit was the, the Detective Purdin gave the wrong implications for the Magistrate to se the true picture. See T.p. (15, Ln. 16-19), Ex."F". Defendant Detective Purdin implied that Richard Lask from the Shake

found in the two large duffel bags. He, that Lask admitted that that was his personal use that's falsely misleading. Why, because he never did that. It can be read in the transcript, the Motion to Suppress Transcript. What the Plaintiff said was he had it in his pants pocket when he exited, he admitted it was that small amount that, that trooper threw off to the side of the road. That that was for his personal use, not anything in two large duffel bags found in the vehicle by the Kansas State Trooper. Yet Detective Purdin took it on his own volition to say that two large duffel bags were found with shake. See T.p. (16, Ln. 1-14), Ex."F".

30.      Large is inaccurate, large is not true. That the true language was that they are both empty. And at the coolers, two large coolers were practically empty. But it's very misleading when a Detective chooses his own words to convey to a Magistrate for a search warrant. And those words are in fact false. Id. at (16, Ln. 15-21)(17, Ln. 1-19), Ex."F". Now another, this is big because Defendant Det. Purdin wants to give the Magistrate, the implication that he saw, Richard Lask leave his residence. He refers to that several timess throughout his affidavit. That's not true, it's not true. Why? Because what he actually said was he wentto the vicinity of the (defendants) Plaintiff's residence to follow up on the email. Motion to Suppress transcript, page 88 (T.p. 18, Ln. 14-21) lines 9 through 12. He, he also testified that the residence was off, off Lask Lane transcript, page 88 lines 14 tp 20. And he testified that when he passed Lask Lane, it appeared to be a shared driveway between a couple of residences (Google-Map would reveal its at least 1050 feet from his residence down Lask Lane to enter onto Stanfield Road. And Purdin said that he passed Lask Lane twice while driving. He never once testified that he drove  on Lask Lane. He never testfied that he saw Richard Lask house. He never testified that he drove in and down the long driveway to Richard Lask residence. The only thing that he testified to was passing Lask Lane twice. And then later at, from a position where he parked on Stanfield, he observed a Red

Dodge truck exiting Lask Lane, or merging onto Stanfield Road transcript, page 91 lines, 19 through 20. Shortly thereafter he pulled Plaintiff over. So, we have a, another false and misleading impression from rewriting the true facts that Detective Purdin used to get a Magistrate to sign off on a search warrant. T.p. (19, Ln. 1-22) Furthermore, he emitted the actual true facts, which should be questioned, why didn't (Id. at 16, Ln. 21-22) he just quote the email verbatim rather than taking excerpts out of the email, not test, not writing what the true words from the email were, and then passing that onto the Magistrate. He is truly misleading the Magistrate here by his false facts and his omissions. It's truly misleading in a misrepresentation. T.p. (20, Ln. 1-7).

31.     Defendant Detective Purdins motivation to seek the warrant. Det. Purdins incident  report the sole basis for seeking a search warrant, He had previously received information from the kansas Highway Patrol regarding the suspect of the trafficking and marijuana. With this information, along with the large amount of marijuana found in the suspect's vehicle, he obtained a search warrant. So, by Defendant Purdins own words, the information presented in the warrant affidavit is/was not wholly unconnected to the initial Kansas stop and search. That's the gravamen, he didn't mention red tail lights, busted windshield, mark lane violation, running stop sign. The truth is that from the narrative that he wrote, he didn't put, hey, you know, I got a stop or a red light or, brake light, I got a stop for a tail-light violation. Never mentioned that and in that part of the, um, his narrative, what he says is what I just quoted and those words alone, tell you that his mind was not wholly unconnected to that Knasas stop and search, in his own words. T.p. (27, Ln. 1-22), Ex."F".

32.     It was the Kansas email and the two pounds of marijuana (Ohio Traffic Stop) in the truck that prompted the search warrant. Nothing else, and that's the true gravamen, that's why it's very important for the Court to consider because that goes directly to the independent source rule and whether or not Purdin was wholly

unconnected to the email. He wasn't, he was completely connected to that email
in light of the unlawful seizure of Plaintiff's person and false arrest with-
out probable cause in violation of Plaintiff's Fourth Amendment rights. See
T.p. (52, Ln. 14-21), Ex. "F". Id. at (53, Ln. 1-7), Ex. "F".

33.     Request For Court To Take Judicial Notice

a.      "It is axiomatic that a United States District Court may take Judicial
Notice of a rendered Opinion by the Supreme Court of the United States on Writ
of Certiorari from the United States Court of Appeals For The Sixth Circuit.
Moreover, this federal Court has jurisdiction to take judicial notice of State or
Federal adjudicative facts; i.e., the facts of the case. Fed. R. Evid. 201.

b.      Plaintiff respectfully requests that this Honorable Court take Judicial
Notice of Plaintiff's Exhibit Number "3" Chiaverini v. City of Napoleon, 219 L.
Ed. 2d 262*|2024 U.S. LEXIS 2710**|144 S. Ct. 1745|2024 WL 3056034 Overview:
HOLDINGS: [1]-When a government official brought multiple charges, only one of
which lacked probable cause, the valid charges did not insulate the official from
a Fourth Amendment malicious-prosecution claim per 42 U.S.C.S.§ 1983 relating to
the invalid charge. The valid charges did not create a categorial bar. Syllabus,
Under the Fourth Amendment, a pretrial detention counts as an unreasonable seiz-
ure, and so is illegal, unless it is based on probable cause. These uncontested
points suffice to doom the Sixth Circuit's categorial rule barring a Fourth Amend-
ment malicious-prosecution claim if any charge is valid. Of course, a Fourth Amend-
ment malicious-prosecution suit depends not just on an unsupported charge, but on
that charge's causing a seizure--like the arrest [**4] and three-day detention -
here. The parties and amicus curiae offer three different views of how that caus-
ation element is met when a valid charge is also in the picture. But this issue is
not properly before the Court, so the Sixth Circuit should address it on remand.
Pp. 4-8. Vacated and remanded. Plaintiff asserts the Supreme Court's ruling opened
the door for Plaintiff's Cause of Action for "malicious prosecution" on his alleged
(Fabricated) OVI charge and running a stop sign and lane violation traffic infract-
ions that lead to an invalid inference of probable cause of charges that never

existed and consequently resulted in the Plaintiff's "unlawful seizure", "unlaw-

ful detention", "search", "false arrest", and false imprisonment without probable

cause or reasonable suspicion that Plaintiff had committed a crime for traffic -

violation of running a stop sign, lane violation driving left to center, or OVI

(operating a vehicle under the influence of either alcohol, drugs, or both) falsi-

fied and fabricated by Detective Sam Purdin and Deputy Randy Walters of the Adams

County Sheriff's Office in a Conspiracy to hid and conceal their own unlawful mis-

conduct knowingly or with reckless disregard for the truth, caused the seizure an

detention to start and continue on into filing this Cause of Action today, unjusti-

fied at the outset, in violation of Ohio Evid. R. 404; and Fed. Evid. R. 404 in the

same, that also became unreasonably prolonged for its lapses from being detained in

the Adams County Sheriff's Office Detention Center from 10/16/2017 through 10/27/

2017 without probable cause or chargable complaint's in lieu of a warrant for an

arrest issued by a Judge or Magistrate that violated Plaintiff's Fourth Amendment

rights to be free from unreasonable seizures and malicious-prosecution where all

jurisdiction was lacking. Fed. Evid. R. 201.

34.     REQUEST FOR DECLARATORY RELIEF ON INVALID OVI CHARGE
     AND INVALID TRAFFIC INFRACTIONS FOR RUNNING A STOP SIGN
     AND LANE VIOLATION DRIVING LEFT TO CENTER
     FALSIFIED AND FABRICATED

a.  Injunctive Relief

("[I]n any action brought against a judicial officer for an act or omiss-

ion taken in such officer's judicial capacity, injunctive relief shall not be granted

unless a declaratory decree was violated or declaratory relief was unavailable.").

Plaintiff asserts that it can be said in the totality of circumstances in the case

sub judice, that declaratory relief was unavailable by virtue of no charges never

presented against the Plaintiff for an alleged OVI, running a stop sign, or Lane -

violation driving left to center; Where Defendants Purdin, Walters, Kelley, and --

Brett M. Spencer (Judge) knowingly or with reckless disregard for the truth, Con-

spired, and Conspired to Commit Fraud Upon The Court, who all acknowledged that the

Plaintiff was never charged officially with OVI, running a stop sign, or lane violation driving left to center; however, these invalid alleged charges falsified and fabricated to infer the finding of probable cause where their was/is none but was never "declared unconstitutional" and invalid in the Judicial Officer's impermissible characterization against the Plaintiff in violation of his Fifth, Fourth, Sixth, and Fourteenth Amendment rights to the United States Constitution, and corresponding Sections of Ohio Constitution. And on the other - hand, "declaratory decree was violated in that all of the Defendants mentioned herein in the Ohio Traffic Stop, used and continue to use the False Facts to insulate itself from the invalid charges presented heretofore without any probable cause that lead to Plaintiff's unreasonable seizure, detention, false arrest, & false imprisonment in the Adams County Sheriff's Jail from 10/16/2017 through - 10/27/2017 without a preliminary hearing or bail hearing in the same until other charges of Possession of Marijuana were arraigned against Plaintiff; herein pending resolution pursuant to 28 U.S.C. § 2254.

b.       Since the Plaintiff was never officially charged with OVI, running a stop sign, and lane violation driving left to center, though Plaintiff was in - fact unlawfully arrested for thses alleged acts without more, notwithstanding, their was no complaint filed and warrant issued in lieu of Plaintiff's arrest by a detached neutral Judge or Magistrate filed in the Clerk of Courts; no crime is committed by law, Federal and State. Furthermore, as a direct result, the trial court and prosecuting attorney lacked all jurisdiction over the Plaintiff and the alleged charges falsified and fabricated, conspired to conceal, and continue to do so in bad faith. As such, Plaintiff asserts that the Court should find that § 1983 does not shield the Judicial Defendants from injunctive relief to Plaintiff's constitutional claims based on actions taken or not taken intheir judicial capacity (i.e., excepting claims based on their administrative functions). The Plaintiff also asserts that the Judicial Defendants current litigation in a Writ

of Habeas Corpus currently pending before Federal Court, does not insulate the Defendants from Plaintiff bring this Cause of Action for malicious-prosecution, demonstrates a case or controversy warranting declaratory relief under **Article III of the Constitution.** The Judicial Defendants continue to use these false facts resulting from the underlying offense and reason for the intrusion and "traffic stop" to insulate itself under the Sixth Circuits previous categorial rule barring a Fourth Amendment malicious-prosecution claim in the wake of its valid claim for Possession of Marijuana, also being challenged pursuant to 28 U.S.C. § 2254. Furthermore, their exists a controversy in the present Cause of Action directly relating to the Court taking Judicial Notice of the Supreme Court of the United States recent decision in Chiaverini v. City of Napoleon, 219 L. Ed. 2d 262, 2024 U.S. LEXIS 2710**, 144 S. Ct. 1745, 2024 WL 3056034, in giving rise to the ripeness of Plaintiff's Complaint now before this Honorable Court.

c. The Plaintiff respectfully requests that this Court "Declare" that the charges for OVI, Running a Stop Sign, and Lane Violation Driving Left to Center, be declared "invalid" by virtue of no "Complaint or Warrant issued in Lieu of a-rrest by Judge or Magistrate; and Plaintiff's unlawful seizure, detention, false arrest, false imprisonment from 10/16/2017 through 10/27/2017 without probable cause or reasonable suspicion respectively." **See Exhibit Number "4"** attached ; **pages 8 - 13 for support herein: "Petitioner's Response to Respondent's Answer & Motion to Dismiss Haneas Corpus Petition as Time-Barred, Case:1:23-cv-00525-MRB-CHG- Doc#: 16 Filed 01/23/24 Page: 1 of 20 PAGEID#: 823.**

35. NARRATIVE POLICE REPORT OF DEPUTY RANDY WALTERS HAD ON 10/17/17

On 10/ 16/2017 I Deputy Randy Walters was called to assist Deputy Purdin with a traffic stop at State Rte 41, and Roush Hill. When I arrived on scene Deputy Purdin advised that a odor of Marijuana was coming from the truck, and the driver a Richard Lask looked to be under the influence of drugs. I made contact

with Lask who was still in the truck a red dodge. As I got to the window of the truck I could smell a strong odor of Marijuana. As I spoke with Lask I asked if he had been using Marijuana, or if any was present. Lask advised that he had - used Marijuana earlier in the day. I asked Lask if he felt like he was under - the influence at the time. Lask advised no. I did ask Lask if he could step out to do some test for me. The first test instructed to Lask was theone leg stand test. During the test Lask put his foot down several times, was off balance, - and did not count as instructed. The next test was a count test. Lask was able to perform the test. The last test was a walk, and turn test. Lask did not walk heal to toe, was off balance, and did not perform as instructed. When asked why he did poor on the test Lask advised that he was still feeling the effects of - the Marijuana. See Ex. "I" Narrative Police Report of Deputy Randy Walters on 10/17/2017.

36.          DEPUTY WALTERS OMITTED INFORMATION OF MATERIAL FACTS
             AND FALSE FABRICATED STATEMENTS

Deputy Randy Walters knowingly or with reckless disregard for the truth, "omitted from his police report that he did not after having (physically) arrested Mr. Lask for OVI, did not ultimately file charges or file a complaint for OVI in the Clerk of Courts in lieu of an arrest warrant," thereby violating Mr. Lask's Fourth Amendment right to be free from unreasonable seizure, detention, False arrest, and false imprisonment and malicious-prosecution; and [2] Moreover, Deputy Walters knowingly or with reckless disregard for the truth, Fabricated and made False Statements to wit: "He fabricated and falsely stated 'during an inventory of Lask's truck he found a blue lunch bag containing approximately two pounds of marijuana.'" "When infact, Defendant Detective Sam Purdin searched and seized said evidence after Plaintiff was seated in handcuffs in the back of Deputy Walters' police cruiser, and before any alleged inventory search was conducted on Mr. Lask's vehicle." See Sup.H.Tr. (184-188)(192-196, 198-199)(200-201, 212-214)(150, Ln. 1-15)(102-105, 107-108)(113, 118,)(121-122)(130-136), Ex."M1"; See, also, Motion's to Suppress Exhibits "1" and "2" attached hereto.

37.     NARRATIVE POLICE REPORT OF DETECTIVE SAM PURDIN
                    HAD ON 10/17/2017

a.     On 10/16/2017 at approximately 1:52 pm I (Detective Sam Purdin) observed a
red dodge pickup traveling on Stanfield Road heading towards St Rte 41 Manchester,
Adams County Ohio. I observed the vehicle fail to stop at the stop sign located at
Stanfield Road and St Rte 41. The vehicle then made a left turn onto St Rte 41 trav-
elingsouthbound. I observed the vehicle failing to maintain lanes. I proceeded to
make a traffic stop on the vehicle at St Rte 41 and Roush Hill Road.  I approached
the vehicle and found the suspect (Richard Lask) to be the driver of the vehicle.
Also in the vehicle was George Davidson. I explained to the suspect the reasoning
for the stop he replied that he had been trying to use his cell phone and wasn't
playing attention. I could also smell a strong odor of marijuana coming from the
vehicle. I requested Deputy Walters to respond to assist in the stop, after a few
minutes Deputy Walters arrived to assist. I explained to Deputy Walters the susp-
ect's actions and the smell of marijuana. Deputy Walters after having the suspect
perform a series of filed sobriety test determined that the suspect was under the
influence of drugs and placed him under arrest for OVI. A inventory of the suspect's
vehicle prior to having it towed was conducted at which time I located a blue cooler
that contained two gallon sized bags of marijuana. The marijuana was collected and
submitted into evidence at the Adams County Sheriff's Office.

b.     I had previously received information from the Kansas Highway Patrol regard-
ing the suspect as being suspected of trafficking in Marijuana. With this informat-
ion along with the large amount of Marijuana found in the suspect's vehicle I ob-
tained a search warrant for the suspect's residence located at 202 Lask Ln Manchester,
Adams County Ohio.

c.     At approximately 4:29 pm I along with Lt Wilson and Deputy Asbury executed
the search warrant. Upon gaining entry into the residence a Jessica Finch was the
only person located inside the residence. A search was conducted of the residence in

which a large amount of Marijuana was found along with several items of contra-
band. Located in the downstairs bedroom was a large metal container with a pad-
lock on it a set of keys with the suspect's name on them was also located in the
bedroom. We was able to gain entry into the metal container by using the keys -
and found 7 large bales of marijuana wrapped in a variety of packaging material.
I also located a semi automatic 9mm handgun under the bed mattress. Located in
the bathroom adjoining the same bedroom was a closet in which had a small amount
marijuana was found growing. Located in the same closet was a large red duffel
bag, black suitcase, and a blue cooler all of which contained bundles of marij-
uana wrapped in cellophone. While searching the bathroom 11 gallon sized zip bag-
gies containing marijuana was located in a metal box that was hidden by a fake
counter-top. A search throughout the residence revealed several items of contra-
band which was located, photographed and collected by deputies. While checking
the outside of the residence I located what appeared to be materials to manufact-
ure methamphetamine along with whats known as a 1 pot meth-lab. Bureau of Criminal
Investigation was called to the scene to assist in collecting samples from the
materials and disposing of the hazardous materials. I spoke with Richard Lask
stated that he would like an attorney before any question but did state that all
the marijuana found inside his residence belonged to him, he further stated that
neither George Davidson or Jessica Finch had any knowledge of the marijuana or
meth lab. Id. See Ex. "I" Narrative Police Report of Detective Sam Purdin, pgs.
1 of 2 had on 10/17/2017.

38.             DETECTIVE SAM PURDIN'S FABRICATED AND FALSE STATEMENTS
                ALLEGED WITHIN HIS NARRATIVE POLICE REPORT
                          HAD ON 10/17/2017

a.      In the first paragraph labelled as "a." Detective Sam Purdin "Fabricated
his alleged observations of any questionable traffic infractions, notwithstanding,
Plaintiff was never charged with any traffic violations for running a stop sign or
lane violation in the same, rendering Plaintiff's seizure, detention, false arrest,

and false imprisonment by Detective Sam Purdin a violation of Lask's Fourth
Amendment right to be free from unreasonable seizures without probable cause or
a warrant," and malicious-prosecution Detective Purdin knowingly or with reck-
less disregard for the truth, lacked probable cause or reasonable suspicion to
detain the Plaintiff beyond the scope of the underlying alleged traffic violat-
ions without more or his assisting in the unlawful arrest for OVI he acknowledges
in his Police Report he participated in with Deputy Randy Walters."

b.      **Moreover,** Defendant Detective Sam Purdin "fabricated" his assertion that
"A inventory of the suspect's vehicle prior to having it towed was conducted at
which time ("[h]e") I located a blue cooler that contained two gallon sized bags of
marijuana." Furthermore, in the Plaintiff's (Ex. "K" Affidavit For Search Warrant,
at 2.) by Det. Purdin) Detective Purdin again in that sworn report alleges he did
an inventory on Lask's vehicle and he discovered the contraband of two pounds of
marijuana.

c.      However, Defendant Detective Sam Purdin testified at Plaintiff's suppression
hearing, that "he" unequivocally conducted a search on Plaintiff's truck before the
"inventory search" and found the two pounds of marijuana, removed it, and photo-
graphed it before transfering it to the Adams County Sheriff's Office. Detective
Purdin went to state: "I had previously received information from the Kansas High-
way Patrol regarding the suspect as being suspected of trafficking in Marijuana.
With this information along with the large amount of Marijuana found in the suspect's
vehcile I obtained a serach warrant for the suspect's residence located at 202 Lask
Ln Manchester, Adams County Ohio. Defendant Detective Sam Purdin knowingly Conspired
to violate Plaintiff's Civil Rights by fabricating evidence and/or information, and
concealing the same, as Detective Purdin sought to hide the unlawful misconduct of
Deputy Walters false arrest of Plaintiff on an alleged OVI arrest, using sham legal
process, and conceal the unconstitutionality of his own misconduct rendering a search
and seizure of Plaintiff on false observed traffic violations never charged, in lieu

of no charges for traffic infractions for running a stop sign and lane violation
for allegedly driving left to center, issued no citation/complaint or filed same
with Clerk of Courts in lieu warrant for arrest. See Sup.H.Tr. (184-188)(192-196,
198-199)(200-201, 212-214)(150, Ln. 1-15)(102-105, 107-108)(113, 118)(121-122)(
130-136), Ex. "M1"; See also, Motion's to Suppress Exhibit's "1" and "2" attached
hereto.)

39.   AFFIDAVIT FOR SEARCH WARRANT BY DETECTIVE SAM PURDIN CONTAINED FALSE
      FABRICATED (INFORMATION) STATEMENTS AND OMISSIONS
      IN VIOLATION UNDER FRANKS V. DELAWARE

a.    The Plaintiff asserts that under Franks v. Delaware, "Omissions are false
statements if they are 'designed to mislead, or * * * made in reckless disregard
of whether they would mislead, the magistrate.'" "Reckless disregard" under Franks
means that the affiant had serious doubts of an allegation's truth. Thus, there are
two requirements in order to successfully challenge a warrant as containing material
omissions. First, it must be shown by a preponderance of the evidence that the omis-
sions were made with reckless disregard for the truth (the intent requirement). And
Second, had the omitted information been in the affidavit for the warrant, the omis-
sions would have undermined the probable cause determination (the materiality require-
ment).

b.    The Plaintiff asserts that "Where the defendant makes a substantial prelimi-
nary showing that a false statement knowingly and intentionally, or with reckless -
disregard for the truth, was included by the affiant in the warrant affidavit, and
if the allegedly false statement is necessary to the finding of probable cause, the
Fourth Amendment requires a Court to review and scrutinize the totality of circum-
stances to the finding of facts under the present Cause of Action, not for the det-
ermination of invalidating another charge valid upon the record pursuant to Heck v.
Humphrey.

c.    Moreover, the Plaintiff asserts that "It has long been settled that the find-
ing of an indictment, fair upon its face, by a properly constituted grand jury, con-

clusively determines the existence of probable cause for the purpose of holding the accused to answer." "There is an exception to this general rule when the defendants knowingly and intentionally presented false testimony to the grand jury to obtain the indictment," or "testified with a reckless disregard for the truth."

<u>Mens Rea, Knowledge</u>

d.      Under R.C. §2901.22(B), a person acts knowingly "regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstatnces when he is aware that such circumstances probably exist." As an affidavit is a form of giving testimony, the affiant must be competent to testify at trial to the facts stated in the affidavit. A witness may not testify in a case "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." "Personal knowledge is 'knowledge gained through firsthand observations or experience, as distinguished from a belief based on what -- someone else has said.'" ("A witness is required to testify from first hand knowledge which has been acquired by perceiving a fact through one or more of his five senses, of course, the witness must have had an opportunity to perceive and must have actually perceived".).

