EXHIBIT B

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
ADAMS COUNTY, OHIO

2018 JUN 15 AM 11:52

State of Ohio

CASE NO. 20170139-CRI

  Plaintiff

-v-

Richard Lask

  Defendant

JUDGMENT ENTRY ON
DEFENDANT'S MOTION
TO SUPPRESS with FINDINGS OF
FACTS AND CONCLUSIONS OF
LAW

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The within captioned matter comes before the Court upon Plaintiff's Seven Branch Motion to Suppress evidence and/or statements of Defendant. Appearing on behalf of Defendant, Andrew Niehaus, and on behalf of the State of Ohio, Adams County Prosecuting Attorney, C. David Kelley.

Defendant raises the following seven legal arguments in support of his motion to suppress:

1)  Illegal Stop, Detention and Search of Defendant by Kansas State Highway Patrolman, Chandler Rule;

2)  Exclusionary Rule and Fruits of the Poisonous Tree as a result of an Unlawful Arrest and Detention;

3)  Illegal Stop and Detention of Defendant by Detective Sam Purdin, Adams County Sheriff's Office;

4)  Lack of "Articulable Suspicion" of Adams County Sheriff's Deputy, Randy Walters, in conducting Field Sobriety Tests, further alleging non-compliance of Standard Field Sobriety Tests (SFST) with National Highway Safety Traffic Administration (NHSTA) Standards, lastly alleging Deputy Walter's lacked probable cause to arrest Defendant for OVI;

5)  Illegal Search of Defendant's Motor Vehicle pursuant to Defendant's arrest for OVI and/or the inventory of Defendant's vehicle prior to impoundment;

6)  Illegal Warrant and Search of Defendant's residence;

7)  Illegal questioning of Defendant subsequent to request for an attorney.

Page 1 of 13   J424 P395

JUN 2 2 2018

### *Illegal Stop, Detention and Search of Defendant by Kansas State Highway Patrolman, Chandler Rule:*

Defendant requests this Court to consider the legality of a traffic stop in the State of Kansas by Trooper Rule. In essence, Defendant and a companion, Mr. Jamison, were stopped in the State of Kansas for the alleged violation of "Following to Close" to a motor vehicle traveling in the same direction on the same highway. A patrol car camera video of the traffic stop and inquiry of Defendant and his passenger were presented at the hearing on the Motions to Suppress, with Trooper Rule subject to direct and cross examination regarding said stop and interaction.

As is typical during a routine traffic stop, Trooper Rule advised Defendant, the driver, that he was stopped for following to closely. Defendant responded in the affirmative in apparent recognition of the offense, without objection or inquiry. Thereafter, as seems to be standard procedure during routine traffic stops, Trooper Rule inquired about where Defendant was traveling, to which Defendant seemed to answer in parables, versus distinct destination points. Trooper Rule testified that during the initial interaction with Defendant, there was a strong odor of a "masking agent", which Trooper Rule testified that in his experience and training, is a common factor encountered when the driver is attempting to detract from the odor of alcohol or illegal substances in the State of Kansas, such as Marijuana. Upon initial inquiry, Defendant denied any possession of illegal substances within the motor vehicle and/or upon his person.

Undoubtedly, on its face, the routine traffic stop was for a prolonged period of time, considering the nature of the offense, with Trooper Rule believing the driver, the Defendant, was involved in something more sinister than following to closely to a fellow motorist. On Trooper Rule's last physical approach of Defendant's motor vehicle, on the passenger side, Trooper Rule declared on the video that he could now distinctly smell marijuana, and both occupants were questioned to the rear of Defendant's motor vehicle. Defendant's vehicle was eventually searched. The results of the search of Defendant's vehicle was a suspicious number of coolers, most empty, and a duffle bag with marijuana "shake", which is the remnants of harvested marijuana transported in the subject duffle bag. The routine traffic stop concluded with Defendant admitting he had a small amount of "personal use" marijuana on his person, which was instructed to be dumped along the

highway, with Defendant and his passenger were free to travel onto their array of possible destinations.

