COURT OF APPEALS
FILED
ADAMS COUNTY
CLERK OF COURTS

2020 MAR -6 PM 1:37

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 19CA1101 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| RICHARD LASK, | : | |
| Defendant-Appellant. | : | |

## APPEARANCES:

Steven R. Adams, The Law Offices of Steven R. Adams, LLC, Cincinnati, Ohio, for appellant.

David Kelley, Adams County Prosecutor, and Kris D. Blanton, Adams County Assistant Prosecutor, West Union, Ohio, for appellee.

Hess, J.

{¶1} Richard Lask appeals from his conviction, following a no contest plea, for possession of marijuana. He contends that the trial court erred when it denied in part his motion to suppress evidence obtained during two traffic stops and the execution of a search warrant of his home. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTS

{¶2} The Adams County grand jury indicted Lask on one count of possession of marijuana in an amount that equaled or exceeded 40,000 grams, a second-degree felony. Lask pleaded not guilty and moved to suppress the evidence against him.

{¶3} At the suppression hearing, Trooper Chandler Rule of the Kansas Highway Patrol testified that on October 9, 2017, while on patrol in Kansas, he stopped

a Toyota Avalon driven by Lask—a resident of Adams County, Ohio—on Interstate 70 "for following too closely." Trooper Rule could not recall details about the violation, testifying: "Quite honestly I don't recall a lot, I've made thousands of traffic stops since that point um, due to their [sic] not being an arrest, I didn't write a report on it." Trooper Rule agreed that what was in the video footage of the stop was "what occurred."

{¶4} As the footage begins, Trooper Rule pulls out from a median onto the interstate. The Toyota Avalon is not visible until about 45 seconds later, when it appears to signal and move from the left lane to the right lane, passing another vehicle. No other cars are near the front of the Toyota Avalon. Given Trooper Rule's distance from the Toyota Avalon and the presence of dirt on his windshield, it is not clear whether any violation occurred between the time Trooper Rule pulled onto the highway and the time the Toyota Avalon changed lanes. From Trooper Rule's testimony, it is unclear whether the claimed violation occurred before or after the recording started. On direct examination, Trooper Rule testified the video showed when he "started patrolling." On cross examination, Trooper Rule testified he could not remember if he pulled out from the median to patrol or if he pulled out to initiate the stop, i.e., the violation occurred before the recording started.

{¶5} Trooper Rule testified that when he approached the vehicle, he smelled a "very strong masking agent odor as if someone had just sprayed something," and in his experience, masking agents are used to conceal the odor of marijuana or alcohol. Trooper Rule told Lask: "The reason for the stop, you were following that car in front of you a little too close, before you, you changed lanes okay? So, you know what I'm talking about?" Lask responded, "Yeah." Trooper Rule requested the driver's licenses

of Lask and his passenger and inquired about their relationship and travel plans. Trooper Rule thought they were nervous and that their plans were suspicious. He told them he was going to go to his cruiser to write a warning. He testified that usually when he does this, "typical motoring public nervousness subsides" by the time he returns to the stopped vehicle.

{¶6} Trooper Rule ran a check on the driver's licenses, returned them, and told Lask, "Like I said I'm just giving you a warning[.]" Lask said, "I appreciate you not giving me a ticket." Trooper Rule asked Lask whether he could speak to him "outside the car for a second." Trooper Rule testified that he could still smell the masking agent and wanted to smell Lask's breath and clothing and observe how he got in and out of the vehicle to ensure that he was not impaired. Lask got out and Trooper Rule asked him additional questions. Trooper Rule also asked the passenger if he would exit the vehicle and answer additional questions. Trooper Rule testified that when he finished, he was still suspicious because the passenger was "extremely nervous" and unemployed, and the men "kind of had different stories of where they were going."

