**EXHIBIT H**

FILED
ADAMS COUNTY
CLERK OF COURTS

2021 MAY 26 PM 3: 18

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

STATE OF OHIO,                     : CR120110139

    Plaintiff-Appellee,        : Case No. 20CA1117

    vs.                        :

RICHARD LASK,                      : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.       :

_____

APPEARANCES:

Steven R. Adams, Cincinnati, Ohio, for appellant.

David Kelley, Adams County Prosecuting Attorney, and Anthony
Hurst, Assistant Adams County Prosecuting Attorney, West Union,
Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:
ABELE, J.

    {¶1} This is an appeal from an Adams County Common Pleas

Court judgment of conviction and sentence. Appellant assigns

the following error for review:

        "THE SEARCH WARRANT IS INVALID WHERE THE
        DECISION TO SEEK A SEARCH WARRANT WAS
        PROMPTED BY INFORMATION GAINED FROM AN
        UNLAWFUL SEARCH."

    {¶2} On October 9, 2017, a Kansas Highway Patrol trooper

stopped appellant's vehicle on Interstate 70 for allegedly

following another vehicle too closely. During the ensuing

ADAMS, 20CA1117                                                              2

encounter, the trooper searched appellant's vehicle and

discovered empty duffle bags that contained "marijuana shake"

and "dryer sheets."  The trooper also observed two large "fairly

empty coolers" in the vehicle's back seat.  The trooper let

appellant leave the scene, but later wrote an email to summarize

his encounter and his suspicion about appellant's involvement in

drug trafficking.  The trooper then sent the email to the Adams

County, Ohio Sheriff's Office.

{¶3} Adams County Sheriff's Detective Sam Purdin received

the Kansas email and decided to investigate.  On October 16,

2017, one week after the Kansas traffic stop, Detective Purdin

drove to appellant's residence and observed a pickup truck leave

the premises.  After Purdin observed the vehicle run a stop sign

and drive left of the centerline, he stopped the vehicle.

{¶4} As Detective Purdin approached appellant, the

vehicle's driver, the detective "instantly smelled" a "very

strong" odor of burnt marijuana emanating from the vehicle.

Appellant later admitted that he had smoked marijuana.  Shortly

thereafter, another officer arrived at the scene and performed

field sobriety tests.  After officers arrested appellant for

operating a vehicle while under the influence, a vehicle search

resulted in the discovery of approximately two pounds of

marijuana.

ADAMS, 20CA1117                                                                    3

**{¶5}** After this encounter, Detective Purdin applied for a
warrant to search appellant's residence.  The search-warrant
affidavit states:

> On October 9, 2017, the Affiant received
> information from the Kansas Highway Patrol indicating
> a Trooper stopped a vehicle driven by Richard Lask.
> The Trooper discovered two (2) large duffel bags
> containing marijuana "shake" and dryer sheets.  The
> Trooper stated Richard Lask indicated the marijuana
> discovered was his own personal use.
>
> The Affiant further states on October 16, 2017,
> he went to the residence of Richard Lask to follow up
> on this information.  While in the area, the Affiant
> observed Richard Lask leaving his residence in a red
> Dodge Dakota truck.  The Affiant observed the vehicle
> failed to stop at a stop sign located at the
> intersection of State Route 41 and Stanfield Road.
> The Affiant further observed the vehicle's brake
> lights were broken.  Based on these observations, the
> Affiant conducted a traffic stop on the vehicle.  The
> Affiant requested additional law enforcement units
> proceed to the scene to assist.
>
> As the Affiant approached the vehicle, he could
> detect a strong odor of marijuana emanating from the
> vehicle.  The Affiant states he has been a Law
> Enforcement Officer for approximately 17 years and
> through his training and experience can positively
> identify the odor of marijuana.  While speaking with
> Richard Lask, the Affiant observed his speech was
> slurred and his eyes were "bloodshot".  Richard Lask
> admitted to the Affiant he had previously smoked
> marijuana.  Deputy Walters arrived at the scene and
> conducted field sobriety tests on Richard Lask.  Mr.
> Lask was determined to be driving a vehicle under the
> influence of drugs and/or alcohol and was placed under
> arrest.  The Affiant further states an inventory
> search of Richard Lask's vehicle revealed
> approximately two (2) pounds of marijuana.  Mr. Lask
> stated this marijuana was for his own personal use.
>
> The Affiant further states he believes there is
> being concealed at the resident of Richard Lask * * *
> an undetermined amount of marijuana and items used in