40.     KNOWING AND INTENTIONAL OMISSIONS AND FALSE /FABRICATED
        STATEMENTS IN AFFIDAVIT BY DETECTIVE PURDIN

a.      The Plaintiff submits that Defendant Detective Sam Purdin of the Adams County Sheriff's Office **"Falsely/Fabricated and Omitted the following:"**

        2)(page 2 of 2 Ln. 11-16) Richard Lask admitted to the Affiant
        he had previously smoked marijuana. (False) Det. Purdin admitted
Mr. Lask did not admit anything to him, Purdin testified during suppression hearing he overheard bits and pieces of a conversation between Deputy Walters and Mr. Lask. Sup.H.Tr. (108, Ln.4-17), Ex."M1". The Affiant further states an inventory search of Richard Lask's vehicle revealed approximately two (2) pounds of marijuana. (False) Det. Purdin testified he **"unequivocally found, removed, and photographed the two (2) pounds of marijuana before the inventory search took place."** See Sup.H.TR. (102, Ln.23-24)(103, Ln.1-6, 14-18)(104, Ln.8-10, 17-20)(105, Ln. 6-10, 16-24)(107, Ln.19-22)(130, Ln.7-24)(131, Ln.1-24)(132, Ln.1-19)(134, Ln.20-22)(135, Ln.1-3), Ex."M1".

Mr. Lask stated this marijuana was for his own personal use. (False) Again, it was never stated to Det. Purdin, this exchange took place between Deputy Walters and Mr. Lask following questions posed by Deputy Walters. See Sup.H.Tr. (162, Ln. 16-24)(163, Ln. 1-2)(168, Ln. 20-24)(169, Ln. 1-23)(170, Ln. 1-2)(171, Ln. 1-15) (186, Ln. 9-14)(187-189) and (198-199), Ex."M1".

b.      OMITTED (EVIDENCE) INFORMATION MATERIAL BY DETECTIVE PURDIN

        Plaintiff submits that Defendant Detective Sam Purdin knowingly and intentionally conspired in a conspiracy to commit fraud upon the Court, when he deliberately "Omiited from the affidavit for search warrant, Deputy Randy Walters' false arrest of Mr. Lask for an alleged OVI that false/fabricated to advance an unlawful search of his vehicle based on the Kansas email that Mr. Lask was suspected as being a drug trafficker." See Sup.H.Tr. (195, Ln. 14-23)(196, Ln.1-10), Ex. "M1". Furthermore, Det. Purdin "omitted" that Mr. Lask was never even charged or issued a warrant for his arrest for an alleged traffic infractions for running a stop sign, lane violation left to center, or OVI. Id.

c.      Plaintif also submits, Detective Sam Purdin "omitted" that his search and seizure of Mr. Lask's vehicle was unlawful in violation of the Fourth Amendment that uncovered two (2) pounds of marijuana fruits of the poisonous tree, as it was done without probable cause or warrant under Gant. See Sup.H.Tr. (102, Ln. 23÷24, Q. And at some point uh, did you search Mr. Lask vehicle?)(103, Ln. 1-6, A. Yes. Q. And at uh, at the time you started that search, do you recall where Mr. Lask was? A. Deputy Walters had um, placed Mr. Lask under arrest for OVI and had um, placed him in the back seat of his cruiser, 103, Ln. 14-18 Q. And what was the basis for you searching the vehicle at that point and time? A. At that point Mr. Lask had been arrested and um, that along with the odor of the marijuana um, I conducted a search of the vehicle); (150, Ln. 5-15 COURT: Counselor um, I know one of the arguments is they didn't charge him with DUI. Uh, therefore that was unlawful search. ATTORNEY NIEHAUS: Uh, that's what I was getting to I was going ask why there wasn't any charges. Id.

NARRATIVE POLICE REPORT OF DETECTIVE SAM PURDIN
HAD ON 10/17/2017

41.     Plaintiff avers that Defendant Sam Purdin's only reasoning for seek-
ing a "affidavit for search warrant" was based on his statements in his police
report verbatim as follows: **"I had previously received information from the Kan-
sas Highway Patrol regarding the suspect as being suspected of trafficking in
Marijuana. With this information along with the large amount of Marijuana found
in the suspect's vehicle I obtained a search warrant for the suspect's residence
Located at 202 Lask Ln Manchester, Adams County Ohio." See Ex."I", Incident re-
port by both Defendant's Sam Purdin and Randy Walters.**

42.     Plaintiff asserts that the information forwarded by email from the
Kansas Highway Patrol Trooper Chandler Rule to Defendant Purdin of the Adams
County Sheriff's Office, was rendered **"unconstitutional"** at its inception in vio-
lation of Mr. Lask's Fourth Amendment rights. Consequently, the Plaintiff avers
that the Ohio Traffic Stop was equally "unconstitutional" and Plaintiff's Seiz-
ure by both Purdin and Walters was accomplished in violation of the Fourth Amend-
ment, in the False and Fabricated allegations (uncharged) Plaintiff committed a
crime for running a stop sign, lane violation left of center, and OVI was in vio-
lation of Mr. Lask's Fourth Amendment rights to be free from unreasonable seiz-
ures without a warrant or probable cause. Therefore, the affidavit for a search
warrant, amounted to tainted "false/fabricated (information) statements and omis-
sions in violation of Mr. Lask's due process rights under Franks pursuant to the
Fourteenth Amendment that lacked probable cause. Furthermore, the Plaintiff avers
that "probable cause" was absent during the presentation before the State trial
court for a "preliminary hearing" as well as proceedings and testimony before -
the "grand jury" to indict the Plaintiff that was riddled with material falsehoods
and omissions based on misconduct by all Defendants herein except the Municipality
of Adams County pursuant to a Monell claim, that **"shocks the conscious to the very
highest degree."**

43.                                    CAUSES OF ACTION

(I) Violation of 42 U.S.C.§ 1983 (Fourth Amendment, Fifth Amendment, and Fourteenth Amendment - Unlawful Seizure, False Imprisonment and Continued Unlawful Detention without Probable Cause or any other Legal Justification), against Defendant Randy Walters who Knowingly and Intentionally or with Reckless Disregard for the Truth, Conspired and Perpetrated Falsehoods and Fabricated Evidence in his Police Report that also contained "Omission of False Arrest" who acted outside the scope of his legal employment/authority fraudulently conspired to commit Fraud upon the Court in his individual and official capacities under the color of state - law, and unsupported by the record;

44.        On 10/16/2017 Defendant Walters assisted Defendant Purdin with a traffic stop of Plaintiff suspected of allegedly operating a vehicle under the influence, OVI. After stepping outside his truck, Plaintiff asserts he was instructed to surrender to a pat down for weapons search, but, Defendant Walters did not request or insist on a search of his vehicle for weapons or contrband on alleged - odor of marijuana. After a few field sobriety tests (which were later suppressed as unjustified, illegal and constitutionally prohibited from inception, as fruits of the poisonous tree) Defendant Walters placed the Plaintiff under (physical) arrest having handcuffed him and placed him in the back seat of his police cruiser.

45.        Soon after being arrested handcuffed, and placed in the back of the police cruiser. Defendant Purdin without a warrant or probable cause beyond Defendant Walters first Terry pat down weapons search, or extenuating circustances, immediately began an unlawful search and seizure of Plaintiff's vehicle for evidence of a crime without reasonable suspicion or probable cause. Defendant Purdin discovered two pounds of mrijuana in a cooler behind the passenger seat of Plaintiff's truck, removed it, photographed it, and transported it to the Adams County Sheriff's Office. Defendant Purdin drafted an Affidavit for Search Warrant within an hour of leaving the scene.

46.     Defendant Walters stayed on scene with the Plaintiff until his veh-
icle was towed. Subsequently, Defendant Walters ultimately did not file charges/
complaint (Ohio Traf.R.3(A), (C) and (E) Traffic complaint/summons) for his ar-
rest for OVI of Plaintiff's seizure without a warrant or probable cause, nor -
submitted to a judge or Clerk of Courts paper work to issue a warrant in lieu -
of Plaintiff's wrongful seizure, detention, false arrest, and false imprisonment
in violation of Plaintiff's right to be free from unreasonable searches and seiz-
ures pursuant to the Fourth Amendment, under both Federal and State law.

47.     According to R.C.§ 2935.03(A)(1). The law in Ohio permits an officer
to arrest and detain an individual "until a warrant can be obtained." State v.
Brown, 115 Ohio St. 3d 55, 2007-Ohio-4837, ¶66, 873 N.E. 2d 858. Following the
arrest, the officer:

> "must take the individual before a court or
> magistrate having jurisdiction of the off-
> ense and file or cause to be filed an aff-
> idavit describing the offense for which the
> individual was arrested. R.C.§2935.05;[Crim.
> R.]4(E)(2). Upon the filing of the affidavit,
> a judge, clerk, or magistrate issues a warr-
> ant. R.C.§2935.08; see [Crim.R.] 4(A). "All
> further detention and further proceedings
> shall be pursuant to such affidavit * * *
> and warrant." R.C.§2935.08.

1993 Ohio Atty. Gen. Ops. No. 93-003, 1993 WL 349780, *1. The plan language of
R.C.§2935.08 and [Crim.R.] 4 discloses that the General Assembly and the Ohio
Supreme Court intended that individuals arrested without a warrant receive a
post - arrest determination to ascertain whether the arresting officer had pro-
bable cause to make the arrest." 1991 Ohio Atty. Gen. Ops. No. 91-047, 1991 WL
576728, *3. Thus, a warrantless arrest based upon an alleged probable cause is
a temporary measure, not an exception that abdicates the warrant requirement. See
Brown at ¶66. See Ex."4" page 11 of 20 for support herein.

48.     Under R.C.§4511.19(A) the OVI statute, the State had to prove that
(1) the Plaintiff operated a vehicle, (2) within the State, and (3) while under

the influence of a drug of abuse or alcohol. Ohio Revised Code §4511.19(A)(1).
No principle of procedural due process as it relates to the Fourth Amendment is
more clearly establised than that notice of the specific charge, and a chance
to be heard in a trial of the issues raised by that charge, if desired, are a-
mong the constitutional rights of every accused in a criminal proceeding in all
courts, state or federal. In re Oliver, 333 U.S. 257, 273. See Id. at 12 of 20.
In Ohio, there are no common-law crimes, ("The elements necessary to constitute
a crime must be gathered wholly from the statute"). R.C.§2901.03(A). The Ohio
Constitution guarantees that every defendant has the right to know "the nature
and cause of his/her physical arrest and accusation against them." Section 10,
Article I of the Ohio Constitution. The Ohio courts have consistently held that
the complaint must state all of the essential elements of the offense or it is
invalid. Id.

49.      Due process requires that the state establish beyond a reasonable
doubt every fact necessary to constitute the crime charged. The common concept-
ion of an arrest, like the technical definition, comprehends the formal charging
with a crime. It is as much, [***] a violation of due process to send an accused
to prison following conviction of a charge on which he was never tried as it --
would be to convict him upon a charge that was never made. DeJonge v. Oregon,
299 U.S. 353, 362; Pursuant to the Supreme Court's articulation in Manuel v.City
of Joliet, 137 S. Ct. 911, 918-19, 197 L. Ed. 2d 312 (2017). In Manuel, the Court
held that "pretrial detention can violate the Fourth Amendment not only when it
precedes, but also when it follows, the start of legal process in a criminal -
case." Id. at 918. The Court reasoned that "[t]he Fourth Amendment prohibits gov-
ernment [*9] officials from detaining a person in the absence of probable cause"
which can occur (like in Plaintiff's case herein) after a wrongful arrest, but
can also continue if "legal process itself goes wrong-when, for example, a judge's
probable-cause determination is predicated solely on a police officer's false --
statements." Id.

50.     The Fourth Amendment provides that:

> "[t]he right of the people to be secure in their
> 'persons', hoses, papers, and affects, against
> unreasonable searches and seizures, shall not be
> violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation,
> and particularly describing the place to be sear-
> ched, and the persons or things to be seized.

U.S.CONST. amend. IV.

Fourteenth Amendment

The constitutional protections of the Fourteenth Amendment provides, in relevant part, that "[n]o State shall make or enforce any law which shall a-bridge the privilege or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its juridiction the equal protection of - the laws." U.S. CONST: amend. XIV,§1. In addition, the "more specific provision rule" states that, "[w]here a particular Amendment "provides an explicit textual source of constitutional protection'against a particular sort of governmental be-havior, 'that Amendment, not the more generalized notion of substantive due pro-cess, must be the guide for analyzing these claims.'" The Plaintiff asserts that an arrest cannot be justified by an offense given at booking when the offense - asserted by the officer at the time of arrest was not closely related. In the absence of probable cause, an arrest constitutes an unreasonable seizure in vio-lation of the Fourth Amendment. In Arizona v. Gant, the Supreme Court reshaped the law governing searches of an automobile incident to arrest. Plaintiff pre-liminarily notes that in order for search to be conducted pursuant to the search incident to arrest exception, the underlying arrest must be lawful. For a warr-antless 'arrest' to be lawful, the arresting officer must have probable cause.

51.     In Gant, police officers searched the defendant's automobile after handcuffing the defendant and placing him in the back of a police cruiser. Gant, 556 U.S. at 335. The United States Supreme Court found the search "unreasonable"

and stated officers may search a vehicle incident to arrest only if the arrestee is within the reaching distance of the passenger compartment at the time of the search or if it is reasonable to believe the vehicle contains evidence of the offense of the in questioned arrest. Id at 351. It is black letter law that an illegal arrest taints any evidence discovered as a direct result of that arrest. Such "fruits of the poisonous tree" may not support a conviction.

52.     Moreover, the Plaintiff avers that he "continued" sufficient to say up and until the filing of this Cause of Action herein sub judice, continued to languish in the Adams County Sheriffs Detention Facility from 10/16/2017 through 10/27/2017 without Bail or a Preliminary Hearing on the OVI, but, did receive a preliminary hearing (Defendant Detective Purdin attended) on 10/27/2017 for the later added charge for Possession of Marijuana, and bonded over to the Grand Jury and Indicted on 10/27/2017, and arraigned on 10/31/2017.

53.     The Plaintiff avers that Defendant Walters from the moment he was re-quested by Defendant Purdin to assist him in a traffic stop of Plaintiff; Conse ia: spired with Defendant Purdin to by any means necessary violate Plaintiff's Civil Rights as a direct result of having received a email from Kansas Trooper Rule, alleging that Plaintiff was a suspected drug trafficker, notwithstanding, fruits of this tainted information from the email was false on its face. Defendant Walters shared the same disseminated information of the "email at roll call by Lt. Wilson along with Defendant Purdin" inwhich was well suited to carry out this single plan objective, notwithstanding, Defendant Walters testified verbatim: Sup.H.Tr.(195,Ln. 14-22 Q. Did, did you eventually charge him with any traffic offenses? A. No, I did not. Q. And uh, you'd been the citing officer? A. Uh, yes. Q. And why did you not charge him? A. Um, because the felony charge.)(196, Ln. 1-6 Q. Because the felony charge, when you say because the felony charge, you don't normally charge the mis-demeanor? A. Uh, there's been times when "we" have. I, in this circumstance I don't "we" proceeded with the misdemeanor due to the felony.), Ex. "M1"

54.

Defendant Walters inferred that "they" do not normally charge the underlying offenses relating to traffic stops, and "they" infact did not do so herein is by nature self-implied egregious misconduct that shocks the conscious to the - highest degree knowingly and intentionally or with reckless disregard for the truth, acting outside the scope of his employment/authority. Defendant Walters furthermore, knowingly and intentionally "omitted" from his police report his unlawful arrest of Plaintiff which is considered a 'false statement' pursuant to Franks v. Delaware; that "omission" alone was material and the bedrock to finding "probable cause" and excluding any fruits directly or indirectly to the unlawful seizure or search of Plaintiff's vehicle. Moreover, Defendant Walters went even further when he created, perpetrated, and disseminated another false- hood when "he" claim that "he" did an inventory of the Plaintiff's vehicle and "he" was the one who found the two (2) pounds of marijuana; when in fact it was Defendant Purdin who found it, removed it, photographed it, and transported it to the Adams County Sheriff's Office. During his testimony at Plaintiff's sup- pression hearing, his only excuse was he didn't want to lead anyone wrong, but, he was mistaken.

55.    Defendant Walters knowingly and intentionally conspired with Defend- ant Purdin to infuse and/or facilitated the presentment of false charges for OVI and other alleged traffic offenses of running a stop sign, and driving left of center cross the yellow line, to protect himself and Defendant Purdin from due discipline and/or other misconduct to be revealed after Discovery is had, not to mention, protecting his fellow officer Defendant Purdin in the likes of him be- ing disciplined for the "unlawful search and seizure" of Plaintiff's truck as well as the Civil implication now appearing before this Honorable Court with vase amounts of prima facie evidence upon the face of the record. Defendant Walters conspired actions and inactions submitting altered and/or false police reports departmental documentation in an attempt to cover-up for rule-breaking and other misconduct in advancing baseless charges against Plaintiff was/is the direct

cause of Plaintiff's constitutional right to be free from unreasonable seizures in violation of the Fourth Amendment, and in furtherance thereto deliberately committed an overt act in presenting false testimony during Plaintiff's suppression hearing resulted in the Plaintiff's direct injury suffered by virtue of being wrongfully convicted based upon false police reports, affidavit, and false testimony before the grand jury to indicted in violation of Franks. Defendant Walters further committed Fraud, conspired to commit fraud upon the court when he sought to conceal his misconduct and fellow officer Defendant Purdin from any disciplinary measures taking place. The Plaintiff further asserts that the Court should deny "qualified immunity" based upon the egregious misconduct that shocks the conscious and acting outside the scope of his employment/authority under the color of state law. The Plaintiff submits that the invalid OVI charge/arrest, and, other alleged traffic infractions for running a stop sign, and lane violation are unsupported allegations, claims, accusations, arguments, and fraudulent false evidence inferred unlawfully by Defendants Walters, Purdin, Kelley, and Spencer in - their malicious-prosecution of the Plaintiff and resultant prejudice and injury in-fact for wrongful presentation, prosecution, conviction and sentencing of Plaintiff in violation of his Fourth and Fourteenth Amendment, rights to the United States Constitution.

56.            (II) Violation of 42 U.S.C.§ 1983 (Fourth Amendment and Fourteenth Amendment - Unlawful Seizure, False Imprisonment and Continued Unlawful Detention without Warrant or Probable Cause or any other Legal Justification), against Defendant Sam Purdin who Willfully, Knowingly, and Intentionally or with Reckless disregard For the Truth, Conspired and committed Fraud upon the court, by Perpetrated Falsehoods, Fabricated Evidence, False Statements, and Material Omissions in his Affidavit For Search Warrant and False Statements and Material False Misleading Statements in his Police (Narrative) Report who acted outside the scope of his employment/authority and unsupported by the record in his individual and official capacities under color of state law;

57.     On or about October 9, 2017, the Plaintiff was stopped illegally by Kansas Highway Patrol Trooper Chandler Rule who had no reasonable suspicion to conduct a traffic stop. During the illegal stop, the Plaintiff admitted to having "a little bit of marijuana inside his pants." The Kansas trooper had the - Plaintiff exit the vehicle and placed the personal use marijuana on the top of the vehicle, which was apparently a quantity insignificant enough that the Kansas trooper was comfortable disposing of it on the side of the road and issued no citation for possession. However, the Kansas trooper did proceed to perform an exhaustive search of the vehicle and its contents. After an exhaustive encounter and illegal search, the Kansas Patrol Officer caused an email to be sent to Ohio authorities. In relevant part, officer Rule stated in the last three sentences as follows: "I have no doubt that they are involved in drug trafficking." "I have attached the information below." "Feel free to use the information however you please."(See attached State's Exhibit 2 - Knsas email (emphasis added). See Plaintiff's Ex."H" E-mail from Chandler Rule [KHP], Monday, October 9, 2017 9:08 pm. attached hereto.

58.     The email was distributed to Ohio Law Enforcement. (Sup.H.Tr. 87,217). Defendant Detective Purdin reviewed the email on October 16, 2017. (Sup.H.Tr.87). He contacted (Officer) Defendant Walters to inquire about his availability to respond to a traffic stop (the Detective) Defendant Purdin planned to make. (Sup.H. Tr. 158). Then Defendant Purdin drove out to the immediate area of the Plaintiff's residence to investigate. (Sup.H.Tr. 88). When Defendant Purdin observed the Plaintiff's vehicle merging onto Stanfield Road off of Lask Lane, he followed it to initiate a traffic stop. (Sup.H.Tr.93-98, 100-109, 113-125, 127-137, 150-152). Defendant Purdin allegedly smelled an odor of Marijuana instantly on approaching the vehicle. (Sup.H.Tr.98). Defendant Walters responded to the scene after several - minutes. (Sup.H.Tr.100). Defendant Walters investigated and arrested the Plaintiff for OVI. (Sup.H.Tr.103). Defendant Purdin searched the vehicle and located Marijuana in the vehicle. (Sup.H.Tr.102-104).

59.          Defendant Purdin obtained a search warrant based on the Marijuana from the Plaintiff's vehicle, and the email from defendant Trooper Rule.(Ex. "H").   Evidence of the crime of possession was found at the Plaintiff's residence. (Sup.H.Tr.105, Ln.16-24).

60.          The Plaintiff avers that the potential suppression of evidence raises the inevitable discovery doctrine as a possible remedy to cure tainted evidence. The inevitable discovery rule provides that unlawfully obtained evidence may be admitted (independent source rule) if it would have been discovered by an independent lawful investigation. Here, Defendant Purdin read the email from Rule and verified the same through two (2) phone calls one before he went out Plaintiff's residence,(and another at some point after Plaintiff's arrest) and decided to drive out to Lask Lane and investigate, Purdin testified that the reason he went out to Lask Lane was the email from Rule. Purdin testified the Plaintiff was unknown to him other than from the Rule email. There is/was no evidence that there was any other investigation in progress against the Plaintiff. As such, outside the "unconstitutionality" of the Ohio Traffic Stop in Plaintiff's unlawful seizure and false imprisonment, the discovery of any evidence in the charged (possession) offense was not inevitable. Therefore, all such evidence should have been suppressed.

61.          Plaintiff avers that Defendant Purdin Fabricated Evidence in initiating Ohio Traffic Stop that was actually pretextual in nature and a fishing-expedition solely based on the Kansas email from Defendant Rule alleging Plaintiff was undoubtably a drug trafficker. Assuming arguendo, the initial (Terry) investigative stop was permissible, the Plaintiff asserts that the prolonged detention for his allegedly running a stop sign and lane violation left to center across the yellow line, and ultimate arrest for OVI without charges or warrant or probable cause that further resulted in Plaintiff's unlawful (pretrial detention) imprisonment from 10/16/2017 through 10/27/2017 and continued detention herein violated Plaintiff's Fourth Amendment rights to be free from unreasonable seizures.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Plaintiff avers under no circumstances was he or did he feel free to leave. The Plaintiff asserts that the encounter transformed into an unlawful seizure and false arrest and false imprisonment by Defendant Purdin and Defendant Walters for their individual actions and inactions and Conspiring together to hid and conceal his misconduct from departmental discipline and his fellow (Officer) co-conspirator Defendant Walters.