While the Kansas encounter is far removed from the jurisdiction of Adams County, Ohio, and Defendant was not charged by Trooper Rule, said encounter commences Defendant's basis of argument of all that occurred in the investigation in Adams County, Ohio, for which the Defendant is currently charged, is fruit from the constitutionally poisonous tree of the traffic stop in Kansas. Trooper Rule, on behalf of the Kansas State Highway Patrol, forwarded to the Adams County Sheriff's Office an email, advising of his suspicion that Defendant, an Adams County resident, may be involved in drug trafficking.

Defendant argues that Trooper Rule's illegal seizure of Defendant in Kansas violated Defendant's Fourth Amendment rights. It is proposed by Defendant that Trooper Rule's forwarding of information to the Adams County Sheriff's Department of suspicions from said alleged illegal traffic stop, thus triggered a series of constitutionally illegal actions by the Adams County Detective and/or Deputy, resulting in all evidence seized in Adams County, Ohio to be subject to full suppression.

The actual email communication from the Kansas Highway Patrol to the Adams County Sheriff's Office was never presented to the Court for consideration at the hearing on the Motion to Suppress. From the testimony received at said hearing, Trooper Rule's email to the Adams County Sheriff's Department was based upon his experience, knowledge and training in regard to indicators of drug trafficking, such as that which was present during what was otherwise a routine traffic stop:

1) The strong odor of masking agents coming from the vehicle driven by Defendant, in an apparent attempt to offset the true aromas which would emanate from the motor vehicle, but for the disguised smell;

2) Apparent inability of the Driver/Defendant to articulate an intended destination or destinations after traveling through three states West from Ohio, and now in the fourth state of Kansas;

3) The presence of multiple containers in the motor vehicle, ie coolers and a duffle bag, in light of only two passengers, and the Trooper's knowledge, training and experience that similar containers are utilized to store and transport illegal drugs;

4) The obvious and undeniable smell of Marijuana that the Trooper noticed after approaching the passenger side of the Defendant's motor vehicle after the routine traffic stop had approached in excess of 17 minutes from original engagement, with the masking agent no longer being the dominant aroma;

5) Based upon said apparent smell of Marijuana alone, the Trooper felt he had probable cause to search the Defendant's motor vehicle, whereupon the Trooper discovered in the duffle bag "shake", which upon Trooper's knowledge, training and experience, is an indicator of the storage and transportation of marijuana. "Shake' represents, according to Google, "leftovers" and consists of cannabis flower that break off larger buds, generally as the result of regular handling. The definition of "shake" was not available to this Court through Black's Law Dictionary. In addition, the absence of food/drinks actually stored in the coolers, commensurate with the storage capacities available, was another indicator to the Trooper of typical storage and transportation of marijuana, based upon the Trooper's experience, knowledge and training.

6) The elephant in the room, the contiguous State to the West of Kansas, being Colorado, has legalized Marijuana, unlike the States of Kansas and Ohio.

Defendant asserts that Trooper Rule, in essence, abused his authority and abused and violated the Constitutional protections of Defendant, by effectuating the Search of Defendant's motor vehicle. More relevant in support of Defendant's motion to suppress, the alleged lack of probable cause/reasonable articulable suspicion, to transmit via email, a suggestion to local law enforcement officers that Trooper Rule had suspicions of drug trafficking by a citizen of Adams County, Ohio, namely Richard Lask, based upon the Kansas Trooper's aforementioned observations of Defendant, and the contents of Defendant's car, during the routine stop in Kansas.

The Court is not authorized, due to jurisdictional boundaries, to determine and rule upon suppression issues of evidence seized in criminal cases in the State of Kansas. But for the sake of argument, lets say it did. There was no charge as a result of the Kansas traffic stop to suppress evidence from. Defendant was permitted to dump his personal use Marijuana on the side of the road and drive on.