{¶7} Trooper Rule requested permission to search the vehicle, which Lask denied. Trooper Rule told the men that he was going to "temporarily detain" them and call for a K-9 unit to "sniff the car." He made arrangements to meet a K-9 unit at a different location along the interstate in the direction the men were travelling. But when Trooper Rule approached the vehicle to advise the men of this plan, he said, "I'm smelling a little bit of weed now," and Lask admitted to having "a little bit of marijuana inside his pants." Trooper Rule concluded he had probable cause to search the vehicle and cancelled the K-9 unit. He had Lask exit the vehicle and put the marijuana on top

of it. Trooper Rule found "a couple of empty duffle bags" in the trunk "that had marijuana shake inside of them with dryer sheets," which he testified are used to confuse drug dogs. There were two big "fairly empty coolers" in the back seat, which Trooper Rule testified traffickers sometimes use to transport drugs. Trooper Rule let the men throw the "personal use amount" of marijuana into a ditch and leave. Later that day, he wrote an email that summarized the incident and stated his suspicion that the men were involved in drug trafficking, which was forwarded to the Adams County Sheriff's Office.

{¶8} Detective Sam Purdin of the Adams County Sheriff's Office testified that on October 16, 2017, he received a copy of Trooper Rule's email. Detective Purdin had "never heard of the people" mentioned in it, and after speaking to Trooper Rule, decided to investigate. Detective Purdin drove near where Lask lived—Lask Lane—in an unmarked vehicle. He saw a Dodge pickup truck exit Lask Lane and followed it. The taillights were "busted or taped over," and the driver failed to stop at a stop sign and drove "at least half his vehicle" left of center. Detective Purdin testified this conduct was "consistent with someone that was under the influence of alcohol and or drugs while operating a vehicle." Detective Purdin radioed to see if a marked unit was available for a traffic stop. One was not, so he initiated the stop but requested that a road patrol deputy, Deputy Randy Walters, come to the scene to assist him.

{¶9} Detective Purdin made contact with the driver, Lask, and "instantly smelled" a "very strong" odor of burnt marijuana coming from the vehicle. Lask appeared nervous, his eyes appeared glassy and bloodshot, and his speech was slurred. Deputy Walters arrived on the scene, and Detective Purdin heard Lask tell Deputy Walters that he had smoked marijuana earlier. Deputy Walters had Lask

perform field sobriety tests and arrested him for operating a vehicle under the influence ("OVI"). A search of a cooler in the truck revealed approximately two pounds of marijuana. Detective Purdin obtained a warrant to search Lask's home based on information from the Kansas traffic stop and Ohio traffic stop. That search revealed drug paraphernalia and a large amount of marijuana.

{¶10} The trial court granted in part and denied in part the motion to suppress. The court explained that Lask argued that the Kansas stop violated his Fourth Amendment rights and "triggered a series of constitutionally illegal actions" in Ohio, "resulting in all evidence seized in Adams County, Ohio" being "subject to full suppression." The court stated that it was "not authorized, due to jurisdictional boundaries, to determine and rule upon suppression issues of evidence seized in criminal cases in the State of Kansas." Even if it was authorized, "[t]here was no charge as a result of the Kansas traffic stop to suppress evidence from. Defendant was permitted to dump his personal use [m]arijuana on the side of the road and drive on." However, the court noted that "Trooper Rule advised Defendant, the driver, that he was stopped for following to [sic] closely. Defendant responded in the affirmative in apparent recognition of the offense, without objection or inquiry." The court also suggested that the odor of marijuana gave Trooper Rule probable cause to search the Toyota Avalon.

{¶11} The trial court held that Trooper Rule "had reasonable and articulable suspicions for the issuance of the email, alerting the Adams County Sheriff's officers of possible drug trafficking by one of its citizens," and Detective Purdin had "reason to objectively rely upon the email from the Kansas State Patrol." The court noted that

Case: 1:24-cv-00455-JPH-EPD Doc #: 8-6 Filed: 10/21/24 Page: 6 of 15 PAGEID #: 434
Adams App. No. 19CA1110                                                                    6

officers "should be allowed to presume the accuracy of a dispatch or communication from another police department." The court also held that based on traffic violations Detective Purdin observed, he had probable cause to initiate the Ohio traffic stop "independent of the dispatch from the Kansas State Highway Patrol Post. The communication from the Kansas State Patrol was therefore not the sole basis or an illegal basis for the traffic stop, as argued by Defendant." In addition, the court concluded the odor of marijuana coming from the pickup truck provided probable cause for a search pursuant to the automobile exception to the warrant requirement. The trial court also held that probable cause supported the warrant "given all the circumstances set forth in the affidavit" of Detective Purdin. The court did, however, suppress the field sobriety tests and statements Lask made after the inception of those tests.