the cultivation of marijuana.  These beliefs are based
on the Affiant observing Richard Lask leaving his
residence just prior to being discovered with
marijuana in his possession.  Based on the amount of
marijuana discovered inside Richard Lask's vehicle,
the Affiant believes this is not for personal use and
further criminal activity is being conducted inside
Richard Lask's residence.

**{¶6}** A judge granted Detective Purdin's request for a
warrant to search appellant's residence and, during the search,
officers discovered a substantial amount of marijuana and drug
paraphernalia.

**{¶7}** On October 27, 2017, an Adams County Grand Jury
returned an indictment that charged appellant with possession of
marijuana, in an amount of approximately 40,000 grams, a second-
degree felony in violation of R.C. 2925.11(A).  Appellant
entered a not guilty plea and filed a motion to suppress
evidence.

**{¶8}** In his motion to suppress evidence, appellant asserted
that (1) officers improperly detained appellant for a suspicion
of operating a motor vehicle while under the influence, and (2)
because officers based the search of his home upon information
obtained during the Kansas unconstitutional search and seizure,
the evidence discovered during the search is the fruit of the
unlawful Kansas traffic stop.  Consequently, appellant requested
the trial court suppress the evidence discovered during the

search of his residence.  The trial court, however, overruled appellant's motion to suppress evidence.

**{¶9}** Subsequently, appellant entered a no-contest plea to the possession of marijuana charge, in violation of R.C. 2925.11(A) a second-degree felony.  The trial court sentenced appellant to serve a mandatory minimum five-year prison term. Appellant appealed his judgment of conviction and sentence. Appellant argued that the trial court incorrectly determined that the Kansas state trooper had either probable cause or a reasonable suspicion to stop appellant's vehicle for a traffic violation.

**{¶10}** After review, this Court noted that (1) the Kansas trooper failed to articulate any specific facts that gave rise to a reasonable suspicion that appellant committed a traffic violation, (2) the video evidence did not show an alleged traffic violation, and (3) the trooper could not recall any details regarding the alleged traffic violation.  Thus, this Court determined that any evidence obtained from the Kansas traffic stop should be inadmissible.  We further concluded, however, that evidence obtained from the Ohio traffic stop is admissible.  Thus, we rejected appellant's argument that the Ohio traffic stop was derived solely from information learned from the unconstitutional Kansas traffic stop.  Appellant,

ADAMS, 20CA1117                                                              6

however, asserted that information learned during the

unconstitutional Kansas traffic stop motivated Detective Purdin

to drive to appellant's house to investigate.  We observed that,

even if Purdin decided to investigate appellant due to the

Kansas email, Purdin did not stop appellant's vehicle on the

basis of any information contained in the Kansas trooper's

email.  Instead, Purdin stopped appellant's vehicle after the

detective observed appellant run a stop sign and drive left-of-

center.  We therefore agreed with the trial court's conclusion

that Purdin had probable cause, independent of the unlawful

Kansas traffic stop, to stop appellant's vehicle.  We further

noted that appellant did not challenge the trial court's finding

that Purdin had probable cause to search the vehicle.  We then

considered the issue of whether the evidence discovered during

the search of appellant's home should be suppressed because the

search-warrant affidavit contained some information obtained

from the Kansas traffic stop.  We recognized that the trial

court did not consider whether the search-warrant affidavit

contained sufficient probable cause that evidence of a crime

would be discovered at appellant's residence absent the

information obtained during the Kansas traffic stop.  We thus

remanded the matter so the trial court could consider whether

Detective Purdin's search-warrant affidavit set forth sufficient

information to constitute probable cause to search without considering information obtained during the Kansas traffic stop.