62.          Moreover, Defendant Purdin's inclusion of false (evidence) material statements in his Police Report first paragraph last two sentences verbatim as follows: "[A] inventory of the suspect's vehicle prior to having it towed was conducted at which time "I" located a blue cooler that contained two gallon sized - bags of marijuana." The marijuana was collected and submitted into evidence at the Adams County Sheriff's Office. Defendant Purdin testified during the suppression hearing that "he" unequivocally found, removed, photographed, and transported the two pounds of marijuana to the Adams County Sheriff's Office, before the "inventory" search. In Purdin's "affidavit for search warrant" he makes the exact same false statement at 2) second to last sentence: The "Affiant further states an inventory search of Richard Lask's vehicle revealed approximately two (2) pounds of marijuana." Yet Purdin undeniably testified he located and removed it before the inventory. (Sup.H.Tr. 102-105,121,130-136,150-152), Ex."M1". Further, Purdin on several more occassions "fabricated false statements material to finding of 'probable cause'". In Purdin's Police Report he states: "[I] observed the vehicle fail to stop at the stop sign located at Stanfield Road and St Rte 41." In his "affidavit" Purdin version changes yet again: "The Affiant observed the vehicle failed to stop at a stop sign located atthe intersection of State Route 41 and Stanfield Road. The Affiant further observed the vehicle's brake lights were broken." Even further, he facilitates material false facts evidence that was designed to "mislead" the judge

63.                                                                              42 of 112

or magistrate in issuing the "Warrant upon Probable Cause" when Conspired to

Willfully, Knowingly, and Intentionally or with reckless disregard for the truth,

presented these false statements in his Affidavit that "he" 'observed Mr. Lask

leaving his residence in red Dodge Dakota truck. This was False, he observed Mr.

Lask exiting Lask Lane and merging onto Stanfield Road. He falsely stated that

Mr. Lask admitted to him he had previously smoked marijuana. False. Purdin in-

fact testified that he was repeating conversation of bits and peices over-heard

from a conversation Deputy Walters was having with Mr. Lask. And again, in the

very last prargraph of his Affidavit he reiterates that he observed Richard Lask

leaving his residence (False); "These beliefs are based on the Affiant observing

Richard Lask leaving his residence just prior to being discovered with marijuana

in his possession." "Based on the amount of marijuana discovered inside Richard

Lawsk's vehicle, the Affiant believes this is not for personal use and further

criminal activity is being conducted inside Richard Lask's residence.

64.        The Plaintiff submits that Defendant Purdin's prolonged detention and

unlawful seizure violated his Fourth Amendment right to be free from unreasonable

seizures without a warrant or probable cause; and Purdin's "Omission" in his Police

Report and Affidavit of Plaintiff's false arrest and false imprisonment, Fabricated

false Statements 'material to the finding of probable cause' was done knowingly

and intentionally or with reckless disregard for the truth, directly causing the

Plaintiff's injury that resulted in his malicious prosecution that was founded upon

Franks violation in the same in violation of Plaintiff Fourteenth Amendment right

to Due Process, acts committed outside the scope of his employment/authority under

the color of state law. These violations under the Constitution were well established

and the Court should deny any requests for "qualified immunity". Because the Fourth

Amendment provides an explicit textual source of constitutional protection against

this sort of physically intrusive governmental conduct, that Amendment, not the more

generalized notion of 'substantive' due process', must be the guide for analyzing

theseclaims."

65.                    (III) Violation of 42 U.S.C.§ 1983 (Fourth Amendment, and
Fourteenth Amendment - Unlawful Search and Seizure without Warrant, Probable -
Cause, or Reasonable Suspicion or any other Legal Justification), against Def-
endant Sam Purdin who Willfully, Knowingly, and Intentionally or with Reckless
Disregard For the Truth, Conspired to deliberately violate the Plaintiff's 4th
Amendment right to unreasonable searches and seizures without a warrant, prob-
able cause, or reasonable suspicion, in furtherance of Fabricating and Falsify-
ing Police Reports and Affidavit for Search Warrant to hid and conceal the same
as well as Omitted Material Information from Affidavit and Police Reports in con-
spiring to commit Fraud upon the court acted outside the scope of his employment
/authority and unsupported facts by the record in his individual and official -
capacities under color of state law;

66.        The Adams County Sheriff's Office received an email from Kansas High-
way Patrol on October 9, 2017, indicating they had made a traffic stop on a sub-
ject known as Richard lask and that Mr. Lask should be a person of interest with
respect to drug trafficking. As a result, on October 16, 2017, Defendant Detect-
ive Sam Purdin of the Adams County Sheriff's Office traveled to the area of the
suspect (now to be referred to as the Plaintiff) in order to do some preliminary
investigation. A pickup truck, later to be determined to be driven by the Plain-
tiff, was leaving/exiting Lask Lane to merge onto Stanfield Road, a gravel drive-
way approximately 1050 feet from Richard Lask's residence to Stanfield Road.

67.        Defendant Purdin began to follow said red pickup truck at a reasonable
distance in order not to be appear suspicious. In route to State Route 41, the -
vehicle was alleged to have failed to stop at the stop sign and later the Defen-
dant allegedly observed the same vehicle failing to maintain lanes left-to-center.
However, these unfounded accusations were never supported by the record with any
direct or circumstantial evidence, and were abanded altogether, after Purdin in-
itiated a traffic stop and alleged or determined the Plaintiff to be under after
approaching the vehicle smelling an odor of marijuana and glassy eyes under the
influence ("OVI").

68.     Prior to initiating the traffic stop, Defendant Purdin called for Defendant Deputy Randy Walters to assist (Purdin) the detective at the traffic stop since he was familiar with from roll-call, Lt. Wilson dispensing the email information from Knsas Highway Patrol Trooper Rule, notwithstanding , later discernment revealed the two Purdin and Walters had worked together before on other traffic stops, Walters later testified to that "they" referring to himself and Defendant Purdin seeing no one else was involved in the present circumstances, "they" do not always charge the underlying (offense) traffic (stop) infractions that lead to the encounter to begin with allegedly lawfully. See Ex."M1", (Sup. H.TR.195-196).

69.     Upon arrival Defendant Walters spoke to Purdin and got a run-down of the events as alleged by Purdin describing them to him. Defendant Walters upon approaching the vehicle armed with the information from Purdin that he smelled marijuana and observed glassy eyes, claims he (Walters) also detected an odor of marijuana emanating from Plaintiff's vehicle/person. Deputy Walters removed the Plaintiff from the vehicle and requested (after submitting Plaintiff to a pat down weapons search, without asking or insisting to extend this pat down weapons search inside the vehicle as well since Plaintiff stood next to his own vehicle and the passenger had already been removed as well in light of alleged odor of marijuana) the Plaintiff perform a few field sobriety tests for an investigation for potential charge of operating a vehicle under the influence - ("OVI").

70.     Following the test (later rendered unjustified, illegal and constitutionally prohibited from inception, fruits of the poisonous tree), Walters then placed the Plaintiff under arrest for ("OVI") and Defendant Purdin performed an unlawful search and seizure of the Plaintiff's vehicle without a warrant, probable cause, or any other legal justification, as Plaintiff was already handcuffed and seated in the back seat of Deputy Walters Police Cruiser; Plaintiff avers that he

was not ultimately charged with either traffic-stop alleged infractions for (1) allegedly running a stop sign, (2) lane violation of driveing left-to-center, and (3) operating a vehicle under the influence ("OVI"). The Plaintiff avers that accusations and alleged traffic violations were false and fabricated from the outset, as a direct result of Purdin Conspiring with Officer Walters before (calling Walters on the police radio-band from Purdin's unmarked police car) to assist him in a traffic stop he planned to make on the Plaintiff instigated by virtue of the unlawful and unverified information from the Kansas email encouraging them to feel free to do whatever use the information however they please. Inside the vehicle Defendant Purdin located, removed, photographed, approximately two (2) pounds of marijuana in zip-lock bags, placed inside a blue cooler behind the passenger seat of the Plaintiff's truck.

71.        The Plaintiff asserts that the Court of Appeals already determined that the Kansas traffic stop was illegal and that the information obtained from that stop cannot be used to support probable cause for the later obtained search warrant.  Under the Ohio Traffic Stop "A search conducted without a warrant issued upon probabale cause is 'per se unreasonable' under the Fourth Amendment unless it falls within a few specific and well-established exceptions."  One such exception is a serach incident to a lawful arrest. Plaintiff preliminarily notes that in order for a search to be conducted pursuant to the search incident to arrest exception, the underlying arrest must be lawful. For a warrantless 'arrest' to be lawful, the arresting officer(s) must have probable cause.

72.        The Plaintiff asserts using either the search incident to arrest exception or the inventory search exception to the warrant requirement. The search incident to arrest was illegal for two reasons: First, the arrest was illegal. Second, the search incident to arrest requirement is only valid for the area in which the Plaintiff can reach.  The marijuana was found in a cooler behind the passenger seat, a place the Plaintiff could clearly not reach as he was in hand-

cuffs outside of the vehicle and placed in the back of Walters police cruiser
incident to Defendant Sam Purdin self admitting he gegan a search "prior" to
Deputy Randy Walters inventory search taking place upon Deputy Walters arrest-
ing Mr. Lask. The inventory search exception is also not valid in this case as
the vehicle was not legally impounded at the time ("If the arrest were not law-
ful, the decision to tow and inventory Mr. Lask's vehicle was likewise unlawful"),
As to warrantless seizures, the Supreme Court "has never sustained a search upon
the sole grounds that officers reasonably expected (on a hunch) to find evidence
and voluntarily confined their activities to the least intrusive means consist-
ent with that end" and considers warrantless searches to be "per se unreasonable."

73.         The Plaintiff avers that the search and seizure by Defendant Purdin
of Plaintiff's truck was "unconstitutional" for two reasons: (1) the 'seizures by
both Sam Purdin and Randy Walters were Constitutionally unreasonable pursuant to
the Fourth Amendment, and without probable cause or warrant; and (2) under Ariz-
ona v. Gant, the search was unreasonable because Plaintiff was not within reach-
ing distance of his vehicle's compartments or containers alike.'" Moreover,  the
"automobile exception" also requires that the police have probable cause pursuant
to lawful arrest to search. Furthermore, the Defendant Sam Purdin's use of this
evidence to seek a search warrant resulted in a Franks violation , notwithstand-
ing , the "False Statements and Omissions" he "knowingly and Intentionally or with
reckless disregard for the truth," presentment was made to deliberately mislead
the the magistrate and was the only "material" evidence put forth to obtain and
was necessary the finding of probable cause to have the Judge issue a warrant for
the Plaintiff's residence 'derivative' of the poisonous fruits of the two (2) -
pounds of marijuana discovered in Plaintiff's truck subject to the exclusionary
rule. Defendant Purdin Conspired, committed Fraud, and conspired to commit fraud
upon the court when sought to conceal his misconduct and fellow Officer Walters
from disciplinary measures taking place. The Plaintiff further asserts that the

Court should deny "qualified immunity" based upon the egregious misconduct that shocks the conscious and acting outside the scope of his employment/authority under the color of state law, and in light of "all" the fraudulent accusations, allegations, false statements and fabricated police reports and affidavit unsupported by the record.

74.         (IV) Violation of 42 U.S.C.§ 1983 (Fourth Amendment "Franks violations," that arose in the context of a search warrant, but its rational extends to arrest warrants - Unlawful arrest in violation of Franks v. Delaware, by deliberately, knowingly, and intentionally, or with reckless disregard for the truth, willfully provided false, material information for use in an affidavit in support of a search and arrest warrant that resulted in a warrant being issued by a Magistrate Judge without probable cause; and, Conspired, and committed Fraud upon the court, to hid and conceal the same in furtherance thereto thereby falsely providing material misstatements and/or material "omissions" in warrant affidavit for false arrest, and deliberately excluded relevant information that would have weighed heavily against the finding of probable cause), against Defendants Sam Purdin (author of affidavit), and Defendant Randy Walters (who participated and deliberately provided false statements in his police report narrative for use therein, and deliberately and recklessly "omitted" material information along with his false material statements in his police report used in to support the affidavit) and both acted outside the scope of their employment/authority in representing false material facts unsupported by the record, in their individual and official capacities under color of state law; and Court should deny "qualified immunity" to these Officers as these facts as alleged, are sufficient to allege that Purdin and Wlters both had a hand in the tainted grand jury proceedings, notwithstanding , tainted preliminary hearing proceedings where judicial officer who approved the seizure had insufficient truthful information to make a reasonable determination to establish probable cause, and only where the warrant application is so lacking in indicia of probbale cause as to render official belief in its existence unreasonable, will the shield of immunity be lost.

75.

Moreover, assuming the Defendants would argue the "good faith" exception to the exclusionary rule announced in Leon, in announcing this rule, however, it is well established law that "[d]eference to the magistrate. . .is not boundless." In particular, Court(s) have made clear and held that the good faith exception does not apply: (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit" that violated Franks; (2) "where the issuing magistrate wholly abandoned his judicial role;" (3) when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when a warrant is so "facially deficient - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid." In the years since Leon, this Court and others have repeatedly held that the good-faith exception does not apply when "the supporting affidavit contained knowing or reckless falsity" in violation of Franks; declining to apply good faith exception where officer's affidavit contained "falsehoods and half-truths" in violation of Franks; declining to apply good faith exception where officer violated Franks by "purposely withh[olding] information when he prepared his affidavit." "[U]nder Leon, a Franks violation is not excused." "A warrant that violates Franks is not subject to the good-faith exception to the exclusionary rule." "The judicial officer who issued the search warrant was misled by information in the affidavit that the affiant and his fellow officer knew was false or would have known was false except for both of their reckless disregard for the truth," accordingly, the government should and cannot benefit from Leon's good faith exception.

76.        The Adams County Sheriff's Office received an email from Kansas Highway Patrol Trooper Chandler Rule on October 9, 2017, indicating he had made a traffic stop on a subject known as Richard Lask and Mr. Lask should be a person of interest with respect to drug trafficking. See Pl. Ex. "H" Kansas email (emphasis added).

As a result, on October 16, 2017, Detective Sam Purdin of the Adams County Sheriff's Office traveled to the area of the residence of (Mr.Lask) Plaintiff in order to do some preliminary investigation as a direct result of receiving the Kansas email. See Pl. Ex. "K" Affidavit For Search Warrant by Purdin at 2).

77.      A pickup truck, later to be determined to be driven by the Plaintiff, was observed exiting a gravel driveway approximately 1050 feet from the front-door of the Plaintiff's residence, which also led to a second residence on the gravel driveway of Lask Lane. The Plaintiff was exiting Lask Lane, and merging onto Stanfield Road as he turn off of Lask Lane. The Defendant Sam Purdin alleged on route to State Route 41, the Plaintiff's vehicle allegedly failed to stop at the stop sign, and later in due course the Defendant Purdin allegedly observed the same vehicle failing to maintain lanes drifting across the double yellow once, though, Purdin testified at the Preliminary hearing Mr. Lask crossed the double yellow line three (3) times, but he claimed (hearing was not transcribed) he could not recall. Subsequently, Defendant Purdin did not file traffic-citations for these alleged traffic infractions he personally witnessed/observed, nor was there evidence of any writen verbal warning issued that was considered a unrea-sonable prolonged detention in his seizure of Plaintiff in light that Plaintiff was neither charge with assisting Deputy Randy Walters false arrest for OVI.

78.      Defendant Purdin initiated a traffic stop on Mr. Lask and determined suspected he may be driving under the influence. During the traffic stop, Purdin alleged that the Plaintiff's eyes were glassy, there was a strong odor about him coming from the vehicle, and Plaintiff appeared nervous. See Pl. Ex. "I" Incident Police (Narrative) Report by Deputy Walters and Det. Purdin. See also, Pl.Ex."M1" (Sup.H.Tr. 100-101;108). Prior to initiating the traffic stop, Defendant Purdin called for Deputy Randy Walters to assist him at the traffic stop since Purdin alleged he didn't have traffic citation booklet. Defendant Walters testified that Defendant Purdin contacted him about a vehicle that he was (had not happened yet) going to make a traffic stop on uh, on traffic violations and asked for my assist-ance. Pl. Ex."M1" (Sup.H.Tr.158, Ln.7-10).

Upon Defendant Deputy Walters arriving on scene, Defendant Purdin explained to him what he had allegedly observed, stop sign violation, driving left-to-center cross double yellow line, and smell of marijuana. Defendant Walters picup on - the traffic stop from that point on. Id.

79.      Defendant Walters approached the Plaintiff's vehicle and said: "Hello sir I'm Deputy Walterswith the Sheriff's Office, how are you doing today? (Sup.H. Tr.168,Ln.22-24), Pl.Ex."M1". Richard Lask: Good. Deputy Randy Walters: Uh, I was talking to Detective Purdin here a little bit uh, you might, he's a little con- cerned that you might be under the influence of drugs right now. When's the last time you smoked marijuana? Would you mind stepping out for me for a minute, please? I get an odor of marijuana coming from the truck, what is that? Hey seriously, I do smell coming from the vehicle. Is there marijuana on you or in the vehicle? Lask: No, this is where I smoked it in my woods before I left. Walters: Are you feeling any affects at all of the marijuana? Lask: No. Walters: Alright, step out for me real quick. I'm going to have you stay here (inaudible) and I'm going to check - real quick for weapons, okay? Lask: Okay. Walters: Like I said, real quick, it's just a weapons search, just to make sure you don't have any weapons on you. Walters: Okay I'm going to ask you to do a series of tests for me okay? See Pl. Ex."M1" (Sup.H.Tr. 169-171).

80.      Defendant Walters placed the Plaintiff under arrest for OVI, handcuffed him, and placed him in the back seat of his police cruiser, at which time he read him his Miranda rights. Walters stated to Mr. Lask while seating in the back of his cruiser, if you need something just yell out, okay? And, before I have to do an in- ventory paper...(inaudible)...about. Lask: No. Walters: No marijuana, weapons,(in- audible). Lask: Yes. Walters: Stand-by. Lask: I've got some personal use in the (inaudible). Walters: How much personal use? Lask: I'd rather not say until I talk to my attorney. Walters: Okay Sam if you wanna go ahead and we'll start with that, hold on (inaudible). Pl. Ex."M1" (Sup.H.Tr. 184-190).

81.

Defendant Deputy Randy Walters further testified on direct by Defendant Kelley in the following: Prosecuting Attorney Kelley: Q. I'm going to hand you what's been marked as defendant Exhibit "c" if you take a moment and look at that. A. Yes sir. Q. And tell me what that is. Walters: That is an Adams County Sheriff's Office vehicle inventory custody report. Kelley: Okay. and is that the inventory that uh, you would uh, in the ordinary course of business uh, use when you've had a vehicle towed? Walters: Yes. Ke4lley: Okay. Do you recognize the handwriting? Walters: Yes. Kelley: who's is it? Walters: Mine. Kelley: Is there a signature ? Walters: Yes, there is. Kelley: There's probably more than one signature ? Walters: Yes sir. Kelley: Do you recognize the two signatures ? Walters: Yes, the first signature by the line that says report by is my scibble and unit 17, which is my unity duty number and 10/16/17 is the date. And the second, or the third line down from that would say tow by and the name is Gerald Polley, which is an employee for Combs Towing. Kelley: Is that someone you're familiar with ? Walters: Yes. Kelley: Okay. And that is the list of items that you inventoried and removed from the truck ? Walters: Uh, not necessarily removed from the truck. Kelley: Or. Walters: That's items. Before towing ? Walters: Yes. Kelley: Okay. And uh, no where on there is the um, what I think was referred to in the videos, personal use marijuana ? Walters: I, review that, I believe not but I don't want steer you wrong. No sir. Kelley: Okay. And that marijuana on the video had already been, was being removed by Detective Purdin ? Walters: Yes sir. Pl. Ex. "M1" (Sup.H.Tr. 192-194). Defendant Deputy Randy Walters subsequently had made a complete different statement in his "Incident (Narrative) Police Report as follows in his first paragraph second to last sentence: **"During an Inventory of the truck a blue lunch bag was found containing approx. two pounds of Marijuana."** After Combs took the truck I transported Lask to the Adams County Jail, and booked him on possession charges. See Pl. Ex. "I" Incident (Narrative)Police Report by Walters & Purdin. Id.

82.          Defendant DEPUTY RANDY WALTERS: When we get to the office were going

to read you the 2255 form, which is your rights as an OVI offender and um, that we generally we don't have the attorney's there and you know, at some point he'd be able to call, but that's not something that's necessarily done before hand. Kelley: Did, did you eventually charge him with any traffic offenses ? Walters: No, I did not. Kelley: Okay. And uh, you'd been the citing officer ? Walters: Uh, yes. Kelley: Okay. And why did you not charge him ? Walters: Um, because the - felony charge. Kelley: Okay. Because the felony charge, when you say because the felony charge, you don't normally charge the misdemeanor ? Walters: Uh, there's been time when "we" have. I, in this circumstance I don't believe "we" proceeded with the misdemeanor due to the felony. Kelley: Okay. And the events we watched on the body cam, that all occurred in Adams County, the State of Ohio ? Walters: Yes sir. See Pl. Ex. "M1" (Sup.H.Tr. 195-196). ATTORNEY ANDREW B. NIEHAUS: Alright. You say that when you walked up to the car you smelled marijuana, did you smell any alcohol sir. Walters: I did not smell alcohol sir. Niehaus: You say in your report and that would be I believe that's "c" or "3", uh, the, the narrative. Does this report look familiar ? Walters: Yes, sir it does. Niehaus: Okay. And is that top, top part your narrative of what happened that day ? Walters: Yes sir. Niehaus: Okay. Okay, in here you say that Mr. Lask admitted to smoking marijuana. Um, did he tell you when that he smoked la-, most recently ? Walters: I believe earlier in the day is what he advised. Niehaus: I believe in the video he says that he smoked six hours prior does that sound right to you ? Walters: Uh, that would be earlier in the day, yes. Niehaus: In the video you asked Mr. Lask if he's impaired and he says no, correct ? Walters: Correct. Niehaus: And you never saw Mr. Lask operating the vehicle ? Walters: No sir. See Pl. Ex. "M1" (Sup.H.Tr.198-199).

83.    The Plaintiff avers as is evidenced up above in his own testimony verses his "Incident (Narrative) Police Report, Defendant Randy Walters "false, misleading statement that "he" performed an inventory and found the (contraband) evidence of two (2) pounds of marijuana was fabricated deliberately, and was designed to mislead, knowingly and intentionally, or with reckless disregard for the truth, pro-

vided false material information a misrepresentation - that has a natural ten-
dency to influence, or was capble of influencing, the decision of the decision-
making body (Magistrate or Judge) in an Affidavit For Search Warrant to which
it was addressed. Statements that are capable of influencing the outcome of a
proceeding are those that conceal disqualifying facts or that prevent or hinder
the discovery of disqualifying facts. Thus, in the context of a grand jury pro-
ceeding, a false statement is material if it has the natural effect or tendency
to impede, influence or dissuade the (Magistrat or Judge) grand jury from pur-
suing its investigation, Merely potential interference with a line of inquiry is
sufficient to establish materiality, regardless of whether the perjured testimony
or false (information) evidence actually serves to impede the investigation. A
reasonable probability is a probability sufficient to undermine confidence in the
outcome.