The gravamen for the Court is whether the issuance of the email was based upon reliable and reasonable suspicions of Trooper Rule, of the Kansas Highway Patrol, and, whether Detective Sam Purdin, of the Adams County Sheriff's Office, had reason to objectively rely upon the email from the Kansas State Patrol. For those reasons aforementioned and enumerated in items 1-6 above, this Court does find that Trooper Rule had reasonable and articulable suspicions for the issuance of the email, alerting the Adams County Sheriff's officers of possible drug trafficking by one of its citizens. As concerns the issue of whether Trooper Rule, in the State of Kansas, had sufficient probable cause to search Defendant's Motor Vehicle, the Court can only note that the *Ohio* Supreme Court has adopted the views of the various state and federal courts in holding that if the smell of marijuana, as detected by a person who is qualified to recognize the odor, is the sole circumstance, this is sufficient to establish probable cause to conduct a reasonable search. *State v. Moore* (2000), 90 Ohio St. 3d 47, 50, 734 NE 2d 804. Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the established automobile exception to the warrant requirement. Id. At 51. See Also Maryland v. Dyson (1999), 527 US 465, 119 S.CT. 2013; State v. Mills (19920, 62 Ohio St. 3d 357, 582 NE 2d 972. It also appears in the state of Kansas, said premise is supported that "once the car was stopped the officer detected the odor of marijuana coming from the car and its smell gave him probable cause to search the car." State of Kansas v. Carlos F. Delgado, 36 Kan.App.2d 653 (2006).

As noted, Trooper Rule was trained, qualified and experienced to recognize the odor of Marijuana, he smelled Marijuana after the detected masking agent had diminished, and Defendant was permitted to dispose along the highway berm, without citation, acknowledged Marijuana in Defendant's personal possession.

**Exclusionary Rule and Fruits of the Poisonous Tree as a result of an Unlawful Arrest and Detention;**
*and*
**Illegal Stop and Detention of Defendant by Detective Sam Purdin, Adams County Sheriff's Office;**

Detective Sam Purdin, after receiving the Kansas Highway Patrol email, testified that he was

unfamiliar with the person of Richard Lask, as well as the alleged residential location of Lask Lane, Manchester, Ohio, where Richard Lask allegedly resided. In following up on the email transmission of suspected drug trafficking, Detective Purdin testified that he drove to Stanfield Road, eventually locating Lask Lane, which intersects with Stanfield Road. Detective Purdin further testified he drove until he came to the next public road (Old Dutch), where he turned around and proceeded back to the location of Lask Lane. As detective Purdin approached Lask Lane, a private or semi private drive, he observed a red dodge pick-up truck proceeding from Lask Lane towards Stanfield Road. Detective Purdin proceed to just beyond Lask Lane and pulled off into a driveway, whereby the red dodge truck proceeded past Detective Purdin's unmarked vehicle, traveling in the same direction as Detective Purdin, both vehicles now facing and/or traveling back towards S.R. 41, where Stanfield Road intersects and dead ends into S.R.41.

  Detective Purdin testified after the red Dodge truck passed him, Detective Purdin proceeded to follow said red Dodge truck within visual range, immediately noticing one of the tail light lamp coverings was broken and taped over. The Court notes that in Defendant's memorandum in support of suppression of the evidence, that Defendant seems to challenge whether the Detective stayed within a distance from Defendant's motor vehicle to visualize the actions, or lack thereof, of the driver, specifically seeming to challenge the allegation of Detective Purdin witnessing Defendant's failure to stop at the stop sign. Defendant sets forth in said memorandum that "Defendant alleges that Detective Purdin was actually sitting in a driveway and was half a mile from the stop sign". The Court received no testimony or evidence in support of said allegation contrary to the testimony of Detective Purdin.