{¶12} Lask pleaded guilty to an amended count of possession of marijuana, and the trial court sentenced him. Lask appealed, and we reversed his conviction, concluding his guilty plea was not knowing and intelligent because it was based on an incorrect advisement that a guilty plea would preserve his right to appeal the suppression decision. *State v. Lask*, 4th Dist. Adams No. 18CA1081, 2019-Ohio-2753, ¶ 2. On remand, Lask pleaded no contest to an amended count of possession of marijuana in an amount that exceeded twenty thousand grams but was less than forty thousand grams, a second-degree felony, and the court sentenced him to a minimum mandatory prison term of five years. This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶13} Lask assigns the following errors for our review:

FIRST ASSIGNMENT OF ERROR. The trial court erred as a matter of law finding the Kansas trooper had probable cause to initiate a traffic stop for following too close.

SECOND ASSIGNMENT OF ERROR. Tpr. Rule impermissibly extended the traffic stop beyond its original purpose.

THIRD ASSIGNMENT OF ERROR. The trial court erred as a matter of law when it found valid probable cause based on the alleged smell of marijuana.

FOURTH ASSIGNMENT OF ERROR. Tpr. Rule had a duty to author a factually accurate email without embellishments, exaggerations, or untruths.

FIFTH ASSIGNMENT OF ERROR. The trial court committed plain error where it neglected to review the actual email contents that was [sic] admitted into evidence.

### III. LAW AND ANALYSIS

#### A. Standard of Review

{¶14} "Normally, appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 7, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The Supreme Court of Ohio has explained:

> "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."

(Citations omitted.) *Id.*, quoting *Burnside* at ¶ 8.

### B. Constitutionality of the Kansas Traffic Stop

{¶15} In the first assignment of error, Lask contends that the trial court erred in finding Trooper Rule had probable cause to initiate the Kansas traffic stop. Lask asserts that Trooper Rule was unable to articulate any facts about the alleged traffic offense. Because Trooper Rule initially testified that he pulled out from the median onto the interstate to patrol and the video footage from after he left the median does not depict a traffic violation, Lask asserts that the footage "contradicts the officer's allegation that an offense took place." Lask acknowledges that after Trooper Rule said, "The reason for the stop, you were following that car in front of you a little too close, before you, you changed lanes okay? So, you know what I'm talking about?" Lask said, "Yeah." However, he asserts that it was unreasonable for the court to interpret his response as an admission of guilt "rather than simply as cooperative demeanor" and an acknowledgement that "he understood the nature of the charge." Lask also claims that his response gave "no insight as to [Trooper] Rule's basis for probable cause." Lask contends evidence from "any action traceable back to the illegal traffic stop must be suppressed" pursuant to the exclusionary rule.

{¶16} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se

Case: 1:24-cv-00455-JPH-EPD Doc #: 8-6 Filed: 10/21/24 Page: 9 of 15 PAGEID #: 437

Adams App. No. 19CA1104                    9

unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *State v. Eatmon*, 4th Dist. Scioto No. 12CA3498, 2013-Ohio-4812, ¶ 12, citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). " 'Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible.' " *Id.*, quoting *State v. Smith*, 4th Dist. Ross No. 12CA3308, 2013-Ohio-114, ¶ 12.