{¶11} On June 10, 2020, the trial court held a hearing to consider the issue. The state asserted that the trial court should be limited to considering whether the remainder of the warrant, absent the Kansas information, established probable cause. Appellant, however, argued that the court must consider whether the Kansas information also tainted Detective Purdin's decision to obtain the warrant. Appellant claimed the exclusionary rule requires courts to suppress evidence discovered during a search unless the state can establish that illegally obtained information (here from the Kansas traffic stop) did not prompt Purdin to seek a search warrant. Appellant thus claimed that the state must show that officers had an independent source for information to obtain a search warrant.

{¶12} After consideration, the trial court did not agree that it must suppress the evidence discovered during the search of appellant's residence. Instead, the court determined that, after it redacted information obtained from the Kansas stop, the search-warrant affidavit nevertheless contained sufficient information to establish probable cause to believe that a search of appellant's residence would uncover evidence of a crime. The court points to the following facts to support a finding of

ADAMS, 20CA1117                                                                8

probable cause: (1) Detective Purdin observed appellant leave
appellant's residence in a  pickup truck; (2) the detective
stopped appellant after he observed two traffic violations; (3)
the detective detected an odor of marijuana emanating from
appellant's vehicle; (4) appellant admitted that he had smoked
marijuana; (5) the officers arrested appellant for driving while
under the influence; (6) a search of appellant's vehicle
resulted in the discovery of two pounds of marijuana; and (7)
Detective Purdin did not believe appellant's claim that two
pounds of marijuana were for his personal use.  The trial court
thus denied appellant's motion to suppress evidence and
reaffirmed his sentence.  This appeal followed.

{¶13} In his sole assignment of error, appellant asserts
that the trial court erred by denying his motion to suppress the
evidence discovered during the search of his residence.
Appellant argues that Detective Purdin sought a search warrant
based upon information learned during the unlawful Kansas
traffic stop, and that a search warrant should be invalid when
law enforcement decides to seek a search warrant based upon
illegally obtained information.  Appellant thus claims that the
exclusionary rule requires the trial court to suppress the
evidence discovered during the search of his residence.

ADAMS, 20CA1117                                                            9

**{¶14}** The state, however, disagrees with appellant's analysis and argues that the exclusionary rule does not require suppression of the evidence discovered at appellant's residence. Instead, the state contends that the untainted evidence that Detective Purdin collected sufficiently establishes probable cause to believe that officers would discover evidence of criminal activity at appellant's residence. The state further contends that the connection between the Kansas traffic stop and the search of appellant's residence is too attenuated to require exclusion of the evidence.

I

**{¶15}** Appellate review of a trial court's ruling on a motion to suppress evidence involves a mixed question of law and fact. *E.g., State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 32; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Moore*, 2013-Ohio-5506, 5 N.E.3d 41 (4th Dist.), ¶ 7. Appellate courts thus "'must accept the trial court's findings of fact if they are supported by competent, credible evidence.'" *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12, quoting *Burnside* at ¶ 8. Accepting those facts as true, reviewing courts "'independently determine as a matter of law, without deference

to the conclusion of the trial court, whether the facts satisfy

the applicable legal standard.'"  *Id.*, *Burnside* at ¶ 8.

II

**{¶16}** The Fourth Amendment to the United States Constitution

provides that search warrants may be issued only upon probable

cause:

> The right of the people to be secure in their
> persons, houses, papers, and effects, against
> unreasonable searches and seizures, shall not be
> violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation, and
> particularly describing the place to be searched, and
> the persons or things to be seized.

**{¶17}** Courts that must determine whether a search warrant

was issued upon a proper showing of probable cause must examine

the totality of the circumstances.  *Illinois v. Gates*, 462 U.S.

213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  "[T]he duty of

a reviewing court is simply to ensure that the magistrate had a

'substantial basis for * * * conclud[ing]' that probable cause

existed."  *Id.* at 238-239, 103 S.Ct. 2317, quoting *Jones v.