84.      A grand jurys investigation is not fully carried out until every avail-
able clue has been run down and all witnesses examined in every proper was to find
if a crime has been commited; its investigation proceeds step-by-step and a false
statement by a witness,. . .in any step, even though not relevant in an essential
sense to the ultimate issues pending before the (Magistrat or Judge) grand jury,
may be material in that it tends to influence or impede the course of the investi-
gation. Thus, each lead to an additional avenue of inquiry may be of material worth
to a grand jury investigation. The materiality of the false statement is tested at
the time the allegedly false statement was made. Here, in the instant case, Def-
endant Walters false statement "that 'he' performed an inventory and found the con-
traband of two (2) pounds of marijuana was "key evidence in State's case-in-chief"
to bring or present to a Magistrate or Judge, or grand jury testimony was the key
piece of exculpatory evidence to seek a search warrant, and key piece of evidence
linking the two (2) pounds of marijuana to Mr. Lask's reseidence, and used in both
providing his false statement in his police to Defendant Purdin who presented and
relied upon it in the Affidavit For Search Warrant, and "Obviously", there had to

be a presentation of testimony to and before the grand jury to indict, relative to

the State's case-in-chief and allegedly "key" piece of evidence if not judging up-

on the record, the "the only piece of direct evidence two (2) pounds of marijuana

leading to the (Ohio Traffic Stop) finding of probable cause to grant a warrant -

for Mr. Lask's residence.

85.      Moreover, Defendant Randy Walters attempted to conceal the "false

arrest" of Mr. Lask's unlawful seizure, prolonged detention, and false imprison-

ment where Mr. Lask  was never "charged" though arrested for OVI, and the search

and seizure of contraband from his truck was also unlawful pursuant to Arizona v.

Gant, in that Mr. Lask had been arrested, handcuffed, and seated in the back of

Deputy Walters police cruiser testified to by both himself and Defendant Purdin.

So, the "Linchpin" evidence of the two (2) pounds of marijuana was/is the fruits

of the poisonous tree doctrine, as the search was unlawful for two reasons: (1) the

arrest was unlawful, and (2) the inventory search was unlawful because Plaintiff

was not within reaching distance of his vehicle for the search to be permissible

(unreasonable) clearly etablished by the Supreme Court of the United States in

Arizona v. Gant. The Plaintif assert that these actions "Omissions" and inactions

lead to Mr. Lask's Fourth Amendment rights being violated, and that Walters had a

"duty to author a factually accurate incident (narrative) police report" without

false, material information in violation of Franks v. Delaware, nor, "Omission" of

false arrest and unlawful search and seizure base on untruths provided in an Aff-

idavit For Search Warrant and grand jury testimony to indict. The deliberate de-

ception of a court and jurors by the presentation of known false evidence is incom-

patible with rudimantary demands of justice. This rule applies to both the solici-

tation of false testimony and the knowing acquiescence in false testimony.

86.      The constitutional violation that Mr. Lask asserts is the deprivation

of his liberty in violation of the Fourth Amendment enforcible to the states through

the Fourteenth Amendment, defining the right at issue as the right not to be de-

prived of liberty as a result of the fabrication of evidence by a government officer

acting in a investigative capacity. The Plaintiff asserts that Defendant Walters fabrication of (evidence) information harmed the Plaintiff before and not just - during the trial, because it was used to obtain an Affidavit for a search warrant, and to indict the Plaintiff. Mens Rea, Knowledge: Under R.C.§2901.22(B), a person acts knowingly "regardless of his purpose, when he is aware that his conduct wil probably cause a certain result or will - probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." As an affidavit is a form of giving testimony, the affiant must be competent to testify at trial to the facts stated in the affidavit. "A witness may not testify in a case 'unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.'" Evid.R.602. "Personal knowledge' is "knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else said.'" "A witness is required to testify from first hand knowledge which has been acquired by perceiving a fact through one or more of his five senses, of course, the witness must have had a opportunity to perceive and must have actually perceived."

87.     "To determine whether an error affected a substantial right of a party, the reviewing court must weigh the prejudicial effect of the error and decide whether the factfinder would probably have reached the same decision but for the error taking place." Prejudice, or materiality, in the Franks violation context is not much more of a difficult test to meet than the threshold question of suppression, favorability, and the exclusionary rule. Evidence is material if and when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. A reasonable probability does not mean that the Plaintiff would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial. Evidence is favorable to the accused if it exculpates the accused or enables the accused to impeach the witness.

88.     The Plaintiff asserts that the probability was very present in the case sub judice, and that the likelihood of a different result was imminently great enough to undermine confidence in the outcome of the trial. The Plaintiff also alleges that the Franks case herein arose in the context of a search warrant, but its rationale extends to arrest warrants. Liability under Franks can arise in either material misstatements or material omissions in warrant affidavits. Functionally, the holding of Franks is an exception to the independent intermediary doctrine, which provides that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." But "the chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way - tainted by the actions of the Defendant Deputy Randy Walters." To determine - taint, the essential inquiry is whether "there remains sufficient content in the warrant affidavit to support a finding of probable cause" after the "material that is the subject of the alleged falsity or reckless disregard is set to one side." In this case, the Plaintiff will ultimately show that the remaing particularized facts in the affidavit are 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' and Taking these allegations as true and viewing in them in the light most favorable to the Plaintiff, the **"corrected"** content of the affidavit is insufficient to establish particularized probable cause for arrest on the OVI, other alleged - traffic infractions, unlawful search and seizure that uncovered the two (2) -- pounds of marijuana found in the Plaintiff's vehicle, and derivative evidence located at the Plaintiff's residence base on supposed violations of the Fourth Amendment.

89.     In the "Affidavit For Search Warrant" paragraph 2). and 3). Excising all references to the Kansas traffic stop and email; and tainted falsities by agent's Sam Purdin and Randy Walters as well as omissions; the remaining information is a

"corrected" redacted content the trial court deliberately, knowingly and intentionally, or with reckless disregard for the truth, Conspired to further conceal the State's agents misconduct and liability when Defendant (Judge) Spencer findings of fact were unsupported by the recored vouched for Purdins and Walters - deliberate, willful, or disregard for the truth "false, material misstatements and omissions, falsehoods and halftruths presented to mislead the (Magistrate or Judge) that presided over the Preliminary hearing, Affidavit For Search Warrant, and secret Grand-Jury testimony to indict the Plaintiff, in violation of the Fourth Amendment right to be free from unlawful seizures, prolonged detentions, and false imprisonment without a warrant or probable cause. See Pl. Ex."G" trial court's Judgment Entry upon Remand and Redacted Affidavit for Search Warrant, pgs. 1-6, at pgs. 2-3, by Defendant Brett M. Spencer, on June 15, 2020.

90.     The Defendant (trial court judge) Brett M. Spencer proffered the trial courts review was now controlled by the law of the case doctrine. And, under the law of the case doctrine a trial court lacks jurisdiction to exceed the scope of an appellate court's remand. The Court of Appeals directed the trial court to test the affidavit for probable cause without the illegally obtained information, i.e. removing any references to the Kansas illegal stop. The Plaintiff avers that the Defendant (Judge) Spencer began fashioning the first sentence to the remaining information averred in his redactment with fruits of the poisonous tree of the Kansas (stop) email when "he" stated the following:

> 2). The affiant further states on October 16, 2017, he went to the residence of Richard Lask. (False) How can you go to a persons residence if you never heard of them or Lask Lane before receiving an email that provided such information ? Moreover, Purdin testified to the following: Pl. Ex."M1" (89, Ln.22-24) I reviewed the information uh, from uh, that I had received from Lieutenant Wilson and um, I'd never heard of the people before that was spoke about uh, in (90, Ln.1) the information. (90, Ln.5-9)Q. So, so the document lists a Richard Lask, is that correct ? A. Yes. Q. You'd never met him before ? A. Not to my knowledge no.

Defendant Spencer knowingly and intentionally, or with reckless disregard for the truth, disregarded the Court of Appeals and the case doctrine in this matter and sought to provide false misleading material information outside the scope of his

91.

employment/authority in violation of Plaintiff's Fourth Amendment rights to author
a factually accurate redaction of the truth facts instead of falsehoods, to help -
establish his co-conspirators false "nexus" between the place to be searched and
items to be seized and thus provided the issuing magistrate (in this case Judge
Spencer himself) a substantial basis for concluding that probable cause existed in
issuing the search warrant and that there is a fair probability that contraband or
evidence of a crime will be found in the Plaintiff's residence. For the purposes
listed up above, the Court should take Judicial Notice of the unambiguous clear -
and convincing true facts upon the record demostrating prima facie evidence that
these false, material facts were tainted from inception, and provided a lack of
true facts in the determination of the body of the decision making body's decis-
ion to determine in the Preliminary hearing, Affidavit for a warrant, and grand-
jury testimony to indict the Plaintiff "was tainted and insufficient to support a
finding of probable cause to falsely arrest, detain, falsely imprison" Plaintiff
in violation of the Fourth Amendment.

92.        The Plaintiff next asserts that the second sentence is also a false,
material statement that was misleading in the following:

> 2).  While in the area, the Affiant observed Richard Lask leaving
> his residence in a red Dodge Dakota truck. (False) On cross-
> examination Purdin tesified to the following: Pl.Ex."M1" (114,
> Q. So, directly after speaking to officer Rule you headed over
> towards the address you had for Mr. Lask is that correct ? I,
> I don't recall it being directly just sometime in the after-
> noon. Q. Had you ever been there before ? At his residence ?
> Q. Yeah, have you ever been on Lask Lane, that is just his
> driveway correct ?)(115, Uh, I mean not to my knowledge but
> there's residences on Lask Lane, I believe. Q. And how many ?
> I know for sure there's at least one other residence back there.
> Q. Now you said that you pulled into um, you pulled into a
> driveway, was that on Lask Lane or was that on uh, Stanfield ?
> It would've been on Stanfield. Q. So, you never pulled onto
> Lask Lane ? That day at that time, no sir. Q. You say in your
> affidavit um, that you observed Richard Lask leaving his re-
> sidence. Did you actually see him walking out his door ?  No
> sir. Q. So, you never saw him other than inside the vehicle ?
> Inside that red vehicle we saw ?)(116, I, I seen him coming
> out the lane? Q. But in the car ? Yes sir. Q. Had you ever
> seen Mr. Lask before this ? Not to my knowledge.

93.

As demonstrated up above, once again, Defendant Purdin who drafted, signed, and

presented the Affidavit to Judge Gabbert deliberately and recklessly misled the

Magistrate in falsely providing the falsehood of a half-truth that Lask Lane in-

fact is the gravel driveway that leads to Mr. Lask residence, which is at least

1050 feet from his door-step down the driveway of Lask Lane to Stanfield Road,

and "googled map" would readily prove this to be a true fact in matter of seconds.

Defendant Purdin's intent was to mislead the Judge into picturing he actually saw

Mr. Lask leaving out his front door, which was an out-right lie, and material to

the "nexus" between the place to be searched and the unlawful items (two (2) pounds

of marijuana) seized in Purdin's unlawful search and seizure of the Plaintiff's

vehicle that should have been rendered fruits of the poisonous tree, thus, pro-

viding the issuing magistrate a substantial basis for concluding that probable -

cause existed in issuing the search warrant and that there is a fair probablity

that contraband or evidence of a crime will be found in the Plaintiff's residence.

Defendant Purdin violated clearly established law well established, and he know-

ingly and intentionally, or with reckless disregard for the truth, conspired to

delibertaely violate Plaintiff's Fourth Amendment rights to be free from unreason-

able seizures, false arrest, continued prolonged unlawful detention, and false im-

prisonment without a warrant or probable cause. These action or inactions of fail-

ing his duty to author a factually accurate Affidavit, instead acting outside the

scope of his employment/authority knowingly and intentionally cause Plaintiff's

injury and continue to do so, that tainted information lacked true facts/informat-

ion  material to the determination of the decision making body's decision to make

a accurate determination in the Preliminary hearing, Affidavit, and secret grand-

jury testimony to indict Plaintiff, was insufficient to support a finding of pro-

bable cause.

94.           The Plaintiff next asserts that the Nineth sentence is also a false,

material statement that was provided and misleading in the following:

2). While speaking with Richard Lask, the Affiant observed his speech was slurred and his eyes were "bloodshot". (False) In Purdin's "Incident (Narrative) Police Report first paragraph nineth sentence" "I noticed that the suspect was extremely nervous and that his eyes -- appeared to be glassy, I could also smell a strong odor of marijuana coming from the vehicle." See Pl.Ex."I" Walters and Purdins police report. Subsequently, Purdin testified to a completely different set of observations that he claimed "he" deliberately withheld from his 1st police report, that changed in the Affidavit though "he" claims both are true and accurate in the following: Q. In your affidavit you state that Mr. Lask speech is -- slurred, and his eyes were blood shot. Was this true to the best of your memory ? Yes. Q. Uh, in your narrative you state that he was nervous, and his eyes appeared to be glassy, would you consider blood shot and glassy eyes to be the same ? No sir. Q. Why did that change in between the two reports ? Well I don't believe there was any change, I just didn't list both of them in the same report. Q. Oh, so now you were saying they were both -- glassy and blood shot ? Yes sir. See Pl.Ex."M1" (Sup.H. Tr. 123-124).

95.    Moreover, assuming Defendant Purdin would argue the "good faith" exception to the exclusionary rule announced in Leon, in announcing this rule, however, it is well established law that "[d]eference to the magistrate. . .is not boundless." In particular, Courts have made claer and held that the good - faith exception does not apply: (1) "if the magistrate or judge in issuing a - warrant was misled by information in an affidavit" that violated Franks; (2) "where the issuing magistrate wholly abandoned his judicial role"; (3) when the warrant is "based on belief in its existence entirely unreasonable"; and (4) when a warrant is so "facially deficiently - i.e., in failing to particularize the place to be searched or the things to be seized - that the executing officers cannot reasonably presume it to be valid." In the years since Leon, this Court and others have repeatedly held that the good-faith exception does not apply - when "the supporting affidavit contained knowing or reckless falsity" in violation of Franks; (declining to apply good faith exception where officersvaffidavit contained "falsehoods and half-truths" in violation of Franks); (declining to apply good faith exception where officer violated Franks by "purposely withh[olding] information when he - prepared his affidavit."

"[U]nder Leon, a Franks violation is not excused." "A warrant that violates Franks is not subject to the good-faith exception to the exclusionary rule." The judicial officer (Judge Gabbert) who issued the search warrant was misled by information in the affidavit that the affiant and his fellow officer Walters -- knew was false or would have known was false except for Purdins and Walters in the instant case their reckless disregard for the truth," accordingly, the government should not and cannot benefit from Leon's good faith exception.

96.     The Plaintiff next asserts that the Tenth sentence is also a false, material statement taken out of context of what Deputy Walters and Mr. Lask conveyed between one another that was provided by Purdin as if it was "admitted to him" in misleading the Magistrate in the following:

> 2).    "Richard Lask admitted to the Affiant he had previously smoked marijuana." (False) In his testimony during the hearing, Purdin stated the following: Pl.Ex."M1" (Sup.H.Tr. 107, Ln.19-22 Q. Now, I'm going to take you further on in uh, paragraph two on page two, your personal observations. Would you take a moment and look at those ? And what were those observations as contained in the affidavit ?)(108, That is speech was slurred, his eyes were bloodshot, and that um, he had stated that he had previously smoked marijuana. Q. Now, let's talk about the statement that he has previously smoked marijuana. So, lets back up to the traffic stop for a moment. Did you have an opportunity to speak with Mr. Lask other than the initial stop, the reason for the initial stop ? Um, I don't believe I spoke to him anymore at the stop. Q. And the information that he'd admitted that he had, had marijuana where did that come from ? I was, I was there for conversation, but it was - between him and Deputy Walters. Q. Okay. So, you repeat, were repeating what you'd heard ? Yes. Q. Okay. The truck had initially that, when you first encountered it was -- pulling out of Lask Lane ? Yes. Q. And you had an address uh, based off the um, State's Exhibit number "2", the email had an address for him on Lask Lane ? Yes. Q. Okay. And other than uh, the portion uh, concerning uh, events that occurred in Kansas, did the traffic stop, your observations and your subsequent search uh, did uh, and seizure of approximately two pounds of marijuana, did those events all occur in Adams County, Ohio ? Yes. 108-109).

The Plaintiff asserts that not only was Purdin's false statement misleading, it was material, and it set a prejudice picture as though Mr. Lask was additting to "him" a false-sense of guilt, especially where this very sentence is inserted as if it took place right before Deputy Walters arrived on scene to conduct field

sobriety tests on Richard Lask." The Plaintiff also asserts that Purdin and Walters' "Omission" of the field sobriety tests as "unjustified, illegal and constitutionally prohibited from inception, therefore were suppressed as fruits of the poisonous tree, and any statements made by Plaintiff after inception of said field sobriety tests are suppressed. See Pl.Ex."D" Judgment Entry on Motion to Suppress page 9 of 13 CR20170139 Common Pleas Court.

97.     Defendant Purdin's unlawful conduct in violation of Franks, denied Mr. Lask his Constitutional right pursuant to the Fourth Amentment to be free from the unreasonable seizure, false arrest, continued prolonged unlawful detention, false imprisonment without a warrant or probable cause, when he knowingly and intentionally, or with reckless disregard for the truth, conspired to impede and mislead the Magistrate or Judge with false information, material to the determination of the finding of probable cause, by deliberately providing tainted information to sway the Courts favorability in issuing the warrant. The it is well established law that a Franks violation is not excused, Purdin acting outside his employment/authority under the color of state law should be denied any consideration of "qualified immunity" based the egregious misconduct presented herein and throughout this entire Complaint.

98.     The Plaintiff next asserts that the last two sentences in para. 2). on page 2 at the bottom of the page that extends to page 3 are also false, material misstatements that was deliberately and recklessly provided in the warrant affidavit that misled the Magistrate or Judge in the following:

    2).  "The Affiant further states an inventory search of Richard
         Lask's vehicle revealed approximately two (2) pounds of
         marijuana. (False) Mr. Lask stated this marjuana was for
         his own personal use. (False) Purdin's suppression hearing
         testimony contradicts both of these material false state-
         ments made with reckless disregard for the truth, knowing-
         ly and intentionally designed to mislead magistrate/judge
         in violation of Franks v. Delaware. See Pl.Ex."M1" (Sup.H.
         Tr. 102, Q. And at some point uh, did you search Mr. Lask
         vehicle ?)(103, Yes. Q. And at uh, at the time you started
         that search, do you recall where Mr. Lask was ? Deputy Wal-

ters had um, placed Mr. Lask under arrest for OVI and had um, placed him in the back seat of his cruiser. Q. And what was the uh, basis for you searching the vehicle at that point and time ? At that point Mr. Lask had been arrested and um, that along with the odor of the marijuana um, I conducted a search of the vehicle. Q. And during that search of that vehicle, what if anything did you find ? There was a cooler on the backseat uh, and in it was two large bags that contained marijuana.)(104, Q. And uh, did you um, what did you do with the marijuana when you found it ? I removed it from the vehicle and photographed it. Cross: (130, Q. Now you said that your search of the car took place before the inventory search, is that correct ? Yes sir. Q. Now going back to your narrative (police report) do you see where it says an inventory of the suspects' vehicle prior to having it towed was conducted, at which time I located a blue cooler that contained two-gallon size bags of marijuana ? Yes sir. Q. And did you write that into your narrative ? Yes, sir it's typed. Q. And in your affidavit for the search warrant uh, the last sentence of numbered paragraph number two, do you see where it says the affiant further states and inventory search of Mr. Lask vehicle revealed approximately two pounds of marijuana ? I don't believe I have that form, but I don't deny that.)(131-132, Q. Do you see in the second to last sentence of number two it says the affiant further states an inventory search of Richard Lask's vehicle revealed approximately two pounds of marijuana ? Yes, I apologize I was looking at the second paragraph. Q. Uh, no problem. Do you see where it says that ? Yes. Q. Okay. So, which one is true ? Both sir. Q. Uh, I believe on direct examination you said that your search that found the marijuana was prior to the inventory - - search ? It was. Q. But in these two documents you state that it was during the inventory search that you found the marijuana. So, what it before or after ?)(134-135, Q. other than the uh, inventory policy have you been trained on inventory searches anyway, in anyway, any extra training ? I have been lectured a lot from the prosecutor's office on searches and so forth. I consider it training. See Pl. Ex."K" Affidavit For Search Warrant; Pl.Ex."G" Affidavit Redacted CR20170139 Common Pleas Court; Pl.Ex."M1"(Sup.H.Tr.) listed herein.

99.     The Plaintiff avers that (1) Purdin "unequivocally" proved by his own false statement in his "Incident (Narrative) Police Report" and "Affidavit" he deliberately falsely stated during an inventory search "he" found the two pounds of marijuana; however, as shown and demonstrated up above, Purdin during the Suppression hearing testified his search took place before the inventory. Id. Moreover, the Plaintiff avers (2) Purdin stated during his search of Mr. Lask's vehicle, Deputy Walters had placed Mr. Lask under arrest for OVI, and had placed him in the back seat of his cruiser. Pl.Ex."M1"(Sup.H.TR.103,Ln.2-6).

The Plaintiff asserts that by Defendant Purdin's own sworn testimony, Mr. Lask was arrested, handcuffed, and seated in the back of Deputy Walters cruiser; so, undoubtably Mr. Lask was no where near his vehicle, and, infact had already underwent a Terry weapons pat down search by Deputy Walters before initiating the field sobriety tests, but, in light of Purdin's alleged allegations of smelling a strong odor of marijuana, and Deputy Walters as well, there was "no" request or insistence on clearing the vehicle with a weapons search or suspicion under the automobile exception, notwithstanding , the implications of Constitutional magnitude rendering an unlawful seizure of the Plaintiff's person based on the "Fabrication" of falsehoods that resulted in Mr. Lask's false arrest in violation of his Fourth Amendment right to be free from unlawful seizures without a warrant or probable cause, which is well established under the Supreme Court of the United States decision of Arizona v. Gant.

100.        "A search conducted without a warrant issued upon probable cause is 'per se unreasonable' under the Fourth Amendment unless it falls within a few specific and well-established exceptions." "One such exception is a search incident to a lawful arrest." Plaintiff preliminarily notes that in order for a search to be conducted pursuant to the search incident to arrest exception, the underlying arrest must be lawful. "For a warrantless 'arrest' to be lawful, the arresting officer "must have probable cause in the charged offense". Its note worthy "no charges were filed or warrant in lieu of Mr. Lask's false arrest". A case which, like this one sub judice, involved a traffic stop as a prelude to a planview sighting and arrest on charges wholly unrelated to the basis for the - stop. In Gant, police officers searched the defendant's automobile after handcuffing the defendant and placing him in the back of a police cruiser. Gant, 556 U.S. at 335. The United States Supreme Court found the search "unreasonable" and stated officers may search a vehicle incident to arrest only if the arrestee is within the reaching distance of the passenger compartment at the time of the __

search or if it is reasonable to believe the vehicle contains evidence of the "offense of the in questioned arrest. Id. at 351. In this case, Mr. Lask was not within reaching distance of his vehicle handcuffed and seated in the back of a police cruiser, secondly, there was no reasonable belief the vehicle contained evidence "of the offense in questioned", because thier was "no" offense charged to meet that burden. Id. It is black letter law that an illegal arrest taints any evidence discovered as a direct result of that arrest. Id.