  Detective Purdin testified that he personally observed the red Dodge Truck fail to come to a complete stop at the stop sign located at the intersection of Stanfield Road and S.R. 41. Detective Purdin testified that the truck, after failing to stop, turned onto S.R. 41 and was observed crossing the center line in a nearby curve, with the red Dodge Truck being approximately half way into the oncoming lane of traffic. It was at this time Detective Purdin, having observed two distinct traffic violations ( see O.R.C. sections 4511.43 and 4511.32), activated his dash lights for the vehicle to pull over, which the red Dodge truck obliged, at the intersection of the next public road off S.R. 41 (Roush Hill Road). Detective Purdin, not being a road patrol deputy, dispatched for a road deputy

Page 6 of 13

to assist, which resulted in Deputy Randy Walters appearing on scene shortly thereafter.

As is customary, Detective Purdin testified that he approached the motor vehicle and advised of the reason for the stop. Detective Purdin, who testified he has been trained, and is extensively experienced and knowledgeable as relates to illegal drugs and detection of same, testified that he detected the distinct odor of marijuana coming from the cab of the detained vehicle, with the Detective describing the Defendant's eyes being "glassy". The Defendant acknowledged to Detective Purdin that he had smoked a joint earlier, thus confirming the basis for the detected smell of marijuana. The driver of the vehicle was the Defendant, Richard Lask, while Detective Purdin testified the identity of the passenger of the vehicle as George Davidson. Thereafter, Detective Purdin disengaged with Defendant and awaited the arrival of Deputy Walters.

Defendant challenges that Detective Purdin did not have probable cause to stop Defendant's motor vehicle, suggesting it is simply a ruse to pursue the recent tip from the Kansas State Patrol of suspected drug trafficking. This Court respectfully disagrees. Defendant does not disclaim failing to stop at the stop sign, nor going left of center halfway into the oncoming lane of traffic. Defendant's argument is that the Detective did not have line of sight to have witnessed said infractions of the traffic laws of Ohio. Once again, while alleged by Defendant, there was no testimony nor evidence presented to the contrary of Detective Purdin's testimony that he personally witnessed both traffic violations. As the State of Ohio sets forth in their memorandum in support of denying Defendant's Motions to Suppress, the Fourth District Court of Appeals has previously determined that a traffic stop complies with the Fourth Amendments reasonableness requirement if an officer possesses probable cause or reasonable suspicion to believe that a driver committed a marked lanes violation. *State v. Crocker*, 4th Dist. No. 14CA3640, 2015-Ohio-2528, 38 N.E.3d 369; *State v. Littlefield,* 4th Dist. Ross No. 11 CA3247, 2013-Ohio-481. This Court finds that Detective Purdin had probable cause to initiate the traffic stop, based upon his personal observations of Defendant's failure to stop at a stop sign as well as failure of Defendant to operate his motor vehicle within the marked lanes of S.R. 41. This Court agrees with the State of Ohio's assertion that Detective Purdin had probable cause to initiate the traffic stop for the reasons earlier enumerated, independent of the dispatch from the Kansas State Highway Patrol Post. The communication from the Kansas State Patrol was therefore not the sole basis or an illegal basis for the traffic stop, as

argued by Defendant.

Deputy Walters, upon arrival and equipped with a body cam, is seen getting briefed by Detective Purdin, thereafter Deputy Walters approached the driver's side door and engaged the Defendant about the stop. Deputy Walters, in Court during testimony, as well as on the body cam at the time of the arrest, indicated the detection of the strong the odor of marijuana coming from the cab of the vehicle being operated by Defendant. Once again, Defendant voluntarily acknowledged to Deputy Walters that Defendant had smoked a joint prior to operating the motor vehicle, but Defendant advised he did not feel impaired.

There was a brief discussion of the quality of the marijuana that had no effect between Defendant and Deputy Walters. Eventually, Deputy Walters requested of Defendant to exit the vehicle to perform field sobriety tests, to which Defendant was very cooperative. In fact, Defendant was cordial and cooperative with all three officers from Kansas and Ohio during all periods of taped interaction.