{¶17} We have explained:

> "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment * * *." *State v. Lewis*, 4th Dist. Scioto No. 08CA3226, 2008-Ohio-6691, ¶ 14. "To be constitutionally valid, the detention must be reasonable under the circumstances." *Id.* While probable cause "is certainly a complete justification for a traffic stop," it is not required. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. So long as "an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Id.* at ¶ 8. Reasonable and articulable suspicion is a lower standard than probable cause. *See id.* at ¶ 23. "To conduct an investigatory stop, the officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity." *State v. Kilbarger*, 4th Dist. Hocking No. 11CA23, 2012-Ohio-1521, ¶ 15, citing *State v. Williams*, 51 Ohio St.3d 58, 60-61, 554 N.E.2d 108 (1990).

*Eatmon* at ¶ 13. "The existence of reasonable suspicion depends on whether an objectively reasonable police officer would believe that the driver's conduct constituted a traffic violation based on the totality of the circumstances known to the officer at the time of the stop." *State v. Hudson*, 4th Dist. Gallia No. 17CA19, 2018-Ohio-2717, ¶ 15.

{¶18} Kan.Stat.Ann. 8-1523, titled "Following another vehicle too closely," states: "(a) The driver of a motor vehicle shall not follow another vehicle more closely than is

reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

{¶19} The trial court did not specifically resolve whether Trooper Rule had reasonable suspicion to believe Lask had violated this statute, suggesting it lacked jurisdiction to consider the issue because the traffic stop occurred in Kansas even though Lask sought a ruling on the admissibility of evidence for purposes of an Ohio criminal trial, which is a matter within the court's authority. See Crim.R. 12(C)(3) (motions to suppress evidence "on the ground that it was illegally obtained * * * shall be filed in the trial court only") Nonetheless, the court implied the stop was constitutional because after Trooper Rule told Lask the reason for the stop, Lask "responded in the affirmative in apparent recognition of the offense, without objection or inquiry."

{¶20} An objectively reasonable police officer would not believe that Lask had violated Kan.Stat.Ann. 8-1523 based on the totality of the circumstances known to Trooper Rule at the time of the Kansas traffic stop because Trooper Rule could not recall any of that information. Trooper Rule testified that he did not remember details about the alleged violation, including whether it happened before or after he left the median, and the video footage recorded after he left the median does not depict the claimed violation. Moreover, Lask's response to the trooper's question regarding the basis for the stop was ambiguous and could reasonably be construed as an acknowledgement that Lask understood the reason given for the stop rather than an admission that he had followed another vehicle "more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." Kan.Stat.Ann. 8-1523.

{¶21} Because Trooper Rule could not provide any specific and articulable facts which gave rise to a reasonable suspicion that Lask committed a traffic violation, the Kansas traffic stop violated the Fourth Amendment. Next, we must consider the impact of that fact on the admissibility of the evidence against Lask.

### C. The Exclusionary Rule

{¶22} The exclusionary rule, "when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139, 129 S.Ct. 695, 172 L.E.2d 496 (2009). The rule encompasses "primary evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered and found to be derivative of an illegality," i.e., the " 'fruit of the poisonous tree.' " *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.E.2d 599 (1984), quoting *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.E. 307 (1939). "[T]he rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.E.2d 561 (1974).

{¶23} Evidence from the Kansas traffic stop, including Lask's statements and Trooper Rule's observation of the personal use marijuana, marijuana shake, and dryer sheets, was obtained as a result of the illegal traffic stop and is inadmissible. *See generally State v. Wilson*, 2d Dist. Montgomery No. 27673, 2017-Ohio-9317, ¶ 7-8, 25 (affirming determination that officers lacked reasonable suspicion to conduct a traffic stop and suppression of evidence obtained as a result of the unlawful stop, including marijuana and a firearm found in the vehicle).

{¶24} Evidence obtained during the Ohio traffic stop is admissible. Although Lask argues that this evidence is derivative of the illegal Kansas traffic stop because Trooper Rule's email is the reason Detective Purdin "decided to drive out to Lask Lane and investigate," we agree with the state that the Ohio traffic stop was valid because Detective Purdin initiated it after he observed Ohio traffic violations. It is well-established that a " 'traffic stop with the proper standard of evidence is valid regardless of the officer's underlying ulterior motives as the test is merely whether the officer "could" have performed the act complained of; pretext is irrelevant if the action complained of was permissible.' " *Hudson*, 4th Dist. Gallia No. 17CA19, 2018-Ohio-2717, at ¶ 16, quoting *State v. Koczwara*, 7th Dist. Mahoning No. 13MA149, 2014-Ohio-1946, ¶ 22. Thus, "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996), syllabus.