United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697

(1960), overruled on other grounds, *United States v. Salvucci*,

448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).  And, the

issuing magistrate's duty is to determine whether "there is a

fair probability that contraband or evidence of a crime will be

found in a particular place."  *Id.* at 238, 103 S.Ct. 2317.

**{¶18}** "The essential protection of the warrant requirement of the Fourth Amendment * * * is in 'requiring that [the usual inferences which reasonable men draw from evidence] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Gates*, 462 U.S. at 240, 103 S.Ct. 2317, quoting *Johnson v. United States*, 333 U.S. 10, 13-14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Accordingly, a search-warrant "affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 165, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Moreover, the facts and circumstances set forth in the "affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." *Gates*, 462 U.S. at 239, 103 S.Ct. 2317. A search-warrant affidavit need not, however, comply with any "'[t]echnical requirements of elaborate specificity.'" *Id.* at 235, 103 S.Ct. 2317, 2332, quoting *Ventresca*, 380 U.S. at 108, 85 S.Ct. 741. Instead,

> [i]n determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information,

> there is a fair probability that contraband or
> evidence of a crime will be found in a particular
> place."

*George* at paragraph one of the syllabus, quoting *Gates*, 462 U.S.
at 238-239, 103 S.Ct. 2317; *accord Castagnola* at ¶ 35 ("[T]he
evidence must be sufficient for the magistrate to conclude that
there is a fair probability that evidence of a crime will be
found in a particular place.").

**{¶19}** A search warrant issued after a magistrate or judge
has independently determined that probable cause to search
exists will enjoy a presumption of validity. *State v. Parks*,
4th Dist. Ross No. 1306, 1987 WL 16567 (Sept. 3, 1987), *4; *see
Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d
667 (1978) (noting that search-warrant affidavit presumed
valid). Thus, "'the burden is on a defendant who seeks to
suppress evidence obtained under a regularly issued warrant to
show the want of probable cause.'" *United States v. de la
Fuente*, 548 F.2d 528, 534 (5th Cir.1977), quoting *Batten v.
United States*, 188 F.2d 75, 77 (5 Cir. 1951); *accord Xenia v.
Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988), citing
*de la Fuente* (stating that "[t]he burden of initially
establishing whether a search or seizure was authorized by a
warrant is on the party challenging the legality of the search
or seizure"); *State v. Wallace*, 2012-Ohio-6270, 986 N.E.2d 498,

¶ 27 (7th Dist.) (explaining that a defendant who "attacks the validity of a search conducted under a warrant" carries "the burden of proof * * * to establish that evidence obtained pursuant to the warrant should be suppressed"); *State v. Clouser*, 4th Dist. Highland No. 16CA4, 2016-Ohio-5370, ¶ 13.

**{¶20}** In the case sub judice, appellant asserts that the search warrant is tainted due to the information learned during the unlawful Kansas traffic stop that prompted Detective Purdin's decision to investigate and to seek a search warrant. Appellant thus contends that the exclusionary rule requires the suppression of the evidence obtained pursuant to the warrant.

**{¶21}** "The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search." *Murray v. United States*, 487 U.S. 533, 536, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988), citing *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The rule applies both to "the 'primary evidence obtained as a direct result of an illegal search and seizure' and * * * 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" *Utah v. Strieff*, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016), quoting *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *accord Nardone v. United States*, 308 U.S. 338, 341, 60

ADAMS, 20CA1117                                                                        14

S.Ct. 266, 268, 84 L.Ed. 307 (1939) (stating that the

exclusionary rule prohibits evidence that is derivative "of the

primary evidence, or that is otherwise acquired as an indirect

result of the unlawful search, up to the point at which the

connection with the unlawful search becomes so attenuated as to

dissipate the taint").