101. Since the evidence provided in the Affidavit and "false" material statements forming the basis for probable cause was derived from the "exploitation" of Mr. Lask's illegal arrest for OVI followed by the unlawful search & seizure of his truck that uncovered two pounds of marijuana, the Affidavit, the Preliminary hearing, the Indictment, Malicious prosecution, Conviction, and Sentence in the single count indictment for Possession of Marijuana, should have been Suppressed as fruits of the poisonous tree and dismissed with prejudice, notwithstanding , all lack of subject matter jurisdiction. So, the "false statement " Purdin performed an inventory in the Affidavit should be "Excisied from all references from the Affidavit; as well as, the "two pounds of marijuana" in that it is "fruits of the poisonous tree doctrine" just the same.

102. The Plaintiff next asserts that the third 3). paragraph in the Affidavit contained reiterated falsehoods of material information, false evidence, and false statements in violation of Franks in the following:

> 3). "These beliefs are based on the Affiant observing
> Richard Lask leaving his residence just prior to
> being discovered with marijuana in his possession."
> "Based on the amount of marijuana discoverd inside
> Richard Lask's vehicle," the Affiant believes this
> is not for personal use and further criminal activity is being conducted inside Richard Lask's residence. See Pl.Ex."G" Redacted Affidavit at 3 of 6;
> See Paragraph's 92 and 93 herein referencing Mr.
> Lask leaving his residence. Id.

Defendant Sam Purdin had a lawful duty to author a factually accurate "police report" and "affidavit" in the same without false, material statements and omissions, or "false information provided by and used in affidavit by Deputy Walters.

103.     The Franks case herein arose in the context of a search warrant, but its rationale extends to arrest warrants. Liability under Franks can arise from either material misstatements or material omissions in warrant affidavits. Functionally, the holding of Franks is an exception to the independent intermediary -- doctrine, which provides that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." But "the chain of causation remains intact if it can be shown that - the deliberations of that intermediary were in some way tainted by the actions of the Defendant." To determine taint, the essential inquiry is whether "there remains sufficient content in the warrant affidavit to support a finding of probable cause" after the "material that is the subject of the alleged falsity or reckless disregard is set to one side." In this case, the remaining particularized facts in the affidavit are that "[a]fter the Plaintiff demonstrated up above sufficient to present prima facie evidence of material facts clearly and convincingly upon the record." Taking these allegations as true and viewing in them in the light most - favorable to the Plaintiff in his "Verified Complaint", the "corrected" content of the affidavit is insufficient to establish particularized probable cause for  an arrest based on supposed violations of "Fabricated" evidence, false, material statements/information, and knowingly and intentionally, or with reckless disregard for the truth, deliberately and reckless disregard withheld material "omissions"  that revealed the Plaintiff's false arrest Defendants Purdin and Walters sought to subvert through the chain of causation for false arrest, in the guise of the independent intermediary doctrine, by filing false police reports and affidavit and the giving of testimony before the secret grand jury or magistrate to break the chain of causation thereby, insulating thier unlawful misconduct.

104.     Assuming that the foregoing allegations constitute materially false statements or omissions in the warrant affidavit, Franks require the Court to determine whether, excluding such errors and omissions, the remaining "corrected affidavit" establishes probable cause for the warrant's issuance.

Here, the Plaintiff alleges that the court before the Preliminary hearing was held, the Magistrate or Judge presented with the Affidavit, and that the "grand jury's" deliberations were "tainted by the use of wholly inaccurate, false, and woefully incomplete information. Plaintiff alleges that the grand jury must - have been misled by the presentment of materially misleading and false statements as demonstrated up above herein all going to the heart of the prosecutor's case-in-chief. The Plaintiff further alleges upon information and belief that Defendant Purdin falsely testified to material information before the Preliminary hearing, and falsely testified before the grand jury consistently with his false-fabricated sworn affidavit because he testified consistently within the Plaintiff's "suppression hearing" examinig these same false material facts in prosecution's case in chief. Plaintiff also alleges that (prosecutor) Defendant David Kelley presented the false evidence, and false information of the Ohio and the Kansas (email) stop and Defendants Purdin and Walters testimony to the grand jury based on thier false police reports and affidavit for consideration by the grand jury. These facts as alleged, are wholly sufficient to allege that Purdin and Walters tainted the grand jury's determination such that the independent intermediary rule does not apply. Accordingly, as it pertains to the numbered Causes of Action herein, the Court should not preliminary dismiss them, and should deny any claim of "qualified immunity" as the Defendants Purdin and Walters acted outside thier employment/authority under the color of state law in violation of <u>Franks v. Delaware</u>, without probable cause.

**105.** The Plaintiff asserts that Purdin who drafted, signed, and presented the warrant affidavit; and Walters who supplied and knowingly and intentionally, or with reckless disregard for the truth, provided Purdin false material statements/information and material omissions used in the affidavit that falsely was read as: The Affiant requested additional law enforcement units proceed to the scene to assist. "Deputy Walters arrived at the scene and conducted field sobriety

tests on Richard Lask. Mr. Lask was determined to be driving under the influence of drugs and/or alcohol and was placed under arrest."This material information - in and of itself was a false statement under Franks as an "Omission", because it painted a picture of legally arresting Mr. Lask, when infact, Deputy Walters did not file charges or a warrant in lieu of Mr. Lask's (physical) custodial arrest for OVI, resulting in a unlawful seizure of Mr. Lask's person, false arrest, con- tinued unlawful prolonged detention, false imprisonment, and malicious prosecut- ion without probable cause or warrant issued by a magistrate or judge, in viol- ation of Mr. Lask's Fourth Amendment rights to be free from unreasonable seizures without a warrant or probable cause. The Plaintiff asserts that this Constitutional right was "clearly established" at the time of Walters alleged misconduct, acting outside the scope of his employment/authority under the color of state law.  In furtherance thereto, Deputy Walters also knowingly and intentionally, or with reck- less disregard for the truth, fabricated, presented, and provided false material statements in his "Incident (Narrative) Police Report" (Pl.Ex."I") that falsely read: "During an inventory of the truck a blue lunch bag was found containing ap- prox. two pounds of Marijuana." This statement was completely unambiguously "false" and deliberately and with reckless disregard for the truth, false-fabricated evi- dence.

106.     Defendant Deputy Randy Walters self-contradicted the "false state- ment in his police report. See (Paragraph 81 herein). These allegations were con- sistently testified to and relied upon in the grand jury's detemination that lacked sufficient true material facts and evidence tainted and hindered the grand jury's investigation to wholly and accurately determine probable cause, as Walters acted outside the scope of his employment/authority under color of state law.

107.     "A law enforcement officer must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to lia- bility under Franks." If an officer does not present or sign the affidavit, lia-

bility attaches only if "he helped prepare the complaint by providing informat-
ion for use in it." The analysis must consider the role played by each Defend-
ant herein. It is undisputed that Defendant Deputy Walters did not present or
sign the complaint on the basis of which the warrant issued by the signiture -
of Defendant Sam Purdin alone. Thus, Deputy Walters can be and Plaintiff alleges
he is subject to liability heretofore, because he helped prepare the complaint
by providing information of Plaintiff's arrest by him for OVI, but, "Omitted"
in violation of Franks, such was the product of an unlawful seizure and false
arrest thereby the lack of filing of official charges and warrant in lieu of Mr.
Lask's wrongful arrest.

108.        Franks, of course, requires more than bare assertions of falsehoods.
Instead, they "must be accompanied by an offer of proof... [and] point out --
specifically the portion of the warrant affidavit that is claimed to be false,
and they should be accompanied by a statement of supporting reasons." Plaintiff
asserts and alleges he has met this standard in the paragraph's demonstrated up
above. Evidence must be proffered and "[a]ffidavits or sworn or otherwise reli-
able statements of witnesses should be furnished, or their absence satisfactor-
ily explained." Plaintiff avers as pro se litigants the Court should liberally
construed his complaint to that of lacking being prepared by a license attorney.
Thus, the Plaintiff alleges that Deputy Walters "knew the exact wording of the
affidavit" and knew or recklessly disregarded the fact that, based on the exculp-
atory evidence he had learned (Police Report:"Later I went to 202 Lask Lane to
assist with collecting evidence from a search warrant. I arrived after most of
the items was located. My role in being at Lask Lane was to load items found. I
later cleared the scene.), probable cause did not exist to arrest Mr. Lask fitt-
ing the warrant's criteria, notwithstanding , Walters first hand "knowledge" he
unlawfully seized and unlawfully arrested Mr. Lask. These allegations are suffi-
cient to tie Deputy Walters to potential Franks liability based on the pleadings,

suppression hearing tesimony, and information presented in his own narrative
("inaccurate/false") police report, knowingly or with reckless disregard sup-
plied false or materially misleading information falsely identifying that he
was the one who performed an inventory on Mr. Lask's truck, when in fact, it
was Defendant Sam Purdin, talk about having thier story's crossed they couldn't
figure out which one told what lie, because Purdin told the same fabricated
lie, but gave himself away during suppression hearing testimony that performed
the search before the inventory, go figure?

109.      Again, to overcome a Defendant's "qualified immunity", a Plaintiff
must show that the Constitutional right was "clearly established" at the time
of the Defendant's alleged misconduct. Plaintiff asserts that Franks v. Delaware
was clearly established at the time of Plaintiff's injury by Walters and Purdin
who acting outside the scope of thier employment/authority under color of state
law knew  or should have known thier unlawful conduct violated Franks, therefore,
the "good-faith" exception in Leon does not apply. Plaintiff also alleges that
the false statements that Walters and Purdin provided were material and necess-
ary to the finding of probable cause that was insufficient and an incomplete de-
termination of the true material facts. As a result, the "defective arrest war-
rant [was] based on a materially false affidavit" and constituted a violation
pursuant to the Fourth Amendment and Franks v. Delaware. Purdin made several -
false statements in his affidavit, including that Purdin performed unlawful search
and seizure of Plaintiff's person and his truck by doing so without a warrant or
probable cause. If nothing else, their is a genuine dispute as to the facts sup-
porting his Franks argument herein. The Fourth Amendment requires that arrest
warrants be issued only upon a showing of proabale cause. In a civil rights case,
investigators are entitled to rely on a judicially-secured arrest warrant as satis-
factory evidence of proabable cause. However, "an officer [or investigator] cannot
rely on a judicial determination of proabale cause if that officer knowingly makes

110.

false statements and omissions to the judge such that but for these falsities the judge would not issued the warrant." An investigator may be held liable under §1983 for making material false statements either knowingly or in reckless disregard for the truth to establish probable cause for an arrest. To overcome an officer's entitlement to qualified immunity, however, a Plaintiff must establish: (1) a substantial showing that the Defendant(s) stated a deliberate falsehood or showed Reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause. Plaintiff herein asserts that the Judge in this instant case would not have issued the -- warrant without the prima facie alleged false material demonstrated herein up above. The Plaintiff alleges that the Ohio Traffic Stop was predicated upon an "unconstitutional seizure/false arrest and search and seizure of contraband of (two pounds of marijuana) fruits of the poisonous tree recovered from Plaintiff's vehicle by Sam Purdin." Therefore, the search warrant was/is invalid where the decision to seek a search warrant was prompted by false-fabricated material information, omissions, and by information gained from an unlawful seizure/arrest and unlawful search exploited by the false arrest of the underlying offense of the alleged Ohio Traffic Stop to begin with, cannot be viewed as unconnected and a wholly independent investigation by Sam Purdin of the Adams County Sheriff's -- Office, to subvert not being continuously predicated upon the "unconstitutional" Kansas traffic stop.

111.  Plaintiff plead not guilty and moved to suppress the evidence against him. State v. Lask, 4th Dist. Adams. No.19CA1101,2020-Ohio1037, ¶ 1. See Pl.Ex. "1" and "2" Plaintiff's two Motion's to Suppress attached hereto. As a result of the Plaintiff's first appeal, the Appellate Court of Appeals remanded the matter for further briefing of the parties to examine the "what impact the use of some illegally obtained information from [the Kansas traffic stop] had on the search warrant and evidence [from Ohio traffic stop] seized pursuant to the warrant." Id., at ¶26.

The Plaintiff alleges that the record demonstrates by prima facie evidence of "false material misleading statements", "omissions", "fabrication-of-evidence", "unlawful seizure/arrest", and "unlawful search and seizure of Mr. Lask's truck", all the "fruits of the poisonous tree doctrine." The Plaintiff asserts that by clear and convincing evidence upon the face of the record demonstrates that the Kansas Traffic Stop "[was not irrelevant and unrelated]" inspite of the illegal "unconstitutional" entire Ohio Traffic Stop being of no affect void ab initio. "The exclusionary rule requires suppression of evidence obtained as a result of an unlawful search or seizure and derivative evidence that is the product of the primary evidence or is otherwise acquired as an indirect result of the unlawful search, unless the connection with the unlawful search and seizure is so atten- uated that the taint is dissipated." The question is whether the taint is suffi- ciently dissipated or whether the evidence is the fruit of the poisonous tree. The exclusionary rule has no application if the government discovered the evid- ence from an independent source, if the connection between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dis- sipate the taint, as where the police have (not in this case) an independent - source for discovery of the evidence.

112.      Therefore, if the connection contiues to exists, then any search or seizure is plainly "unreasonable" under the <u>Fourth Amendment</u>. The United States Supreme Court has held that, after excising tainted information from a supporting affidavit, "if sufficient untainted evidence was presented in the warrant affi- davit to establish probable cause, the warrant was nevertheless valid." However, "'An affidavit containing erroneous or unconstitutionally obtained information in- validates a warrant if that information was critical to establishing probable cause. If, however, the affidavit contained sufficient accurate or untainted evi- dence, the warrant is nevertheless valid.'". "'[I]t is well settled that "[t]he ultimate inquiry *** is not whether the underlying affidavit contained allegations

based on illegally obtained evidence, but whether , putting aside all tainted allegations, the independent and lawful information stated in the affidavit suffices to show probable cause"."" The Plaintiff alleges in the negative that the remaining information in the affidavit does not support probable cause and is therefore, invalid. Therefore, this Court in its preliminary review could properly conclude the search warrant is invalid, containing only unlawful information and evidence of the poisonous tree from the Ohio traffic stop. As a result, all evidence presented herein up above obtained from the invalid warrant issued by Sam Purdin and Randy Walters of the Adams County Sheriff's Office is inadmissible.

**113.**      Defendant Sam Purdin of the Adams County Sheriff's Office received a copy of an email on October 16th 2017. Det. Purdin testified that he spoke to with the Kansas Trooper Chandler Rule after receiving the email he authored but learned no additional information beyond the contents of the email. Pl.Ex."M1" Sup.H.Tr.87:3-4, 88:6-8)(114:7-10). After receiving the email, Detective Purdin went to the vicinity of the Plaintiff's residence to follow up on the information contained within the email (Sup.H.Tr.88:9-12). In due course, Det. Purdin pulled the Plaintiff over for alleged unverified traffic infractions and proceeded to search his vehicle where he found marijuana (Sup.H.Tr.103:22-23). See also Pl. **Ex.**"H" Kansas email by Chandler Rule.

**114.**      In his report, Det. Purdin wrote, "I had previously received **information from the Kansas Highway Patrol** regarding the suspect as being suspected of **trafficking in Marijuana** With this information along with the large amount of Marijuana found in the suspect's vehicle I obtained a search warrant. . ." (See Pl. Ex."I" - Det. Purdin's Investigative police report (emphasis added)). Det. Purdin obtained a search warrant solely based on the Marijuana (fruits of the poisonous tree) from Mr. Lask's vehicle, and the email from Trooper Chandler Rule. Pl.Ex."K" affidavit for search warrant by Sam Purdin. Evidence of the crime of possession

was found at the Plaintiff's residence. Pl.Ex."M1" (Sup.H.Tr.105). While the
State of Ohio asserted that the stop was based on Det. Purdin's alleged obser-
vations of traffic violations, it did not dispute that Detective Purdin's sole
reason for investigating Mr. Lask was the email from Kansas State Trooper Rule.
Detective Purdin testified that he took action to investigate Mr. Lask as a di-
rect response to the email Pl.Ex."M1" (Sup.H.Tr. 88).

115.        Discrepancies within the warrant

            As an addendum to the above facts, the Court is urged to take note
of a number mischaracterizations and factualinaccuracies contained within the
warrant affidavit that range from possible minor acts of carelessness to intent-
ional misinformation or attempts to mislead and misrepresent. With respect to
the email contents, in his affidavit Det. Purdin wrote, "The Trooper discovered
two (2) large duffel bags containing marijuana "shake" and dryer sheets. The
Trooper stated Richard Lask indicated marijuana discovered was his own personal
use." First, Det. Purdin describes the duffel bags as "large" duffel bags. No
such description was included within the email contents, and Det. Purdin testified
that he received no additional information outside of the email (Pl.Ex."M1"Sup.H.
Tr.114:7-10). Before discounting the potential impact, consider that a number of
additional descriptors might have been added without material effect such as de-
scribing two green duffel bags or two canvas duffel bags. However, the descriptor
of "large" is material to imply that the bags could be used in large-scale drug
trafficking and would therefore be detrimental to the Plaintiff and material to
the decision of a neutral judge in determining what type of activity the Plaint-
iff might be engaged in.

116.        Next, in the Kansas email, the trooper wrote, "The driver admitted
to having personal use inside the vehicle. The probable cause search produced a
small amount of marijuana [and] two empty duffel bags which contained marijuana
shake and dryer sheets." See(Pl.Ex."H" Kansas email). However, Det. Purdin writes

in his affidavit, "The Trooper discovered two (2) large duffel bags containing marijuana "shake" and dryer sheets. The Trooper stated Richard Lask indicated marijuana discovered was his own personal use." Pl. Ex. "K" Affidavit by Det. Purdin. The Kansas trooper refers to personal use marijuana inside the vehicle. This marijuana was surrendered by the Plaintiff and disposed of on the side of the road. Det. Purdin includes in his affidavit that the Plaintiff admitted that the marijuana discovered during the Kansas stop was his own personal use. However, Det. Purdin omitted the fact that a personal amount of marijuana was found in the vehicle. Rather Det. Purdin mentions only the supposed "marijuana shake" found in the duffel bag and goes on to note that the Plaintiff indicated the marijuana found was his own personal use. The distinction is subtle but the power is dramatic. From Purdin's omission, the implication was that the Plaintiff acknowledged that the two large duffel bags contained marijuana. Due to Purdin's omission, it would be reasonable to surmise that the judge reviewing the search warrant affidavit pictured in his mind's eye two large duffel bags containing marijuana that the Plaintiff admitted was marijuana, thus removing any doubt as to the Plaintiff's activity.

117.        This is a far stretch from the contents of the email. The difference between the email contents and the implication from the Det. Purdin's presentation of that information in the affidavit is alarming with respect to the characterization that the Plaintiff was engaged in marijauana trafficking. Third, in his sworn search warrant affidavit, Det. Purdin noted that he received the email on October 9, 2017, however , he testified that he received the email on October 16, 2017. See Pl. Ex."K" Affidavit by Purdin; Pl.Ex."M1" (Sup.H.Tr. 87:3-4, 88:6-8). Both facts cannot be true. Accordingly, if one is to trust Det. Purdin's sworn testimony, then his sworn Affidavit contains a glaring and indisputable error of fact. On the other hand, if his sworn affidavit is accurate, then his sworn testimony was demonstrably false.

118.        Finally, in his affidavit, Det. Purdin goes on to described his ob-
servation on October 16, 2017. He affirms that he observed the Plaintiff leave
his residence (Pl.Ex."K" Affidavit by Purdin). However, in his testimony, Det.
Purdin stated that he knew there to be at least two residences on Lask Lane, -
and that when he first observed the Plaintiff, the Plaintiff was exiting Lask
Lane emerging onto Stanfield (Sup.H.Tr. 91:19-20). According to his testimony,
Det. Purdin pulled into a neighboring driveway on the right and observed the -
Plaintiff drive past him within seconds (Sup.H.Tr.91:2-23, 117:2-3). Accordingly,
Det. Purdin did not observ the Plaintiff leaving his residence. Rather, he ob-
served the Plaintiff exiting Lask Lane to make a right turn onto Stanfield Road
(sup.H.Tr.91:20). Furthermore, Det. Purdin testified that he knew there were at
least two residences on Lask Lane. Detective Purdin's sworn statement that he
observed the Plaintiff leaving his residence was a false statement intended to
connect the marijuana found at the scene of the Ohio traffic stop to the Plaint-
iff's residence. The Court of Appeals already determined that the Kansas trafic
stop was illegal and that the information obtained from that stop cannot be used
to support probable cause for the later obtained search warrant. State v. Lask,
4th Dist. Adams No. 19CA1101, 2020-Ohio1037, ¶ 23. The issue, then is whether
the information from the Kansas stop (can be unconnected) can be excised compl-
etely from the affidavit offered in support of the warrant and whether the remain-
der of the Ohio traffic stop illegalities deem  constitutionally  tainted and
insufficient to support probable cause.

119.        A search warrant must be supported by facts sufficient to justify
probable cause affirmed by an officer and offered to a neutral judge. If it turns
out that the facts used to justify probable cause were obtained illegally, the re-
sult may be a taint of the police action and evidence, and an exclusion of evi-
dence as "fruit of the poisonous tree" under the exclusionary rule. See State v.
Lask, 4th Dist. Adams No. 19Ca1101, 2020-Ohio1037, ¶ 26. However, the courts carved
out an exception to the general application of the exclusionary rule if the State
can show that law enforcement had an independent source as a basis for obtainig a
search warrant.

120.         Finally, even the good-faith exception to a warrant violation does not apply where a search warrant is issued on the basis of evidence obtained as a result of an illegal search. Furthermore, Ohio adopted the good faith exception as outlined by the Supreme Court of the United States in United States v. Leon. Under the exception, Leon noted suppression remained appropriate when "the supporting affidavit contained information the affiant knew to be false or would have known to be false but for reckless disregard of the truth."

121.         In this case, there were notable discrepancies between the information provided within the Kansas email, Det. Purdin's testimony, and Det. Purdin's inclusions in his affidavit as discussed in detail above. Whether intentional or reckless, it is undeniable that the affidavit submitted in application contained information Det. Purdin knew or should have realized to be false. Of the discrepancies noted above some more egregious than others, most alarming were Det. Purdin's addition of the descriptor "large" in reference to the duffel bags, and omission of information that the Plaintiff's admission to personal use marijuana was in reference to a small amount of marijuana found within the vehicle rather than an acknowledgment that the duffel bags contained marijuana.