Deputy Walters admittedly had not received updated training on compliance with the procedures for Standard Field Sobriety Tests (SFST) as set forth in the 2013 National Highway Safety Traffic Administration (NHSTA) Standards Manual. Defense counsel accurately and humorously points out Deputy Walters has not been trained in said standards for reliable field sobriety testing during the current *century* in which we live. Regardless of last receiving training in 1999, Deputy Walters, relying on his former training, requested of Defendant to perform three field sobriety tests, namely the **a)** one leg stand test; **b)** the diverted attention test; and **c)** the walk heel to toe and turn test. Deputy Walters although explaining the tests, did not demonstrate to Defendant proper performance of said tests prior to administration to Defendant, with exception of the diverted attention test.

Deputy Walters testified that Defendant did not strictly comply with the one leg stand test, but misstated during the Deputy's testimony, the actual number of times Defendant placed his foot on the ground, as shown on the body cam. Deputy Walters testified Defendant failed to walk heel to toe, instead walking a normal stride, albeit slowly. At the conclusion of the walk heel to toe test, when Deputy Walters inquired of Defendant why he didn't walk heel to toe as instructed, the Defendant declared it made him nervous with people watching and that he was still "feeling the

buzz" from getting smoking the joint (marijuana) before he drove. Defendant also admitted to Deputy Walters to having "personal use" marijuana in a *cooler* located within the vehicle. Defendant was placed under arrest for OVI, and Defendant's car was searched.

This Court recognizes that the damning statements of the Defendant that he was still "feeling the buzz" and that he had personal use marijuana in a cooler in his car, is disclosed at the conclusion of the questionably instructed field sobriety tests. Defendant vigorously argues said field sobriety tests were unjustified, illegal and constitutionally prohibited from inception, therefore must be suppressed as fruits of the poisonous tree. This Court agrees, and the field sobriety tests and statements made by Defendant after inception of said field sobriety tests are suppressed.

The Court now frames the true issue which is dispositive of the cause as follows: "Was the smell of marijuana, by a person qualified to recognize the odor of marijuana, sufficient to establish probable cause to conduct a search of Defendant's motor vehicle subsequent to the traffic stop?" The answer is yes.

The Supreme Court of Ohio in *State v. Moore* (2000), 90 Ohio St.3d 47, unambiguously addressed said issue, declaring "The smell of marijuana, ***alone,*** *emphasis added*, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need by no other tangible evidence to justify a warrantless search of a vehicle."

The Supreme Court of Ohio is not alone, as their *Moore*, Id opinion notes that many state and federal courts have previously confronted this issue and concluded that the detection of the odor of marijuana, alone, by a qualified law enforcement officer, is sufficient to establish probable cause to conduct a reasonable search. See, e.g., *People v. Kazmierczak* (2000), 461 Mich. 411, 605 N./W.2d 667,668 ("the smell of marijuana alone by a person qualified to know the odor may establish probable cause to search a motor vehicle'); *State v. Secrist* (1999), 224 Wis.2d 201,210, 589 N.W.2d 387,391 ("The unmistakable odor of marijuana coming from an automobile provides probable cause for an officer to believe that the automobile contains evidence of a crime."); *Green v. State* (1998), 334 Ark. 484,490, 978 S.W.2d 300,303 ("the odor of marijuana emanating from a particular bag located on a bus is sufficient to provide probable cause to conduct a search of that bag"). Federal Courts share these views as set forth in footnote No. 2 of *State v. Moore*, id.

While Defendant argues that the two Adams County Officers which were part of the traffic stop of Defendant's motor vehicle were confused about whether the search of the motor vehicle was "incident to arrest" or as part of the "inventory" protocol of the Adams County Sheriff's Department, the arguments are moot. The smell of marijuana, alone, by a person qualified to recognize the odor, of which Detective Purdin and Deputy Walters are qualified, based upon their knowledge, experience and trainging, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need by no other tangible evidence to justify a warrantless search of a vehicle. The smell of marijuana experienced by both officers emanating from the vehicle upon each of the officers' individual approach of Defendant's motor vehicle, and Defendant's twice noted admissions to smoking marijuana prior to operation of the motor vehicle, occurred prior to field sobriety testing, arrest and/or impoundment of the motor vehicle.