{¶25} Here, the trial court held that Detective Purdin had probable cause to initiate the Ohio traffic stop for reasons "independent of the dispatch from the Kansas State Highway Patrol Post," i.e., traffic violations Detective Purdin observed, and Lask did not challenge that determination on appeal. Therefore, Detective Purdin could initiate the Ohio traffic stop and investigate the possible OVI in progress even though the reason he drove to the area of Lask Lane and followed the truck was to investigate a suspicion of drug trafficking developed from Trooper Rule's email. Moreover, the trial

court held that there was probable cause for the search of the truck, i.e., the odor of marijuana Detective Purdin smelled, and Lask also did not challenge that determination on appeal.

{¶26} The admissibility of evidence obtained during execution of the Ohio search warrant requires further consideration by the trial court. Some of the information used to obtain the warrant came from the unconstitutional Kansas traffic stop. Specifically, in his affidavit in support of the warrant, Detective Purdin averred in part:

> On October 9, 2017, the Affiant received information from the Kansas Highway Patrol indicating a Trooper stopped a vehicle driven by Richard Lask. The Trooper discovered two (2) large duffel bags containing marijuana "shake" and dryer sheets. The Trooper stated Richard Lask indicated the marijuana discovered was his own personal use.

Because the trial court did not conclude that the Kansas traffic stop was unconstitutional, it did not address what impact the use of some illegally obtained information from that stop had on the search warrant and evidence seized pursuant to the warrant. See generally State v. Clary, 4th Dist. Lawrence No. 96CA7, 1996 WL 560522, *2 ("If an affidavit supporting a search warrant contains illegally obtained information, the inclusion of the illegally obtained information does not taint the entire warrant if it is otherwise supported by probable cause. The affidavit is tested for probable cause without the illegally obtained information" (Citations omitted.)). And because Lask incorrectly presumed we would order suppression of all evidence that supported the warrant and not just evidence obtained during the Kansas traffic stop, the appellate briefs do not address this issue. Therefore, we remand for the trial court to consider this issue in the first instance.

{¶27} For the foregoing reasons, we sustain the first assignment of error to the extent Lask asserts that the Kansas traffic stop was unconstitutional and that evidence obtained during that stop is inadmissible in this case, we overrule the first assignment of error to the extent Lask asserts that evidence from the Ohio traffic stop is inadmissible, and we remand for further proceedings regarding the admissibility of evidence obtained during the execution of the Ohio search warrant. Given our determination that the Kansas traffic stop was unconstitutional and all evidence obtained during it must be suppressed, the second and third assignments of error, which challenge the length of the Kansas stop and the Kansas search, are moot. And given our determination regarding the validity of the Ohio traffic stop and decision to remand for further proceedings regarding the search warrant, the fourth and fifth assignments of error in which Lask asserts that Trooper Rule's email contained inaccuracies that precluded its use "as a basis for subsequent action by Ohio officers" and that the trial court committed plain error by not reviewing the "actual email contents" are also moot. Therefore, we need not address the remaining assignments of error. See App.R. 12(A)(1)(c).

## IV. CONCLUSION

{¶28} For the foregoing reasons, we sustain in part and overrule in part the first assignment of error. The remaining assignments of error are moot. We affirm in part and reverse in part the trial court's judgment and remand for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED IN PART<br>AND REVERSED IN PART.<br>CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART and REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the ADAMS COUNTY COMMON PLEAS COURT to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.

CLERK'S CERTIFICATE
The State of Ohio, Adams County, ss:
I certify that this is a true and correct copy of the original filed in my office on MAR 0 6 2020
LARRY HELLER, CLERK OF COURTS
BY: _____
DATE: MAR 0 6 2020 Deputy Clerk

For the Court

BY: _____
Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**