**{¶22}** The purpose of requiring suppression of unlawfully

obtained evidence is to deter Fourth Amendment violations. *Utah*

*v. Strieff*, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016). Given

"the significant costs of th[e exclusionary] rule," however, the

United States Supreme Court has "deem[ed] it 'applicable only *

* * where its deterrence benefits outweigh its substantial

social costs.'" *Id.*, quoting *Hudson v. Michigan*, 547 U.S. 586,

591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (internal quotation

marks omitted). Therefore, "'[s]uppression of evidence * * *

has always been [a court's] last resort, not [its] first

impulse.'" *Id.*, quoting *Hudson v. Michigan*, 547 U.S. 586, 591,

126 S.Ct. 2159, 165 L.Ed.2d 56 (2006).

**{¶23}** The United States Supreme Court's reluctance to

suppress evidence under the exclusionary rule has led to

"several exceptions," three of which "involve the causal

relationship between the unconstitutional act and the discovery

of evidence." *Id.*

> First, the independent source doctrine allows trial
> courts to admit evidence obtained in an unlawful
> search if officers independently acquired it from a
> separate, independent source. *See Murray v. United*
> *States*, 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d
> 472 (1988). Second, the inevitable discovery doctrine
> allows for the admission of evidence that would have
> been discovered even without the unconstitutional
> source. *See Nix v. Williams*, 467 U.S. 431, 443–444,
> 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Third, and at
> issue here, is the attenuation doctrine: Evidence is
> admissible when the connection between
> unconstitutional police conduct and the evidence is
> remote or has been interrupted by some intervening
> circumstance, so that "the interest protected by the
> constitutional guarantee that has been violated would
> not be served by suppression of the evidence
> obtained." *Hudson, supra*, at 593, 126 S.Ct. 2159.

*Utah v. Strieff*, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016).

**{¶24}** We further observe that the United States Supreme

Court has refused to hold that "'evidence is "fruit of the

poisonous tree" simply because "it would not have come to light

but for the illegal actions of the police."'" *Hudson v.*

*Michigan*, 547 U.S. 586, 592, 126 S.Ct. 2159, 2164, 165 L.Ed.2d

56 (2006), quoting *Segura v. United States*, 468 U.S. 796, 815,

104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), quoting *Wong Sun v.*

*United States*, 371 U.S. 471, 487–488, 83 S.Ct. 407, 9 L.Ed.2d

441 (1963). "Rather, but-for cause, or 'causation in the

logical sense alone,' *United States v. Ceccolini*, 435 U.S. 268,

274, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), can be too attenuated

to justify exclusion, *id.*, at 274-275, 98 S.Ct. 1054." *Hudson*

ADAMS, 20CA1117                                                  16

*v. Michigan*, 547 U.S. 586, 592, 126 S.Ct. 2159, 2164, 165
L.Ed.2d 56 (2006).  Thus, "the more apt question in such a case
is 'whether, granting establishment of the primary illegality,
the evidence to which instant objection is made has been come at
by exploitation of that illegality or instead by means
sufficiently distinguishable to be purged of the primary
taint.'"  *Wong Sun v. United States*, 371 U.S. 471, 487−488, 83
S.Ct. 407, 9 L.Ed.2d 441 (1963), quoting J. Maguire, Evidence of
Guilt 221 (1959).  Accordingly, "evidence is not to be excluded
if the connection between the illegal police conduct and the
discovery and seizure of the evidence is 'so attenuated as to
dissipate the taint.'"  *Segura v. United States*, 468 U.S. 796,
804−05, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984), quoting
*Nardone v. United States, supra*, 308 U.S., at 341, 60 S.Ct., at
268.

{¶25} In general, evidence that law enforcement officers
obtain from an independent source dissipates any taint.  *Segura
v. United States*, 468 U.S. 796, 804−05, 104 S.Ct. 3380, 3385, 82
L.Ed.2d 599 (1984), citing *Silverthorne Lumber Co. v. United
States*, 251 U.S., at 392, 40 S.Ct., at 183 (emphasis added); *see
also State v. Carter*, 69 Ohio St.3d 57, 67, 630 N.E.2d 355
(1994) ("The exclusionary rule does not apply * * * if the
connection between the illegal police conduct and the discovery

and seizure of the evidence is so attenuated as to dissipate the taint, as where the police have an independent source for discovery of the evidence."). Thus, "'the exclusionary rule has no application [where] the Government learned of the evidence "from an independent source."'" *Segura v. United States*, 468 U.S. 796, 804-05, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984), quoting *Wong Sun, supra*, 371 U.S., at 487, 83 S.Ct., at 417, quoting *Silverthorne Lumber Co., supra*, 251 U.S., at 392, 40 S.Ct., at 183).