122.         Following an illegal traffic stop, Kansas Highway Patrol emailed information to the Ohio law enforcement. Detective Purdin received the email and set out to investigate the Plaintiff as a direct result of the illegal traffic stop. Detective Purdin initiated an alleged traffic stop unsubstantiated besides his own allegations and reported that he came to the decision to obtain a search warrant based on the illegally begotten information contained in the Kansas email and his his alleged findings (we know different now) during the Ohio traffic stop. In his affidavit supporting his application for a search warrant, Det. Purdin included selected and embellished information from the Kansas email to build support that the Plaintiff was engaged in trafficking. With the information from the Kansas email excised from the search warrant affidavit, and based on Det. Purdin's own words, probable cause to search the Plaintiff's home would not be sufficiently

supported. Moreover, under the independent source exception, it is clear that the decision to seek a warrant and the information contained within the affidavit must be wholly separate and not prompted by information gained during the illegal search. Accordingly, the Court in its preliminary review is requested to consider the aforementioned facts and law to find the search base on the Ohio traffic stop search warrant invalid and proceed accodingly to suppress all evidence obtained from the execution of the invalid search warrant.

**123.** (V) Violation of 42 U.S.C.§ 1983 (Fourth Amendment - Malicious Prosecution in OVI Unlawful Seizure/False Arrest, False Imprisonment, and Continued Unlawful Detention without Probable Cause, and Franks v. Delaware violation), against Chandler Rule of the Kansas Highway Patrol, who Knowingly and Intentionally or with Reckless disregard for the truth, Conspired to provide false information in the form of an email to Ohio Law Enforcement after an illegal Kansas Traffic Stop against Plaintiff that lacked reasonable suspicion or probable cause, and Franks violation in providing the same false information without probable cause to Det. Sam Purdin for use in his "police report" and "Affidavit For Search Warrant" acted outside the scope of his employment/authority in his individual and official capacity under the color of state law;

**124.** On October 9th, 2017, the Plaintiff was investogated for "following too close" in Kansas, by Kansas Highway Patrol Trooper Chandler Rule. The trooper issued no citations but drafted an "email" to be forwarded to Ohio Law Enforcement. Defendant Detective Sam Purdin of the Adams County Sheriff's Office acted upon the email to investigate and initiated a an Ohio traffic stop on the Plaintiff without reasonable suspicion or probable cause. The Plaintiff was unlawfully seized, unlawfully detained beyond the reason for the alleged stop, and ultimately falsely arrested and falsely imprisoned without a warrant or probable, that directly resulted from Defendant Rule's email information that bore false information in addition to the Kansas traffic stop being "unconstitutional" and forwarded information the fruits the "poisonous tree."

125.        The Ohio Court of Appeals Fourth Appellate District, already det-
ermined that the Kansas traffic stop was illegal and that the information obt-
ained ("email") ("testimony") from that stop cannot be used to support State's
probable cause for the later obtained search warrant. State v. Lask, 4th Dist.
Adams No. 19CA1101, 2020-Ohio-1037, ¶21, ¶23. During the illegal stop, the -
Plaintiff admitted to having "a little bit of marijuana inside his pants". State
v. Lask, 4th Dist. No. 19CA1101, 2020-Ohio-1037, ¶7. The Kansas trooper had the
Plaintiff exit the vehicle and place the personal use marijuana on the top of the
vehicle, apparently a quantity insignificant enough that the Kansas trooper felt
comfortable disposing of it on the side of the road without issuing a citation
for possession. See Id. However, the Kansas Trooper Rule did proceed to perform
an exhaustive search of the vehicle and its contents. Id. After an exhaustive -
encounter and illegal seacrh, the Kansas trooper caused an email to be sent to
Ohio authorities. The email read as follows:

> "Today on 10/9/17 I stopped a Toyata Avalon (OH HEM 2647) on I-70
> westbound. Through the duration of the stop I produced reasonable suspicion of
> drug trafficking (extremely nervous, didn't know where they were going or how
> long they were going to stay, both occupants were unemployed, they stated they
> were friends but had a 20 year age difference and could not answer simple ques-
> tions about each other, strong odor of a masking agent, the vehicle was just
> recently purchased, they stated they had not traveled into Kansas for approx-
> imately six months but the LPR has them crossing 8/8/17, etc.). The driver ad-
> mitted to having personal use inside the vehicle. The probable cause search
> produced a small amount of marijuana, two empty duffel bags which contained
> marijuana shake and dryer sheets, and two large coolers which were practically
> empty. There was no currency located inside the vehicle. I have no doubt that
> they are involved in drug trafficking. I have attached the information below.
> Feel free to use the information however you please."

See Pl.Ex."H" Kansas Trooper Chandler Rule's "email" (emphasis added).

126.        Defendant Detective Purdin of the Adams County Sheriff's Office
received a copy of the email on October 16, 2017(Pl.Ex."M1" Sup.H.Tr.87:3-4, 88:
6-8). Det. Purdin testified that he spoke with Kansas Trooper Rule at least twice
after receiving the email but learned no additional information beyond the cont-
ents of the email (Sup.H.Tr.114:7-10). After receiving the email, Detective Purdin

went to the vicinity of the Plaintiff's residence to follow up on the informat-
ion contained within the email (Sup.H.Tr.88:9-12). In due course, Det. Purdin
pulled the Plaintiff over and proceeded to search his vehicle where he found
marijuana (Sup.H.Tr.103:22-23).

127.        In his report, Det. Purdin wrote, "I had previously received infor-
mation from the Kansas Highway Patrol regarding the suspect as being suspected
of trafficking in Marijuana. With this information along with the large amount
of Marijuana found in the suspect's vehicle I obtained a search warrant. . ."
(see Pl.Ex. "I" Det. Purdin's Investigative police report (emphasis added)).

        Det. Purdin produced an affidavit to obtain a search warrant of the
Plaintiff's residence. In the search warrant Det. Purdin affirmed in part:

    1)  On October 9, 2017, the Affiant received information from the Kansas
        Highway Patrol indicating a Trooper stopped a vehicle driven by Rich-
        ard Lask. The Trooper discovered two (2) large duffel bags containing
        marijuana "shake" and dryer sheets. The Trooper stated Richard Lask
        indicated marijuana discovered was his own personal use.

    2)  The Affiant further states on October 16, 2017, he went to the resi-
        dence of Richard Lask to follow up on this information. While in the
        area, the Affiant observed Richard Lask leaving his residence in  a
        red Dodge Dakota truck. The Affiant observed the vehicle failed to
        stop at a stop sign located at the intersection of State Route 41 and
        Stanfield Road. The Affiant further observed the vehicle's brake lights
        were broken. Based on these observations, the Affiant conducted a traf-
        fic stop on the vehicle. The Affiant requested additional law enforce-
        ment units proceed to the scene to assist.
        (See Pl.Ex. "K" Affidavit For Search Warrant)

Based on Det. Pudin's affirmations, a search warrant was obtained (See Pl.Ex."L"
Search Warrant).

128.        Here, Detective Purdin read the email from Rule and decided to drive
out to Lask Lane and investigate. Purdin testified that the reason he went out to
Lask Lane was the "email" from Rule. Purdin testified the Plaintiff was unknown
to him other than from the Rule email. There is no evidence that there was any

other investigation in progress against the Plaintiff. As such, the discovery of any evidence in the charged offense was not inevitable. Therefore, all such evidence of the Kansas traffic stop was suppressed and the Kansas traffic stop determined to be "unconstitutional" on its face. Here, with regard to the Kansas traffic stop by Tpr. Rule, the State submitted as evidence a video of the stop and testimony by Tpr. Rule. The video does not show any evidence that a traffic offense occurred and gives no basis for probable cause. In fact, when combined with testimony by Tpr. Rule, the video decidedly favors that there was no probable cause to initiate a traffic stop for "following too close." The trial court found that the officer had probable cause based solely on an affirmative response by the Plaintiff to a compound question informing him of the reason for the stop, which can be heard on the video, and is transcribed: (State's Ex. 1 Disc 1 02:50;T.p.21);

> Tpr. Rule: The reason for the stop, you were following that car in front of you a little too close, before you, you changed lanes okay? So, you know what I'm talking about? Plaintiff: Yeah.

129.    In finding the stop to be legitimate, the trial court wrote, Plaintiff responded in the affirmative in apparent recognition of the offense, without objection or inquiry." Pl.Ex."D" Judgment Entry Motion to Suppress at page 2, para. two. Accordingly, the trial court seems to have based its findings that probable cause existed based on the Plaintiff's statement contrary to the video evidence and trooper testimony. Anyone who has ever been pulled over for a traffic violation knows that the best course of action is cooperative and compliant behavior as the certainty of a citation is generally a fait accompli, and unlikely to be - - changed by arguing one's case with an officer on the side of the highway. Rather than an admission of guilt, a more reasonable inference from the Plaintiff's response on the video, was that he was merely an acknowledging that he understood the nature of the charge. In fact, later in the video, after the Plaintiff was confident that he would only be issued a warning, the Plaintiff disputed the charge. (State's Ex. 1 Disc 1 09:25).

**130.** In addition, Tpr. Rule's probabale cause must have been based on his knowledge of the facts and circumstances of the alleged offense. The State elicited testimony frm Tpr. Rule so that he could articulate the specific facts and circumstances that gave him probable cause to initiate the traffic investigation on the Plaintiff. The State asked Tpr. Rule what he could recall about the stop. Trooper Rule answered, "Quite honestly I don't recall a lot." Pl.Ex. "M1" (Sup.H.Tr.17). He went on to provide no details whatsoever. Trooper Rule was asked what type of vehicle the Plaintiff drove. (Sup.H.Tr.11). He could not recall. Id. Even when the video begins, the Trooper cannot identify the Plaintiff's vehicle. (Sup.H.Tr.20). When asked whether the Plaintiff had switched lanes from the left lane to the right, Tpr. Rule could not recall. (Sup.H.Tr.62). The trooper could offer no details about the alleged offense or a basis for probable cause that an offense had occurred. Furthermore, Tpr. Rule did not write a report on the offense and no evidence other than the video and Tpr. Rule's - testimony was introduced. (Sup.H.Tr.17). Finally, the video evidence contradicts any assertion that an offense occurred or could have occurred. The trooper was asked whether he pulled out specifically in pursuit of the Plaintiff's car, and Tpr. Rule replied that he had pulled out from the median and onto the highway to begin patrolling. (Sup.H.Tr.20). It is noteworthy that he did not testify that he entered the highway to begin pursuit.

**131.** On the video, the Plaintiff's vehicle first comes into view when he signals to change lanes. (State's Ex. 1 Disc 1 00:50). No vehicles can be seen ahead of him at this time in any lane. (State's Ex.1 Disc 1 00:50). When Tpr. Rule catches up to the Plaintiff twenty seconds later, the closest vehicle in front of the Plaintiff is likely an eighth of a mile or more ahead. (State's Ex.1 Disc 1 01:13). An officer is permitted to initiate a traffic stop only if he has - probable cause to believe the offense occurred. Here, on the video, Tpr. Rule stated that the Plaintiff was following too close when he changed lanes. However,

based on the video, there are no vehicles within close proximity to the Plaint-
iff's when he changed lanes. From his testimony, the Trooper had not observed
an offense prior to entering the highway. (Sup.H.Tr.20). It is apparent that
no violation took place on the video. (State's Ex. 1 Disc 1 00:50-02:13). As
such, the State of Ohio, and Defendant Rule herein, did not and cannot meet its
burden to prove that Tpr. Rule had probable cause that the offense occurred.
Trooper Rule articulated no basis for probable cause that the offense of foll-
owing too close took place. Furthermore, the video contradicts the officer's
allegations that an offense took place. Because there was no probable cause
that the offense occurred, the traffic stop for "following too close" was rend-
ered illegal, and any action traceable back to the illegal traffic stop by Rule
was suppressed by the exclusionary rule.

132.    Trooper Rule's testimony at the suppression hearing did nothing to
bolster the credibility of his claims. Trooper Rule testified that the entirety
of his law enforcement experience has been with the Kansas Highway Patrol. On
the date of the hearing he testified that he had been so employed for going on
two years (Pl.Ex."M1"Sup.H.Tr.8). The stop occurred four months before the hear-
ing, and Tpr. Rule spent his first six months in the training academy, which
leaves no more than fourteen months on patrol. Id. Finally, isn't it curious
that Rule's email omitted smelling Marijuana? As such, Tpr. Rule did not have
probable cause based on the smell of Marijuana, to search the Plaintiff's vehi-
cle. Tpr. Rule had a duty to author a factually accurate email without embell-
ishments, exaggerations, or untruths. It is a reasonable assumption that a tip
from fellow law enforcement will be afforded great weight and credibility. In-
formation from the anonymous tipster, paid informant, or even concerned citizen
will likely be scrutinized by law enforcement to different degrees to gauge re-
liability. The tip from fellow law enforcement likely receives the least scrut-
iny, if any, at all. Therefore, law enforcement must be held to a standard that

is commensurate with that level of trust. When Tpr. Rule decided to author an email to "incite" further law enforcement action against the Plaintiff, he had a duty to provide factually accurate in formation, without embellishment, exaggeration, untruths.

133.    In his search, Tpr. Rule was certain he would find a large amount of cash, a large amount of drugs, guns, and a masking agent. (Sup.H.Tr.74). Trooper Rule and another trooper performed an extensive search of the vehicle for nearly an hour. (State's Ex.1 Disc 1 and 2). No large amount of drugs or cash, and no guns or masking agent was found. (States Ex. 1 Disc 1 and 2). Undeterred, Tpr. Rule drafts an email to alert Ohio Law Enforcement to his unfounded suspicion that the Plaintiff was involved in drug trafficking (Pl.Ex."H"). While drafting the email, Tpr. Rule was aware that Ohio Law enforcement may rely on its contents (and infact stated in his email:"Feel free to use the information however you please") to take action to investigate the Plaintiff. As stated, Tpr. Rule must be held to have a duty to provide accurate and non-embellished, untruths that result in inciting illegal conduct in fellow law enforecment officers. Nevertheless Tpr. Rule's email contained a number of factual errors and embellishments. Trooper Rule's email begins by listing his reasons for reasonable suspicion. First, extremely nervous behavior (Pl.Ex."H" email). However, at the hearing he compared the suspects nervousness to typical public nervousness at traffic stop. (Sup.H.TR. 25). If their nervousness ever became greater than that, it was the result of being detained and questioned about large amounts of drugs, cash, and guns, well after the purpose for the stop had ended. (Sup.H.Tr.20,34; State's Ex. 1 Disc 1 12:20-15:30). Furthermore, nervousness is not a basis for reasonable suspicion as it is quite ordinary and reasonable for a law abiding citizen to become nervous in the presence of law enforcement.

134.    Similarly, Tpr. Rule cited as his basis for suspicion, that the suspects did not know where they were going or how long. The Plaintiff and his pass-

enger stated they were going to Colorado. (State's Ex. 1 Disc 1 02:57). The
Plaintiff stated it was for white water rafting, the passeger stated it was
for adventure. (Sup.H.Tr. 31, 36). The Plaintiff stated they would travel
for between four days and a week. (Sup.H.Tr.23). The passenger stated he was
unsure how long they would be gone. (Sup.H.Tr.39). None of these answers are
inconsistent or mutually exclusive. The traveler's plans may have been more
itinerant than the Trooper prefers but they are not a basis for suspicion.
Tpr. Rule also stated that one basis for suspicion was that both driver and
passenger were unemployed. (Pl.Ex."H" email). However, the (driver) Plaintiff
stated that he operated a firewood and wood carving business. (Sup.H.Tr.32).
At the hearing, Tpr. Rule admitted that his email was inaccurate in this regard.
(sup.H.Tr.65). Tpr. Rule wrote that there was a strong odor of a masking agent.
(Pl.Ex."H" email). However, for the reasons already discussed at length, this
staement was an obvious embellishment. A masking agent was not recovered. The
dryer sheets were allegedly found in a zipped duffel bag, enclosed in a carryon
bag, found in the closed trunk of the sedan. State's Ex.1). As such, identify-
ing the odor of dryer sheets as a strong odor of a masking agent was an emphatic
overstatement. Furthermore, the email also stated that he found a duffel bag
that contained dryer sheets.(Pl.Ex."H" email). Therefore, including both the
description of the duffel bag and the odor of a masking agent separately implies
both items were found which is a plan untruth.

135.      Tpr. Rule also writes that found "two large coolers, which were
practically empty." (Pl.EX."H" email). from the video, it is apparent that Tpr.
Rule found two standard-sized coolers with appropriate contents. The first was a
red cooler which Tpr. Rule opened and examined for over a minute. (State's Ex.1
Disc 1 42:30). Moreover, after shifting and removing the contents of the cooler,
Tpr. Rule had difficulty getting the lid closed of this practically empty cooler.
(State's Ex. 1 Disc 1 43:07). The second cooler can be heard to be filled with,

at least, a substantial amount of ice, and Tpr. Rule can be seen exerting him-
self to move the cooler out of and into the vehicle. (State's Ex. 1 Disc 1 44:
30). Therefore, neither cooler was practically empty, in fact, one cooler was
quite full. In his email, Tpr. Rule informs Ohio police that he found a small
amount of Marijuana in addition to some Marijuana "Shake". (Pl.Ex."H" email).
However, Tpr. Rule did not find Marijuana during the search of the vehicle. The
Marijuana was found on the Plaintiff's person and surrendered during the illegal
search. (Sup.H.Tr.51). Trooper Rule's email implies that more Marijuana was
found in the vehicle, because he identifies both the Marijuana by admission from
the Plaintiff, and the untruth that a small quantity of Marijuana was found in
the vehicle.

136.        In his email, Tpr. Rule states that the duffel bag had Marijuana
shake. (Pl.Ex."H" email). He testified that "shake" is defined as leaves, seeds,
and "that kind of stuff, that fell out of the packages [of Marijuana]." However,
he testified that what he found in the duffel bag was "a dusting." (Sup.H.Tr.55).
Close your eyes and think about the image conjured by Marijuana shake, then com-
pare that to dust. It is unclear what the Trooper meant by "that kind of stuff."
Leaves and seeds would be readily identiable as Marijuana and easily collectible
as evidence, which would seem to preclude dust as fitting the category. Mariju-
ana stems is more likely. Nevertheless, the email states that he found "shake,"
it does not state that he found Marijuana dust. (Pl.Ex."H" email). Yet another
example of Tpr. Rule attempting to bolster the influence and incite a reaction to
his email by embellishing the results of his search.

137.        Tpr. Rule knowingly and intentionally, or with reckless disregard
for the truth, included "false information in his email" to Ohio police to stren-
gthen the influence his email would have on Ohio law enforcement. Consider that
Trooper Rule's email (readily intentionally provided) was used directly in the
Affidavit (which in this it was) for Search Warrant. If an article will be used

as an avowed statement to support a search warrant, it must be held to that standard. The exclusionary rule is intended to protect citizens from police behaving badly. Therefore, the Court should find that the email was used as and provided as an instrument of "false information" in the use of the Affidavit for the Search Warrant illegally in violation of Franks v. Delaware, when Tpr. Rule knowingly and intentionally, or with reckless disregard for the truth, deliberately sent the email knowing it may possibly be used and relied upon by Ohio law enforcement and Judicial Officer in the same, in acting outside the scope of his employment/authority under color of state law in his individual and official capacites without probable cause to do so or any other legal justification. The Plaintiff avers that under a Franks violation Tpr. Rule is not entitled "qualified immunity", by the same token, the law was clearly established that a Franks violation, results in violating a persons Fourth Amendment, and it is well established the Plaintiff was entitled Tpr. Rule forwarding a Constitutionally authored factually accurate email without embellishments, exaggerations, or untruths pursuant to his Fourth Amendment rights. Therefore, as such, the subsequent provided use in the Affidavit for Search Warrant and investigation by Ohio Law Enforcement and all resulting evidence must be view in light most favor to the Plaintiff and excluded.

138.　　　　Following Trooper Rule's encounter with the Plaintiff, he authored an email that he knew to be "false" but deliberately or recklessly caused it to be sent to Ohio law enforcement. The email was submitted by Det. Sam Purdin in his police (narrative) investigative report and Affidavit for Search Warrant, and subsequently used in the "Malicious prosecution of Plaintiff's Unlawful Seizure/False Arrest, False Imprisonment, and Continued Unlawful Detaintment." (Pl.Ex."H" email). The trial even recognized that the most pivotal aspect of this case was the contents of the email on which Ohio law enforcement action was predicated (Pl.Ex."D" See Jdg. Ent. 5). Accordingly, Tpr. Rule acted unlawfully in causing the email,

with its unreliable contents, to be delivered to Ohio law enforcement. The
email was the only reason Ohio law enforcement took action in this case. Based
on any or all of the foregoing reasons, this Court should find preliminarily,
that Plaintiff's claim that a Franks violation occurred, and that Trooper Rule
must answer to that end that the Plaintiff's Constitutional protection to be
free from unreasonable search and seizures and that all evidence recovered as a
result of the email from Trooper Rule must be viewed in light most favorable to
the Plaintiff's verified complaint. See also Pl.Ex. Number "5" Appellate Brief
of (Plaintiff's) Defendant-Appellant, for Support herein.

Malicious Prosecution Under Federal Law

**139.**       Under 42 U.S.C.§ 1983 provides that "an individual may bring a private
cause of action against anyone who, acting under color of state law, deprives a
person of rights, privileges, or immunities secured by the Constitution or conferred
by federal statute." The Sixth Circuit recognizes a constitutional claim-grounded
in the Fourth Amendment-against government officials whose 'deliberate or reckless
falsehoods result in arrest and prosecution without probable cause.'" The Right To
Be Free From Malicious Prosecution Is Clearly Established. While clearly established,
the right is a narrow one. Johnson v. Moseley, 790 F. 3d 649 (6th Cir. 2015). As we
have previously said, "[a] police officer violates a suspect's clearly established
right to freedom from malicious prosecution under the Fourth Amendment 'only when his
deliberate or reckless falsehoods result in arrest and prosecution without probable
cause." Id. at 655 (quoting Newman v. Township of Hamburg, 773 F. 3d 769, 772 (6th
Cir. 2014)). Providing false testimony (both written and oral), as alleged herein the
case sub judice, could have/did result in Lask's false arrest for OVI and prosecution
without probable cause. Reading the facts in the light most favorable to Lask, a
reasonable jury could conclude that Officers Rule, Purdin, and Walters deliberately
provided untrue testimony at the preliminary hearing, Police Reports, Affidavit for
Sear

Search Warrant, Email, and Suppression hearing testimony, which resulted in the
court finding probable cause to continue legal proceedings against Lask. See
Coffey v. Carroll, 933 F. 3d 577, 591 (6th Cir. 2019). Federal malicious pro-
secution "claims are in effect false arrest claims, arising out of the Fourth
Amendment's prohibition on unreasonable seizures." Price v. Montgomery Cnty.,
72 F. 4th 711, 719 (6th Cir. 2023)(citing Sykes v. Anderson, 625 F. 3d 294, 308-
10 (6th Cir. 2010)). See also Thompson v. Clark, 596 U.S. 36, 142 S. Ct. 1332,
1337, 212 L. Ed. 2d 382 (2022)(recognizing a Fourth Amendment malicious prosec-
ution claim may be brought for "unreasonable seizure pursuant to legal process").
These latter claims are in effect false arrest claims, arising out of the Fourth
Amendment's prohibition on unreasonable seizures. Sykes, 625 F. 3d at 308-10. And
for determining survival of §1983 claims, we do not break them out individually.
Jackson v. City of Cleveland, 925 F. 3d 793, 811 (6th Cir. 2019).