The reason this Court felt that the issue of the legality of the search of Defendant's motor vehicle framed the true issue which is dispositive of the cause, is, because as a result of said valid search, two (2) pounds of packaged marijuana was found. Two separate pounds packaged in two separate one pound bags and stored in a *cooler*, (noted by Trooper Rule as customary for drug traffickers.) Even Bob Marley and the Wailers, when writing and producing *Babylon by Bus* (1978, his/their best work), could not have legitimately argued that two pounds of packaged marijuana was indicative of personal use quantity. This amount of marijuana, two pounds, packaged, stored in a cooler and being transported, undoubtedly led Detective Purdin to find potential credence in the email received from the Kansas State Patrol, worthy of attempting to secure a search warrant for the residence of Defendant.

### Illegal Warrant and Search of Defendant's residence

"The security of one's privacy against arbitrary intrusion by the police-which is at the core of the Fourth Amendment-is basic to a free society" *Wolf v. Colorado*, 338 U.S. 25, 27, 69 S.Ct. 1359, (1949), overruled on other grounds, *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Page 10 of 13

J424 P404

The Fourth Amendment to the United States Constitution states:
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Central to the Fourth Amendment is the probable cause requirement. While a probable cause determination for an arrest warrant is similar in nature to that for a search warrant, a search warrant inquiry is much more complex and presents special considerations. 2 LaFave, Search and Seizure, section 3.1(b) (5th Ed. 2012). Special considerations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched. Id., Section 3.7 (a), (b), and (d).

For a search warrant to issue, the evidence must be sufficient for the magistrate to conclude that there is a fair probability that evidence of a crime will be found in a particular place. The reviewing court then must ensure that the magistrate had a substantial basis for concluding that probable cause existed. *State v. George*, 45 Ohio St.3d 325, 329, 544 N.E.2d 640 (1989), citing *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317 (1983), quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct 725 (1960).

A reviewing Court, when considering the sufficiency of probable cause in an affidavit submitted in support of a search warrant, must not conduct "a de novo determination as to whether the affidavit contains sufficient probable cause upon which the court would issue the search warrant,' but rather accord great deference to the magistrate's determination of probable cause and resolve marginal cases in favor of upholding the warrant. As the State of Ohio appropriately sets forth, the duty of the issuing official is simply to make a "practical, common sense decision whether, given all the circumstances set forth in the affidavit before him (her), including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' Id at 329, citing *Gates* 238-239.

When reviewing the sufficiency of probable cause offered in support of a warrant, a reviewing court is bound to consider only the information available to the judge or magistrate at the time the warrant was issued. *State v. Garza*, 3d Dist. Henry No. 7-13-04, 2013-Ohio-5492, 5 N.E.3d 89, citing *State v. Graddy*, 55 Ohio St.2d 132, 34, 378 N.E.2d 723 (1978). This often means that a court is bound to consider only what is within the *four corners* of the affidavit in support of the search warrant, as the affidavit is often the only evidence before an issuing judge or magistrate, *Id*.

The Defendant moves this Court to invoke the judicially created remedy for Fourth Amendment violations, being the Exclusionary Rule. As Defendant aptly points out, the purpose of the exclusionary rule is to deter police misconduct and to deter government officials from benefitting from the violation of an individual's Fourth Amendment rights. *Mapp* at 655-656. Courts may apply the exclusionary rule only when its benefits outweigh the societal risks. *Herring v. United States*, 555 U.S. 135, 141, 129 S.Ct. 695 (2009). The exclusionary rule should not be applied when "the official action was pursued in complete good faith, because it would have no deterrent effect." *George*, 45 Ohio St.3d at 331, quoting *United States v. Leon*, 468 U.S.897, 919, 104 S.Ct. 3405 (1984).