{¶26} In the case sub judice, law enforcement officers learned that appellant possessed 40,000 grams of marijuana in his residence independent of the Kansas trooper's observations that occurred one week before Detective Purdin's encounter with appellant. Adams County officers discovered 40,000 grams of marijuana pursuant to a search warrant that relied upon facts learned independently from the Kansas traffic stop. The facts set forth in the search-warrant affidavit show that after Purdin stopped appellant's vehicle for traffic violations, he detected the odor of burnt marijuana and subsequently discovered two pounds of marijuana in the vehicle. The discovery of the marijuana in appellant's vehicle, combined with appellant's recent departure from his residence, prompted the search of appellant's residence. It is important to note that neither

ADAMS, 20CA1117                                                              18

fact relied upon evidence acquired during the Kansas traffic
stop.

{¶27} Moreover, simply because Detective Purdin decided to
investigate appellant after he received information from the
Kansas trooper does not suggest or require the conclusion that
officers lacked an independent source for the discovery of the
marijuana inside appellant's residence.  As we observed earlier,
the United States Supreme Court has rejected the argument that
evidence must be excluded if "it would not have come to light
but for the illegal actions of the police."  *Hudson v. Michigan*,
547 U.S. 586, 592, 126 S.Ct. 2159, 2164, 165 L.Ed.2d 56 (2006),
quoting *Segura v. United States*, 468 U.S. 796, 815, 104 S.Ct.
3380, 82 L.Ed.2d 599 (1984), quoting *Wong Sun v. United States*,
371 U.S. 471, 487-488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Instead, the question is "'whether, granting establishment of
the primary illegality, the evidence to which instant objection
is made has been come at by exploitation of that illegality or
instead by means sufficiently distinguishable to be purged of
the primary taint.'"  *Wong Sun v. United States*, 371 U.S. 471,
487-488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).  In the case at
bar, officers discovered the large amount of marijuana inside
appellant's residence by a means sufficiently distinguishable

from the Kansas traffic stop, thus, so as to purge the taint of the Kansas stop.

**{¶28}** Consequently, when an affidavit for a search warrant contains information that police improperly obtained, courts will nevertheless uphold the warrant if "after excising tainted information from a supporting affidavit, '[]sufficient untainted evidence was presented in the warrant affidavit to establish probable cause * * *.' " *See State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 17, quoting *United States v. Karo*, 468 U.S. 705, 719, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). Including illegally obtained information in a search-warrant affidavit does not invalidate the warrant, unless the illegally obtained information "proved to be critical to establishing probable cause for the issuance of the warrant." *United States v. Karo*, 468 U.S. 705, 719, 104 S.Ct. 3296, 3305, 82 L.Ed.2d 530 (1984).

**{¶29}** In the case sub judice, even though the search-warrant affidavit referenced the unlawful Kansas stop, we agree with the trial court's conclusion that the affidavit contains sufficient untainted evidence to establish probable cause to search appellant's residence for evidence of criminal activity. The illegally obtained information was not critical to establishing probable cause for the issuance of the warrant. After redacting

the information gathered during the Kansas traffic stop, the search-warrant affidavit shows that shortly after appellant left his house, Detective Purdin conducted a valid traffic stop and discovered two pounds of marijuana inside appellant's vehicle. Purdin stated that, in his experience, two pounds of marijuana is not intended solely for personal use. Once again, we agree with the trial court's conclusion that the affidavit sufficiently sets forth untainted evidence to establish a probable cause that a search of appellant's residence would uncover evidence of additional marijuana or contraband. Consequently, the trial court correctly overruled appellant's motion to suppress evidence.

**{¶30}** Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

ADAMS, 20CA1117

21

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted.  The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.  The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.  Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

By: _____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.