141.        To successfully bring a §1983 malicious prosecution claim under the
Fourth Amendment, a plaintiff must plausibly allege four elements: "(1) the de-
fendant made, influence, or participated in the decision to prosecute the plaint-
iff; (2) there was no probable cause for the prosecution; (3) as a consequence of
the legal proceedings, the plaintiff suffered a deprivation of liberty apart from
the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's
favor." Thompson v. Clark, supra. Specifically, the Supreme Court recently held -
"that a Fourth Amendment claim under §1983 for malicious prosecution does not re-
quire the plaintiff to show that the criminal prosecution ended with some affirma-
tive indication of innocence." "A plaintiff need only show that the criminal pro-
secution ended without a conviction. Id. Because Mr. Lask's false arrest for OVI
was never charged or warrant issued in lieu of his arrest, Lask's criminal false
arrest and prosecution is considered ended without a conviction, so he has plausibly
alleged that "the criminal proceeding was resolved in [his] favor." And Plaintiff
alleges that all of "[t]he named Defendants herein operated at all times complained
of herein unde color of state and federal law as they conducted unreasonable searches
and seizures."

The Plaintiff asserts that the initiation of the criminal action or the contin-
uation thereof-does not fail on the second element because the grand jury's in-
vestigation was tainted with false and fabricated information which resulted in
the indictment subject to Franks v. Delaware resolutions where probable cause
was lacking in the indictment. The Plaintiff alleges that the indictment in this
case was falsely obtained because the grand jury "was not presented truthful in-
formation by and/or was blocked by Defendant's Rule, Purdin, and Walters from knowing
all of the true material facts weighing heavily in Plaintiff's favor involving
the allegations and fabricated evidence presented against Plaintiff."

142.      These material facts, as the Plaintiff alleges, are the False infor-
mation Rule presented and provided in his "email" from his Kansas traffic stop
found "unconstitutional" and the information presented and provided for use in
the "Affidavit for Search Warrant" and "testimony before the grand jury" either
by Det. Sam Pudin and/or Deputy Walters in the State's case-in-chief; as well as
false "police reports and affidavit" inclusion of false statements, omissions,
and fabricated information of evidence unsupported by the record by Purdin and
Walters, material facts falsely supporting the warrant affidavit and grand-jury
testimony, as well as the general baseless nature of the allegations and evid-
enced discrepencies alleged against the Plaintiff in violation of Franks v. Del-
aware. "As an grand-jury indictment creates a presumption of probable cause in
malicious prosecution cases." A plaintif can rebut this conclusive grand-jury-
probable-cause presumption only by showing that the Defendants knowingly or reck-
lessly presented false testimony (written or **oral**) to the grand jury. Plaintiff
alleges he has satisfied this requirement in detail herein up above. "As with
Ohio law, an exception to this rule exists "when  the Defendants knowingly pre-
sent false testimony to the grand jury" to obtain an indictment, Martin v. Maurer,
581 F. App'x 509, 511 (6th Cir. 2014), or when they "testify with reckless disre-
gard for the truth," Robertson v. Lucas, 753 F. 3d 606, 616 (6th Cir. 2014). The

**Plaintiff** alleges that "to the extent that 'all' the Defendants Rule, Purdin, and Walters unlawful conduct and actions or inactions caused the Plaintiff's (unreasonable) unlawful seizure and false arrest, and deprivation of Plaintiff's liberty beyond Plaintiff's initial false arrest resulted in his imprisonment on charges of "possession of marijuana" derived from the alleged legal arrest for an OVI violation the underlying offense that allegedly formed the unlawful basis of the addition of the second charge derived from the invalid charge of OVI no body wants to talk about or address on its face demonstrating prima facie evidence of the gravaman.

143.     Plaintiff alleges that the named Defendant Chandler Rule herein did "influence" and "participated" in the decision of the State of Ohio, to maliciously prosecute the Plaintiff in his "false arrest" and "unlawful seizure"  by Defendants Detective Sam Purdin and Deputy Randy Walters of the Adams County Sheriff's Office, when Trooper Rule took issue with the Plaintiff during a traffic stop in Kansas ("Later ruled unconstitutional by an Ohio Appellate Court"),  after the Plaintiff had refused consent to search his vehicle by Trooper Rule.  Subsequently, Tpr. Rule "Conspired" to and decided to author an "email" to incite further law enforcement action against the Plaintiff for some unknown bias reason, "stated the Plaintiff was 'undoubtedly' involved in drug trafficking"" without any reasonable suspicion or proabale cause to legally justify his unfounded allegations and mischarachierizations.  Plaintiff was falsely arrested for (OVI) operating a vehicle under the influence of drugs and/or alcohol, but, was never charged, nor was a  warrant issued in lieu of Plaintiff's arrest for this invalid charge prompted by Tpr. Rule's "email", as the "email" was the only  reason Ohio law enforcement took action against the Plaintiff.  Trooper Rule knowingly, deliberately, intentionally, or with reckless disregard for the truth, conspired to include "false information" in his 'email' to Ohio police to strengthen the influence his email would have on Ohio law enforecment.  As the email in fact was used to initiate an investigation by Det. Purdin, who also used said email his "police (narrative) investigative re-

144.

port" and "affidavit for search warrant" and "testimony before the grand-jury to indict the Plaintiff.See Pl. Ex."H" email by Rule; Pl.Ex."I" Purdin's police report; Pl.Ex."K" Affidavit For Search Warrant. Moreover, the Plaintiff alleges Trooper since became a defendant in a separate Civil suit, where Policies and Procedures were implicated for the same misconduct alleged herein by Trooper Rule in that Injunctive Relief was granted. See Pl. Ex. "O" Kansas Highway Patrol Vehicle Detention Report Policy Number FOR-44/Effective Date 03/23/23 pages 1-7. The Plaintiff further alleges (2) there was no probable cause for the Kansas traffic stop and/or "email with the inclusion of false information" by Trooper Rule, nor was their "probable cause" by Det. Purdin and Deputy Walters where false-arrest and unlawful seizure for OVI charges and warrant in lieu of arrest were all abandoned with charges being filed as Plaintiff languished in the Adams County Jail from 10/16/17 through 10/27/17 without a preliminary hearing on the OVI arrest and no Bail hearing in the same. And (3) as a consequence of the Abuse of process in the legal proceedings, the Plaintiff suffered a deprivation of his liberty apart from the initial arrest, resulted in imprisonment for Possession of Marijuana off of the same baseless "false information" by all named Defendants herein attempting to subvert there false arrest by Judicial Probable Cause created by the independent intermediary doctrine, to break the chain of causation; and (4) the criminal proceeding was resolved in the Plaintiff's favor where the invalid charge for OVI ended without a conviction and rationale submitted in the United States Supreme Court recent decision in Chiaverini v. City of Napoleon, 219 L.Ed. 2d 262, 2024 U.S. LEXIS 2710, 144 S. Ct. 1745, 2024 WL 3056034. Holding: When a government official brought multiple charges, only one of which lacked probable cause, the valid charges did not insulate the official from a Fourth Amendment malicious-prosecution claim per 42 U.S.C.S.§1983 relating to the invalid charge. The valid charges did not create a categorical bar. Id. Trooper Rule acted outside the scope of his employment/authority in his individual and official capacities under the color of state law. Trooper Rule should be denied "qualified immunity" for violating Plaintiff's Fourth Amendment rights, and his clearly established right to be free from unreasonable seizures.

145.         (VI) **Violation of** 42 U.S.C.§ 1983 (Fourth Amendment - Malicious Prosecution and Knowingly Using Sham Legal Process in violation of O.R.C.§2921. 52 (B)(2)(D) and (E) in the OVI (operating vehicle under the influence of drugs and/or alcohol) Unlawful Seizure/False Arrest, False Imprisonment, and Continued Unlawful Detention for Uncharged alleged Traffic Violations of Running a Stop Sign, Driving -left-to-center, and OVI arrest without Probable Cause or Reasonable Suspicion), against Defendant Sam Purdin who Knowingly used Sham legal process to unlawfully detain, seize, arrest, and search Plaintiff's vehicle based upon "false information" of Defendant Chandler Rule's "email", and Knowingly and Intentionally, or with Reckless disregard for truth, Conspired on his own along with other co-conspirator's Rule, Walters, Kelley, and Spencer provided "false-fabricated material evidence information" and material "Omissions" in his "Investigative Police Report" and "Affidavit for Search Warrant" in the malicious prosecution against Plaintiff in an attempt to conceal his and fellow Officer Walters misconduct of facilitating and fabricating uncorroborated alleged observed Traffic-Violations of running a stop sign, driving left-to-center, and OVI infraction all invalid uncharged alleged offenses as a direct result of Rule's email that contained false information led Purdin to act outside the scope of his employment/authority in his individual and official capacites under the color of state law without a warrant or probable cause or any other legal justification.

146.         O.R.C.§2921.52, which provides in relevant part as follows:

    (A) As used in this section:
    ***
    (4) "Sham legal process" means an instrument that meets all of the following conditions:
        (a) It is not lawfully issued.
        (b) It purports to do any of the followinf:
        (iii) To require or authorize the search, seizure, indictment, arrest, trial, or sentencing of any person or property.
        (c) It is designed to make another person believe that it is lawfully issued.

(B) No person shall, knowing the sham legal process to be
sham legal process, do any of the following:
(2) Knowingly use sham legal process to arrest, detain,
search, or seize any person or the property of another
person;
(D) Whoever vilates this section is guilty of using sham
legal process. A violation of division (B)(2) or (3) of this
section is a misdemeanor of the first degree, except that,
if the purpose of a violation of division (B)(3) of this
section is to commit or facilitate the commission of a
felony, a violation of division (B)(3) of this section is a
felony of the fourth degree.
(E) A person who violates this section is liable in a civil
action to any person harmed by the violation for injury,
death, or loss to person or property incurred as a result
of the commission of the offense and for reasonable attorney
's fees, court costs, and other expenses incurred as a re-
sult of prosecuting the civil action commenced under this
division.

147.     The Plaintiff alleges that Defendant Sam Purdin "influenced and or
participated in the decision to prosecute Mr. Lask" when he "deliberately or with
reckless disregard" filed "false material statements" and material "omissions" in
his Investigative Police Report and Affidavit for Search Warrant, and deliberately
provided "false (written or oral) testimony to the grand-jury to be considered in
the determination to indict Mr. Lask without probable cause in the malicious pro-
secution of violating Mr. Lask's Fourth Amendment right to be free from unreasonable
searches and seizures without a warrant or probable cause, as Purdin acted outside
the scope of his employment/authority in his individual and official capacites un-
der the color of state law, and Purdin should be denied a claim of "qualified im-
munity" for deliberately violating Plaintiff's rights under the Fourth Amendment, (2)
the violation involved a clearly established right to be free from unreasonable seiz-
ures without a warrant or probable cause, the right of which a reasonable person
would have known;

(2) there was no probable cause for the malicious prosecution as the charges for OVI, Running a Stop Sign, and Driving left-to-center were invalid alleged uncorroborated uncharged offenses unjustifiably abandoned by Purdin and the prosecution; (3) as a consequence of the Abuse of process in the "Sham" legal proceedings, the Plaintiff suffered a deprivation of his liberty apart from the initial false-arrest, resulting in Imprisonment for Possession of Marijuana derived from the same "false material information carry over before the review of the grand-jury; and (4) the criminal proceeding was resolved in Plaintiff's favor where the invalid alleged charges for Running a Stop Sign, Driving left-to-center, and OVI arrest all ended without a conviction.

148.    (VII) Violation of 42 U.S.C.§ 1983 (Fourth Amendment - Malicious Prosecution and Knowingly Using Sham Legal Process in violation of O.R.C.§2921.52 (A)(4)(a)(b)(iii)(c)(B)(2)(D) and (E) in the OVI (operating vehicle under the influence of drugs and/or alcohol) Unlawful Seizure/False Arrest, False Imprisonment, and Continued Unlawful Detention for Uncharged alleged OVI arrest, and continued unlawful seizure from 10/16/17 through 10/27/17 in the Adams County Jail without a Preliminary hearing or Bail hearing for OVI arrest without probable cause), against Defendant Randy Walters who Knowingly, Deliberately, Intentionally, or with Reckless disregard for the truth, Conspired to facilitate, fabricate and provide "false material statements", "false-fabricated information", and "Omitted" material facts in his "Investigative Police Report" and supplied and provided "false material statements" and "omitted" material facts offered to Det. Purdin for use in his "Affidavit for Search Warrant" and sought to conceal his misconduct of falsely -- arresting Mr. Lask for OVI knowingly using sham legal process to make Mr. Lask believe the arrest was lawful from the outset when in fact it was not where no charges were ever filed and no warrant issued in lieu Mr. Lask's arrest for OVI violating Fourth Amendment. In Ohio, there are no common-law crimes. R.C.§2901.03(A) State v. Gardner, 118 Ohio St. 3d 420, 2008-Ohio-2787, 889 N.E. 2d 995, 2008 Ohio LEXIS 1619,

[**P31](HN1); Arkron v. Rowland (1993), 67 Ohio St. 3d 374, 383, 1993 Ohio 222, 618 N.E. 2d 138, fn.4; State v. Cimpritz (1953), 158 Ohio St. 490, 49 Ohio Op. 418, 110 N.E. 2d416, paragraph two of the syllabus ("The elements necessary to constitute a crime must be gathered wholly from the statute"). The Ohio Constitution guarantees that every defendant has the right to know "the nature and the cause of his/her physical arrest and accusation against him." Section 10, Article I of the Ohio Constitution. Ohio courts have consistently held that the complaint must state all of the essential elements of the offense or it is invalid. State v. Cimpritz, supra.

149.        Based on Traf.R. 3 and Traf.R. 11(B)(1)(b), Due process requires that the State of Ohio establish beyond a reasonable doubt every fact necessary to constitute the crime charged and arrested upon. In re Winship (1970), 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368. Under R.C.§4511.19(A) the OVI statute, the State had to prove that (1) the Plaintiff operated a vehicle (2) within the state (3) while under the influence of a drug of abuse or alcohol. Ohio Revised Code §45 11.19(A)(1). Mr. Lask asserts demonstratively it is literally impossible since he was "Never Charged with an Offense" of OVI or any other crime wharsoever! According to R.C.§2935.03(A)(1). The law permits an officer to arrest and detain an individual "until a warrant can be obtained." State v. Brown, 115 Ohio St. 3d 55, 2007-Ohio-4837, ¶66, 873 N.E. 2d 858. Following the arrest, the officer:

> must take the individual before a court or magistrate having jurisdiction of the offense and file or cause to be filed an affidavit describing the offense for which the individual was arrested. R.C.§2935.05; [Crim.R.]4(E)(2). Upon the filing of the affidavit, a judge, clerk, or magistrate issues a warrant. R.C.§2935.10; see [Crim.R.] 4(A). "All further detention and further proceedings shall be pursuant to such affidavit * * * and warrant." R.C.§2935.08.

1993 Ohio Atty. Gen. Ops. No. 93-003, 1993 WL349780, *1. "The plain language of R.C.§2935.08 and [CrimR.]4 discloses that the General Assembly and the Ohio Supreme Court intended that individuala arrested without a warrant receive a post-arrest determination to ascertain whether the arresting officer had probable cause to make

the arrest." 1991 Ohio Atty. Gen. Ops. No. 91-047, 1991 WL576728, *3. Thus, a warrantless arrest based upon probable cause is a temporary measure, not an exception that abdicates the warrant requirement. See Brown at¶66. The common conception of an arrest, like the technical definition, comprehends the formal     - charging with a crime. United States v. Bonanno, 180 F. Supp. 71 (HN3). As the Plaintiff further alleges that Walters "Omitted" the material fact in his investigative police report falsely arresting the Plaintiff, and went even further by "falsely stating during an inventory search of the Plaintiff's vehicle "he" was the "one" who found the two pounds of Marijuana in Plaintiff's vehicle, but, on direct examination during suppression hearing Walters testified it was actually Det. Purdin who located the contrband of Marijuana before either Walters performed an inventory search. This was part of the "knowingly using sham legal process" in an attempt to hid and conceal his misconduct by inadvertently discovering evidence of the marijuana, but, him and Purdin got thier stories mixed-up as they both conspired to deliberately violate Mr. Lask's rights under the Fourth Amendment on a "hunch" derived from the Kansas email thereby continuing to "maliciously seek to prosecute Plaintiff without probable cause, as well as providing and presenting the same false material (written or oral) statements to the grand jury and suppression hearing. Plaintiff alleges that the indictment was falsely obtained because the "grand-jury" was not presented truhful information of the material fgcts by and/or blocked by Walters deliberately or with reckless disregard mislead Judicial Officers and the grand jury to falsely obtain an indictment where probable cause was lacking.

151.        Plaintiff alleges Defendant Walters violated his Fourth Amendment right no to be maliciously prosecuted, and the violation involved a clearly established constitutional right that Plaintiff has the right to be free from unreasonable seizures without a warrant or probable cause, the right of which a reasonable person - would have known, as Walters acted outside the scope of his employment/authority

in his individual and official capacities under color of state law, and Walters should be denied a claim of "qualified immunity" for deliberately violating the Constitution as well as offering misleading false statements material to deciding probable cause, and omitting material facts weighing heavily in Plaintiff's favor to rebut probable cause findings. Plaintiff alleges that Walters "influenced and/or participated" in the decision to maliciously prosecute Mr. Lask when he deliberately tried to hid and conceal falsely arresting the Plaintiff, and fabricating false material statements to milead and alter the outcome with reckless disregard for ae truth where the false material statements were relied upon provided for use in drafting of an Affidavit for Warrant, use for the prosecutors case-in-chief, and grand-jury testimony to falsely indict Mr. Lask without probable cause, as well as suppression hearing (written or oral); (2) there was no probable cause for the prosecution as the charge for OVI was invalid and void ab initio uncharged offense abandoned by Defendant Walters and the prosecution; (3) as a consequence an Abuse of process in the "sham" legal proceedings, the Plaintiff suffered a deprivation of his liberty apart from the initial false arrest, resulting in Imprisonment for Possession of Marijuana derived from the same "false material information"; and (4) the criminal proceeding was resolved in Mr. Lask's favor where the invalid charge for OVI he was falsely arrested on ended without conviction.

152.        (VIII) Violation of 42 U.S.C.§ 1983 (Fourth Amendment - Malicious Prosecution in the invalid OVI (operating vehicle under the influence of drugs and/or alcohol) Unlawful Seizure/False Arrest, False Imprisonment from 10/16/17 thru. 10/27/17 and Continued Unlawful Detention where the Plaintiff was held in the Adams County Jail without a Preliminary hearing or Bail hearing for the OVI arrest, and Continued Unlawful Detention herein without Probable Cause or Warrant and without "all jurisdiction of subject matter"), against Defendant David Kelley (prosecuting attorney) who knowingly, deliberately, and intentionally, or with reckless disregard

for the truth, Conspired to administratively to institute, influenced, and part-
icipated in the decision to maliciously prosecute Mr. Lask, when he "deliberately
or with reckless disregard" discovered in his administrative capacity that the OVI
charge alleged against the Plaintiff was patently "false" where "no complaint" or
"warrant was issued in lieu of arrest" was filed to invoke subject matter juris-
diction to legally prosecute Mr. Lask where no crime was committed by the statut-
ory law and Ohio Constitution, notwithstanding , Fourth Amendment violation where
Mr. Lask has the right to be free from unreasonable seizures without a warrant or
probable cause. Plaintiff asserts that the "false arrest was followed by the ex-
ploitation of an unlawful search and seizure" and relied upon fruits of the poison-
ous tree in an alleged automobile exception search, also disguised behind false,
material statements presented before the grand-jury to subvert the procured false
finding of probable cause known as the independent intermediary doctrine, breaking
the chain of causation so the party can rely on concealing the false-arrest based
on Judicial probable cause by indictment.

153.      The Plaintiff alleges that the grand jury's deliberations were "tianted"
by the use of wholly inaccurate, false, material statements, and woefully incomplete
information, but, Kelley deliberately or recklessly disregarded the "obvious" which
is frowned upon by the Court in Berger v. United States where the Court stated:

> "The United States Attorney is the representative not of an ordinary
> party to a controversy, but of a sovereignty whose obligation to -
> govern impartially is as compelling as its obligation to govern at
> all;  and whose interest, therefore, in a criminal prosecution is not
> that it shall win a case, but that justice shall be done. As such,he
> is in a peculiar and very definite sense the servant of the law, the
> twofold aim of which is that guilt shall not escape or innocence suf-
> fer.  He may prosecute with earnestness and vigor-indeed, he should
> do so.  But, while he may strike hard blows, he is not at liberty to
> strike foul ones.  It is as much his duty to refrain from improper
> methods calculated to produce a wrongful conviction as it is to use
> every legitimate means to bring about a just one. Berger, 295 U.S. at
> 88.

Defendant Kelley sought to deliberately ignore the gravaman facts surrounding the
totality of circumstances in this particular case, and chose to instead conspire

to maliciously prosecute Mr. Lask with probable cause and "without all subject matter jurisdiction" or any other original jurisdiction where the court nor the prosecution could claim jurisdiction was properly invoked. And all the evidence and information relied upon this case resulted from fruits of the poisonous tree thereby violating Mr. Lask's Fourth Amendment right to be free from "unreasonable seizures."

154.      Plaintiff alleges that Kelley instituted, influenced, and willfully participated in the decision to maliciously prosecute Mr. Lask when he deliberately presented, argued, continued prosecuting Plaintiff after discovering the charged allegations were false acting outside the scope of his employment/authority and without all jurisdiction to continue-on in his individual and official capacities under the color of state law; (2) there was no probable cause for the prosecution as the charges for OVI were invalid and void ab initio uncharged in the law and offense abandoned by the arresting officer Walters and prosecuting attorney Kelley herein; (3) as a consequence in the illegal malicious prosecution the Plaintiff suffered a deprivation of his liberty apart from the initial false arrest, resulting in the "Imprisonment for Possession of Marijuana" that was derived from the same "false material information used in the Affidavit, Preliminary hearing, grand-jury testimony to indict, and all other criminal proceedings had herein used to wrongfully prosecute, convict, and sentence Mr. Lask; and (4) the criminal proceeding for the OVI false-arrest was resolved in the Plaintiff's favor where the invalid charge relied upon throughout the entire proceedings of this malicious prosecution ended without a conviction. The Plaintiff asserts that Defendant Kelley should be denied a claim of "qualified immunity" for deliberately violating the Constitution and Mr. Lask's Fourth Amendment right to be free from unreasonable seizures as well as offering misleading false material statements and information material to the finding of probable cause to the grand-jury in bad faith and omitting material facts weighing heavily in Plaintiff's favor to rebut probable cause.