Defendant argues the affidavit drafted by Detective Purdin is based entirely on fruit of the poisonous tree of evidence, namely the email received from the Kansas State Highway and the evidence seized, two pounds of packaged marijuana, during the search of Defendant's motor vehicle. The Court has ruled in the body of this opinion that Trooper Rule had reasonable and articulable suspicions for the issuance of the email alerting the Adams County Sheriff's officers of possible drug trafficking by one of its citizens. The Court also previously set forth its reasoning and determination that Detective Sam Purdin, of the Adams County Sheriff's Office, had reason to objectively rely upon the email from the Kansas State Patrol. Police officers should be allowed to presume the accuracy of a dispatch or communication from another police department, *State v. Brogdon*, as cited in *State v. Evans*, 127 Ohio App.3d 56, (Ohio Ap. 11 Dist. 1998) This Court also concluded in the body of this opinion, that the search of the motor vehicle was valid, which resulted in discovery of two pounds of packaged marijuana, found in a "cooler".

Page 11 of 13

J424 P406

Special considerations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched. , Section 3.7 (a), (b), and (d). 2 LaFave, Search and Seizure, (5th Ed. 2012). Applying these factors in considering the Judge's issuance of the subject Search Warrant in question, the facts establish the red Dodge Truck was seen exiting the residential lane/driveway of the Defendant just minutes prior to the traffic violations, Defendant was found to be the driver of said vehicle during the traffic stop; Two pounds of packaged marijuana was seized upon the search of the motor vehicle driven by Defendant; there is a direct nexus to the two pounds of marijuana seized and the search of the residence for marijuana and tools/materials to raise marijuana; and the placed to be searched was Defendant's residence, from which he had just departed with two pounds of packaged marijuana. The Court finds the issuing authority of the challenged search warrant was fully justified, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, that he could rely, and that there is/was a fair probability that contraband or evidence of a crime will be found in the home of the Defendant.

Based upon the aforementioned conclusions, the Court denies suppression of the evidence seized during execution of the valid search warrant, and declines to accept to invitation to impose the exclusionary rule regarding said evidence.

**Illegal questioning of Defendant subsequent to request for an attorney**

Of all the issues raised by Defendant, this issue seems to be most problematic for the Court, as the only testimony received at the suppression hearing was that pursuant to arrest, was that Defendant invoked his entitlement to speak to an attorney before answering any questions by investigating officers and/or consent to search his phone. The only other testimony received was the testimony of Detective Purdin that the Defendant requested to speak to Detective Purdin. The Court is unaware of any particularized statements desired suppressed, but will leave this matter open for further consideration if counsel can particularize statements made by Defendant desired suppressed. The statements of Defendant made during and at the conclusion of the field sobriety tests were previously suppressed in the body of this opinion.

Page 12 of 13

J424 P407

This Court realizes that most if not all citizens, like certain body parts, have an opinion as to whether Marijuana should be legalized or should remain legal. Sometimes opinions contrary to current law create impassioned arguments. Both respective counsel provided the Court with thorough, accurate and impassioned memorandum in support of their clients positions, for which this Court is grateful.

Counsel are instructed, and it is hereby the Order of this Court, that the deadline for potential plea negotiations shall be extended to *12:00 Noon, Friday June 22, 2018.* Counsel are instructed to advise the Court Assignment Commissioner, Sherri Bowman, on or before said deadline, if the matter will proceed to trial or if the matter should be scheduled for a potential change of plea, pursuant to and in accordance with Crim.R. 11

The Court respectfully requests that the Clerk of Courts serve upon all counsel of record an exact copy of the Court's rulings. Per Defense counsel's request, a copy of same, if feasible, shall initially be forwarded via email, @ Andrewbniehauslaw@gmail.com, as well as by regular U.S. Mail.

Approved: June 14, 2018

/s/ Brett M. Spencer
Brett M. Spencer
Common Pleas Judge
Adams County, Ohio