155.        (IX) Violation of 42 U.S.C.§ 1983 (Fourth Amendment - Malicious

Prosecution in the invalid OVI (operating vehicle under the influence of drugs

and/or alocohol) Unlawful Seizure/False Arrest, False Imprionment from 10/16/17

through 10/27/17 and Continued Unlawful Detention where the Plaintiff was held

in the Adams County Jail without a Preliminary hearing or Bail hearing for the

OVI arrest had on 10/16/17, and Continued Unlawful Detention herein with probable

cause or warrant and "without all subject matter jurisdiction" or "any other al-

leged original jurisdiction"), against Defendant Brett M. Spencer (Judge) of the

Common Pleas Court who knowingly, deliberately, and intentionally or with reck-

less disregard for the truth, Conspired to influence and participated in the de-

cision to continue to maliciously prosecute Mr. Lask, when he "deliberately and/or

with reckless disregard" learned of Plaintiff's "false arrest" and "unlawful search

and seizure exploited by the Plaintiff's wrongful arrest" when Spencer blurted-out

on the record during suppression hearing after learning Mr. Lask had not been in

fact charged with the alleged OVI arrest the underlying offense for the Ohio Traf-

fic Stop, that gave cause to the second charge of Possession of Marijuana conviction

herein "blurtedout-inadvertently" COURT: Counselor um, I know one of the arguments

is they didn't charge him with DUI. Uh, therefore that was unlawful search. (Pl.Ex.

"M1"Sup.H.Tr.150), and Defendant Spencer further prevented (Defense) from being able

to cross-examine on said "false-arrest" in violation of Mr. Lask's right to face his

accusers pursuant to the Sixth and Fourteenth Amendments to the United States Con-

stitution.  In the wake of personally acknowledging there were no charges officially

filed against Mr. Lask for OVI arrest should have automatically called into question

judge Spencer's sua sponte own question of him acquiring "any" jurisdiction as well

asthe illegality of the second charged offense of possession before him and the in-

dictment procurred as a result?

156.        The Plaintiff asserts that the prima facie evidence presented herein,

demonstrates Spencer was "without all jurisdiction" over the case and Mr. Lask for

that matter to legally preside over a matter that never invoked the courts juris-
diction. Defendant indeed "influenced and willfully participated" in the decision
to maliciously continue to prosecute Mr. Lask without probable cause or any other
legal justification, and judge Spencer acted without all jurisdiction and acted
outside the scope of his employment/authority in his individual and official capa-
cities under the color of state law, and Spencer should be denied absolute as well
as qualified immunity for deliberately or with reckless disregard maliciously pro-
secuting Mr. Lask in violation of Mr. Lask's Fourth Amendment right to be free
from unreasonable seizures as well as violating Mr. Lask's right to face his accusers
in violation the Sixth and Fourteenth Amendments to the United States Constitution
where it was obvious probable cause was lacking as well as all jurisdiction; (2)
there was no probable cause for the prosecution as the charges for OVI were invalid
and void ab initio uncharged offense abandoned by the arresting officer Walters and
prosecuting attorney Kelley herein, and the same "false information" was used to
illegally procure tainted indictment against Mr. Lask which lacked probable cause
considering all of the true material facts had not been considered; (3) as a consequ-
uence of the malicious prosecution, the Plaintiff suffered a deprivation of his lib
erty apart from the initial false arrest, resulting in "Imprisonment for Possession
of Marijuana" derived from the same "false material information" directly resulting
from Plaintiff's unlawful seizure and false arrest; and (4) the criminal proceeding
was resolved in Plaintiff's favor where the invalid charge for OVI he was falsely
arrest on ended without a conviction.

157.      The Plaintiff asserts that Spencer acted outside the scope of his
employment/authority in his individual and official capacities under color of state
law. Plaintiff also asserts that Spencer should be denied "absolute or qualified
immunity" as presented up above.

158.		(X) Violation of 42 U.S.C.§ 1983 (Fourth Amendment - Monell,
Failure to Train and Supervise: Plaintiff reiterates Causes of Action (I), (II),
(III), (IV), (VI) and (VII) against Defendants Deputy Randy Walters and Detective
Sam Purdin of the Adams County Sheriff's Office incorporated herein as if fully
rewritten in the same alleges that the Defendant Adams County displayed reckless
and deliberate indifference in the failure to to train, supervise, and discipline
Deputies, violating his Fourth Amendment rights under Monell. Adams County "toler-
ated, ratified, and were deliberately indifferent to" the alleged failure to train,
supervise, or intervene, were on notice of a "clear need for more and/or different
training, supervision, investigation and/or discipline," and that this caused the
Plaintiff's injuries ), against Adams County Municipal Board of Commissioners who
had supervisory or policymaking control over the Adams County Sheriffs Office and
its deputy sheriffs over its training customs and policies.

159.		Plaintiff alleges that the Adams County maintains a custom or policy
of inadequately training and supervising its deputies on determining probable cause
for prolonged seizures, and searches and arrest without a warrant or probable cause.
The following are excerpts from the Suppression Hearing Held on March 7, 2018 that
reflect failure to trian: PROSECUTING ATTORNEY KELLEY: Q. Did, did you eventually
charge him with any traffic offenses? DEPUTY WALTERS: A. No, I did not. Q. Okay.
And uh, you'd been the citing officer? A. Uh, yes. Q. Okay. And why did you not -
charge him? A. Um, because the felony charge. Q. Okay. Because the felony charge,
when you say because the felony charge, you don't normally charge the misdemeanor?
A. Uh, there's been times when "we" have. I, in this circumstance I don't believe
"we" proceeded with the misdemeanor due to the felony. Q. Okay. And the events we
watched on the body cam, that ...occurred in Adams County, the State of Ohio? A.
yes sir. Q. Okay. (Pl.Ex. "M1" Sup.H.Tr. 195-196). WALTERS: Q. Okay. Oh, I see it.
are you trained in this inventory policy or you just read it ? A. There's no specif-
fic training, its just reading and so forth. CROSS: (Pl. Ex. "M1" Sup.H.Tr.219, Ln.
9-13).

160.          SAM PURDIN: Q. Okay. Does Adams County, sheriff's department,
Sheriff's Department excuse me, have any policy on how to conduct inventory
searches ? A. I believe so yes. Q. Have you been trained on this policy ? A.
Yes. Q. Is it written ? A. Yes sir. Q. And what does that policy say to the
best of your knowledge ? A. I can't quote it. Other than probable cause to    -
search the vehicle, um, I know it mentions about doing a uh, inventory of the
vehicle prior to towing the vehicle. I couldn't go into detail on what it states.
Q. Okay. Do you know if this is separate from the Ohio State Highway Patrol Pol-
icy, Adams Counties Policy ? A. I have no idea. (Pl. Ex. "M1" Sup.H.Tr. 133, Ln.
3-21); Q. Other than the uh, inventory policy have you been trained on inventory
searches, in anyway, any extra training ? (Pl. Ex. "M1" Sup.H.Tr.134, Ln.20-22);
A. I have been "lectured a lot from the prosecutor's office on searches and so
forth." "I consider it training." (Pl. Ex. "M1" Sup.H.Tr. 135, Ln. 1-3).

161.          Plaintiff asserts that the Adams County Sheriff's Office Law Enforce-
ment Polies and Procedures - Subject: Motor Vehicle Stops/Searches, Policy Number:
4.06 Definitions: B. Probable Cause: (search): Facts and circumstances based upon
observations or information that would lead a reasonable law enforcement officer
to believe that evidence of crime exists and that the evidence exists at the place
to be searched. C. Probable Cause: (arrest): Facts and circumstances based upon
observations or information that would lead a reasonable law enforcement officer
to believe that a crime has been or is being committed and the person to be arrested
is the one who is or has committed the crime. PROCEDURES: (A)(b) Probable Cause
based Stopped-Traffic Violation-where a deputy has probable cause to believe that
a violation of the motor vehicle code has occurred may stop the vehicle and detain
the vehicle for a reasonable amount of time while the citation is completed; (D)(a),
(b), and (c): D. Search Incident to Arrest (Vehicle): Following the lawful arrest
of a subject from a vehicle or who had exited the vehicle just prior to arrest, de-
puties may search the vehicle incident to arrest subject to the following limitations:

(a) The arrest must be lawful and must be a full-custodial arrest; (b) The search must take place at the time of the arrest; (c) A search incident to arrest may not take place once the arrestee is secured in handcuffs and secured in a law enforcement vehicle unless the deputy has reasonable grounds to believe that the vehicle contains evidence of the particular crime for which the subject was arrested; and, (H.) Inventory Searches: An inventory search is not a search for evidence or contraband and is not a search with an investigative purpose. The primary objective of these searches is to protect the property of persons whose vehicles are towed at the direction of law enforcement. These searches also have the objective of - protecting law enforcement from false claims with respect to vehicles that are towed at the direction of law enforcement. See (Pl. Ex. "J" Adams County Sheriff's Office Law Enforcement Policies and Procedures).

162.        Plaintiff alleges that neither the Kansas email filled with false information based on an unconstitutional traffic-stop in Kansas used against Lask in the Ohio Traffic Stop, or, the contraband of two pounds of marijuana discovered in Plaintiff's truck after an unlawful search and seizure by Purdin in both Walters and Purdin's false arrest of Mr. Lask could establish probable cause because they came from an unlawful search. Wong Sun v. United States, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)("[W]e have consistently rejected [] that a search unlawful at its inception may not be validated by what it turns up."(citations omitted)); accord United States v. Jenkins, 396 F. 3d 751, 758 (6th Cir. 2005)(collecting cases); see also People v. Hammerlund, 337 Mich. App. 598, 977 N.W. 2d 148,157 (Mich.Ct.App.2021)("[F]ruits of an illegal search or arrest should be suppressed [if] they bear a sufficiently close relationship to the underlying illegality." (quoting New York v. Harris, 495 U.S. 14, 19, 110 S. Ct. 1640, 109 L. Ed. 2d 13(1990))). "So, a warrantless arrest is constitutionally unreasonable if the choice and/or absences of mistake of fact relied on to justify the arrest was unreasonable." "The granting of (Writ of Habeas Corpus) in Plaintiff's other matter pending before the

federal Court for resolution should be resolved on a nolle prosequi dismissal with prejudice is required in the in the interests of justice, because a [p]roper charging instrument of Plaintiff allegedly committing "any crime" cannot be produced.

163.     Plaintiff alleges that Defendants Walters and Purdin Adams County Sheriffs deputies receive no training on existing or new (Arizona v. Gant) law-enforcement policies and procedures, "[B]asically those policies get issued. You read them off and you have to sign off that you read them. That's as far as their policies go," which includes probable cause for arrests made after the officer chose not to obtain a warrant, testifying during Plaintiff's suppression hearing that neither of those Deputies Walters or Purdin had any training on probable - cause.  Simply put, the Sheriff's Office and Adams County Municipality does not provide any training to its deputy sheriffs for searching and arresting people without violating the "very core" of the Fourth Amendment. The Plaintiff alleges that the Adams County Sheriffs deputies learn to determine probable cause "on-the-job"; Florida v. Jardines, 569 U.S. 1, 1, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013) ("At the Fourth Amendment's "very core" stands "the right of a man to retreat into his own home and there be free from (unreasonable seizures) unreasonable governmental intrusions,"(quoting Silverman v. United States, 365 U.S. 505, 511, 81 S. Ct. 679, 5 L. Ed. 2d 734 (1961))). And, as explained above, there is no question that the cause of Plaintiff's injury was Adams County failure to train Defendants Walters and Purdin on how to determine probable cause, to establish an exception to the - warrant requirement, or to effectuate the Policy properly.

164.     The County of Adams was deliberately indifferent to its failure, when it failed to train its deputies when the need for training "[was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the County can reasonably be said to have been deliberately indifferent to the need," (quoting City of Canton v. Harris, 489 U.S. 378, 390, 109

S. Ct. 1197, 103 L. ed. 2d 412 (1989)). This sort of liability is often referred to as "single-incident liability" because it does not require a pattern of violations. Id. Here, Plaintiff alleges the County of Adams was clearly on notice of its need to train deputies on probable cause. For one thing, Adams County's failure to train its deputies on probable cause demonstrates deliberate indifference because the need for such training is obvious "[g]iven the frequency with which deputies must evaluate probable cause (yet cannot recall it during testimony, so how much more during a need too) in the guise of a minor traffic-stop." Ouza, 969 F. 3d at 289 ("The failure to provide any training on probable cause determinations . . . . is constitutionally inadequate"). The Defendant Adams County Municipality "tolerated, ratified, and were deliberately indifferent to" the alleged failure to train on probable cause, were on notice of a "clear need for more and/or different training, supervision, investigation and/or discipline," and that this caused Plaintiff's injuries) Ellis ex rel. Pendegrass v. Cleveland Mun. Sch. Dist., 455 F. 3d 690, 700 (6th Cir. 2006)(noting a municipality is liable under Monell for §1983 violations when Plaintiff proves "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely (the moving force) related to or actually caused the injury") and Victor v. Reynolds, 582 F. Supp. 3d 516, 522 (E.D. Mich.2022)(noting deliberate indifference may be satisfied when the Plaintiff shows that the municipality was on notice of a need for better training).

165.     Plaintiff argues that it was inherently foreseeable that Walters and Purdin inadequate training would cause and continue to cause repeated complaints of constitutional violations for failure to train deputies adequately on probable cause in light of foreseeable consequences that could result from the lack of in-instruction in merely having them read, sign, and claim they know how to adequately evaluate probable cause and remain constant in the "new laws like Arizona v. Gant. "[D]ecisions with respect to law enforcement pratices, over which the Sheriff is the

official policymaker, would give rise to municipal liability." Pembaur v. City
of Cincinnati, 475 U.S. 469, 484 n. 12, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).
For such decisions represent municipal policy. The Plaintiff has established a
connection between Sheriff Rogers's Policy and the Municipality of Adams County.
Plaintiff alleges that the Board of Commissioners of Adams County had supervisory
or policymaking control over the Sheriff's Department and its Deputy Sheriff's
over its training.  In the instant matter, it should be held that Plaintiff pre-
sented adequate evidence upon which a resonable jury could find that the Adams
County Municipality had maintained some policy or custom allowing unlawful seiz-
ures, unlawful prolonged detentions, unlawful arrests, and unlawful searches with-
out a warrant or probable cause during traffic-stops and/or investigations in -
securing lawful arrests and searches, and in this instant case failed to investi-
gatwe and discipline Walters and Purdin for false arrest and unlawful searches.

166.        Finally, the Plaintiff notes that the County of Adams, unlike the in-
dividual Defendants named herein in this case, is not entitled to any level of
immunity; if the Plaintiffs offered evidence that the training was inadequate
within the meaning of City of Canton, then summary judgment or motion to dismiss
would be inappropriately granted. Russo v. City of Cincinnati, 953 F. 2d 1036,1046
(6th Cir. 1992) As the Supreme Court explained in City of Canton, "it may happen
that in light of the duties assigned to specific . . . employees the need for more
or different training is so obvious, and the inadequacy so likely to result in the
violation of constitutional rights, that the policy makers of Adams County Munici-
pality can reasonably be said to have been deliberately indifferent to the need."
489 U.S. at 390. Mr. Lask asserts that the Municipality of Adams County caused his
constitutional injuries through both an unconstitutional policy and a custom of
failing "to adequately train and supervise its deputies." Plaintiff avers that
deliberate indifference is a stringent standard of fault, requiring proof that a
municipal actor disregarded a known or obvious consequence of his action."(quoting

Brown, 520 U.S. at 410). As explained and demonstrated up above, there is no
dispute with respect to whether Defendants Walters and Purdin were deliberately
indifferent to a known risk that they were arresting Plaintiff without probable
or warrant where no charging instrument (made mandatory under Ohio statutory -
law) was never filed and no warrant issued in lieu of Plaintiff's arrest, nor
was an exception to the warrant requirement shown, and only by exploiting said
unlawful arrest by Deputy Randy Walters, did Det. Purdin perform an unlawful -
search and seizure of Mr. Lask's vehicle without a warrant or probable cause,
and only after Mr. Lask was placed in handcuffs and placed in the back of Walters
police cruiser, was the impermissible search effectuated, however , they both
Purdin and Walters deliberately chose not to look at the picture that they poss-
essed that would/should have irrefutably demonstrated a lack of probable cause
to arrest Plaintiff for the alleged crime of OVI,notwithstanding, the second of
the charge of Possession of Marijuana where it resulted from the fruits of the
poisonous tree.

167.     Damages: R.C.§ 2743.48 (E)(2)(b): Statutory Annual Amount.
R.C.§ 2743.48 (E)(2) sets forth the types of evidence that the court may consider
when granting an award for wrongful imprisonment. Pursuant to R.C.§ 2743.48 (E)
(2)(b), the adjusted annual statutory amount of damages for wrongful imprison-
ment determined by the auditor of state in effect in 2015 is $ 51,901.58. Moreover,
pursuant to R.C.§ 2743.48 (E)(2)(c) Lost Wages: The Plaintiff has included his own
varification to show that he was employed by Columbus Industries from August 9,
2019 through June 13, 2021 and his rate of pay was $ 11.25/Hour. The Plaintiff al-
so asserts that he was a full-time employee, and that he worked 40 hours per week.
Pursuant to Swalley v. State, 2015 Ohio Misc. Lexis 69, pursuant to R.C.§ 2743.48
(E)(2)(b) calculating an award by using the adjusted annual amount determined by
the auditor of state pursuant to R.C.§ 2743.49 in effect for 2014, inasmuch as the

rate in effect for 2015 had not been published. The adjusted annual amount in effect for 2015 is $51,901.58. Accordingly, the award shall be calculated by using the 2015 rate for the number of wrongful imprisonment; see also Ortiz v. Bright, 2006 U.S. Dist. Lexis 23457; Ohio Rev. Code Ann.§ 1343.03(c) governed the award of prejudgment interest. Pursuant to R.C.§ 2743.48 (E)(2), the Court should find that Plaintiff has proven, by a preponderance of the evidence, that he is entitled to receive a sum of money that equals the total of each of the following amounts:

**168.** $ 181, 654.00, which represents three years and six months pro-rated from Plaintiff's maximum release date of April 6, 2026, of imprisonment at $51,901.58 per year;

**169.** $ 66, 150.00, which represents three years and six months pro-rated in Lost Wages at 11.25/Hour at 40 per week (See Pl.Ex."6" Sharon Davis HR Genera-list of Columbus Industries, Inc.);

**170.** $42,225.00 which represents "Retained Counsel Fees/Costs" which represents : "The Law Offices of Steven R. Adams, LLC" for an amount of $23,225.00, and Andrew B.Niehaus, Attorney at Law, 1117 Broadway St., Cincinnati, Ohio 45202 Phone:(513)305-0467/Fax:(513)421-7785/andrewniehauslaw@gmail.com for an amount totaling $9,000 plus 2,500 x 4 = $19,000; and, $350.00 for the Filing Fee herein jointly and severally $290,379.00 in Compensatory Damages; See Pl. Exhibit "7";

**171.** $2.5 million in punitive damages jointly and severally.

**172.** Therefore, pursuant to R.C.§ 2743.48 (F)(1), judgment should/shall be rendered in favor of Plaintiff in the amount of $290,379.00, which includes the 350.00 filing fee herein. R.C.§ 2743.48 (G) provides: "The clerk of courts of claims shall forward a certified copy of a judgment under division (F) of this section to thepresident of the controlling board. The board shall take all actions necessary to cause the payment of the judgment out of the emergency purposes special purpose account of the board." Therefore, subject to the provisions of R.C.§ 2743.19(D),

the clerk shall forward a certified copy of this judgment to the president of
the controlling board. Interest on the judgment shall be allowed per R.C.§ 2743.
19. Pursuant to R.C.§ 2743.48. (E)(2)(b) states: "For each full year of imprison-
ment in the state correctional institution for the offense of which the wrong-
fully imprisoned individual was found guilty, forty thousand three hundred thirty
dollars or the adjusted amount determined by the auditor of state pursuant to
section 2743.49 of the Revised Code, and for each part of a year of being so im-
prisoned, a pro-rated share of forty thousand three hundred thirty dollars or the
adjusted amount determined by the auditor of state pursuant to section 2743.49 of
the Revised Code. R.C.§ 2743.48 (E)(2)(c) states: "Any lost wages, salary, or
other earned income that directly resulted from the wrongfully imprisoned individ-
ual's arrest, prosecution, conviction, and wrongfully imprisonment[.]" Nelson v.
State, 2011-Ohio-4843, 2011 Ohio Misc. Lexis 417 (Ohio Ct.Cl.2011).

173.            (XI)  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment:

        Granting Plaintiff a declaration that the acts and omissions described
herein violate his rights under the Constitution and laws of the United States, and

174.    **Granting** Plaintiff compensatory damages in the amount of $290,379.00 against
Defendant Randy Walters in his individual and official capacity jointly and sever-
ally, and $2.5 Million in punitive damages;

175.    Granting Plaintiff compensatory damages in the amount of $290,379.00 against
Samuel (Sam) D. Purdin in his individual and official capacity jointly and sever-
ally, and $2.5 Million in punitive damages;

176.    Granting Plaintiff compensatory damages in the amount of $290,379.00 against
Defendant Chandler Rule in his individual and official capacity jointly and sever-
ally, and $2.5 Million in punitive damages;

177.    Granting Plaintiff compensatory damages in the amount of $290,379.00 against

Defendant David Kelley in his individual and official capacity jointly and severally, and $2.5 Million in punitive damages;

**178.** Granting Plaintiff compensatory damages in the amount of $290,379.00 against Defendant Brett M. Spencer in his individual and officia capacity jointly and severally, and $2.5 Million in punitive damages;

**179.** Granting Plaintiff compensatory damages in the amount of $290,379.00 against Defendant Adams County Municipality in its individual and official capacity jointly and severally, and $2.5. Million in punitive damages;

**180.** Plaintiff also seeks a jury trial on all issues triable by jury;

**181.** Plaintiff also seeks recovery of lost wages, costs and fees, and interests;

**182.** Plaintiff seeks Declaratory Relief, and

**183.** Any additional relief this Court deems just, proper, and equitable.

Dated: 8/ 7 /2024

Respectfully submitted,

Richard Lask, pro se
#A748-772
North Central Correctional Institution
P. O. Box 1812
Marion , Ohio 43302-1812

**VERIFICATION**

I HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS ALLEGED THEREIN ARE TRUE, EXCEPT AS TO MATTERS ALLEGED ON INFORMATION AND BELIEF, AND, AS TO THOSE, I BELIEVE THEM TO BE TRUE. I CERTIFY UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed at Marion, Ohio on August 7TH . 2024.

Richard Lask, pro se